UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SONTERRA CAPITAL MASTER FUND, LTD., HAYMAN CAPITAL MANAGEMENT, L.P., AND CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>USB AG, *et al.*,<br><br>Defendants. | No. 15-CV-5844 (GBD)<br><br>ECF CASE<br><br><u>Oral Argument Requested</u> |

**TULLETT PREBON PLC'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

SCHULTE ROTH & ZABEL LLP

Harry S. Davis
Brian T. Kohn
919 Third Avenue
New York, New York 10022
Telephone (212) 756-2000
Facsimile (212) 593-5955

*Attorneys for Defendant Tullett Prebon plc*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ............................................................................................................3

ARGUMENT ..................................................................................................................................4

I. THE COURT LACKS GENERAL JURISDICTION OVER TULLETT. ..........................5

    A. Tullett Is Not "At Home" in the United States. ......................................................5

    B. The Existence of Subsidiaries in the U.S. Does Not Subject Tullett to This Court's Jurisdiction. ................................................................................................5

II. THE COURT LACKS SPECIFIC JURISDICTION OVER TULLETT. ...........................8

        A. The Complaint's Allegations Regarding a Broker's Trips to Las Vegas Are Jurisdictionally Irrelevant. ..........................................................9

        B. Plaintiffs' Allegations Regarding Wash Trades and Instant Messages Have No Bearing on the Jurisdictional Analysis. ......................................10

CONCLUSION .............................................................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                       **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................. 10

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .................................................................................................. 6, 9, 10, 11

*Chirag v. MT Marida Marguerite Schiffahrts*,
    604 F. App'x 16 (2d Cir. 2015) ............................................................................................. 10

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ............................................................................................................ 5, 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011) ............................................................................................................. 5

*Gucci Am., Inc. v. Weixing Li*,
    768 F.3d 122 (2d Cir. 2014) .................................................................................................... 5

*J. McIntyre Mach., Ltd. v. Nicastro*,
    131 S. Ct. 2780 (2011) ............................................................................................................. 9

*Jazini v. Nissan Motor Co., Ltd.*,
    148 F.3d 181 (2d Cir. 1998) .................................................................................................... 4

*Klinghoffer v. S.N.C. Achille Lauro*,
    937 F.2d 44 (2d Cir. 1991) ...................................................................................................... 8

*Laydon v. Mizuho Bank, Ltd.*,
    No. 12 Civ. 3419 (GBD), 2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) ...................... 6, 8, 11

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262 NRB, 2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015) .................................. 9

*In re Methyl Tertiary Butyl Ether (MBTE) Prods. Liab. Litig.*,
    959 F. Supp. 2d 476 (S.D.N.Y. 2013) ..................................................................................... 5

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010) ...................................................................................................... 4

*Robinson v. Overseas Military Sales Corp.*,
    21 F.3d 502 (2d Cir. 1994) ...................................................................................................... 4

*In re Terrorist Attacks on September 11, 2001*,
    714 F.3d 659 (2d Cir. 2013)..................................................................................................4, 9

*Volkswagenwerk AG v. Beech Aircraft Corp.*,
    751 F.2d 117 (2d Cir. 1984).......................................................................................................6

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014).........................................................................................................8, 10

**Statutes & Rules**

FED. R. CIV. P. 12(b)(2) ......................................................................................................1, 12

Defendant Tullett Prebon plc ("Tullett") respectfully submits this Memorandum of Law in support of its Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) all claims brought against it in the Amended Class Action Complaint (the "Complaint") by plaintiffs Sonterra Capital Master Fund, Ltd., Hayman Capital Management, L.P., and California State Teachers' Retirement System.[1]

## PRELIMINARY STATEMENT

Tullett has not previously appeared before this Court in any of the Yen LIBOR and Euroyen TIBOR cases and, therefore, this is Tullett's first opportunity to address the allegations asserted against it in connection with the alleged manipulation of those benchmarks.

Plaintiffs concede in the Complaint that Tullett is incorporated in the United Kingdom and has its principal place of business in London.  Despite the fact that Tullett is a holding company that has no offices or employees in the United States, conducts no business here and has no non-executive employees and, therefore, could not provide any brokering or trading services anywhere in the world (let alone in the United States), the Complaint alleges that personal jurisdiction somehow exists over Tullett.  But this Court and others in this District have repeatedly rejected efforts to invoke jurisdiction over similarly situated entities based on similarly reed thin jurisdictional allegations in this and other actions alleging manipulation of various interest rate benchmarks.  Plaintiffs' efforts here to plead that Tullett is subject to personal jurisdiction fare no better.

---

[1] Tullett also hereby joins in, adopts, and incorporates as though fully set forth herein the arguments contained in the Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Class Action Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim, filed today on behalf of all Defendants.  In addition, Tullett hereby adopts and incorporates as though fully set forth herein, to the extent applicable, the arguments contained in the European Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Class Action Complaint for Lack of Personal Jurisdiction, filed today on behalf of certain Defendants.

Although it is somewhat difficult to divine Plaintiffs' jurisdictional arguments against Tullett from their 452-page Complaint, it appears that Plaintiffs are relying on three misguided theories in a futile attempt to establish personal jurisdiction over Tullett:

- the presence of two of Tullett's wholly-owned subsidiaries in the United States, neither of which is named as a defendant in this action nor alleged in the Complaint to have engaged in any misconduct at all;

- that certain non-U.S. brokers (who Plaintiffs erroneously claim worked for Tullett despite the fact that Tullett is a holding company that employs no brokers anywhere in the world) "spent long weekends" with an RBS trader in Las Vegas, where Plaintiffs assume—without a shred of support—that the brokers and trader must have spent their trip plotting the manipulation of Yen LIBOR and Euroyen TIBOR; and

- that certain non-U.S. brokers (who Plaintiffs again erroneously claim worked for Tullett when they really work for London-based subsidiaries) allegedly earned commissions for brokering "wash trades" between foreign trader clients in exchange for assistance in coordinating false Yen LIBOR and Euroyen TIBOR submissions, and communicated about those alleged trades and submissions via Bloomberg instant messages.

As set forth below, there is no reasonable interpretation of these allegations that could support a conclusion that Tullett is subject to either the general or specific jurisdiction of this Court.

Given that Tullett has no employees or offices anywhere in the United States, Plaintiffs could never establish that Tullett is "at home" in New York (or, for that matter, anywhere in the United States), which would be necessary for Plaintiffs to establish that Tullett is subject to the general jurisdiction of this Court. Nor could Plaintiffs ever establish that Tullett is subject to this Court's specific jurisdiction, as that is only possible where a defendant's suit-related conduct created a substantial connection with the forum. As a holding company with no non-executive employees and no brokering or trading activities, Tullett could not possibly have played any role in the manipulation alleged in the Complaint. Accordingly, Plaintiffs have failed to make the *prima facie* showing of jurisdiction necessary to survive this motion, and all claims asserted against Tullett should be dismissed in their entirety.

## STATEMENT OF FACTS

Tullett is a holding company incorporated in England and Wales, its principal place of business is in London, and its shares are traded on the London Stock Exchange. (Declaration of Paul Mainwaring ("Mainwaring Decl.") ¶¶ 3-4, 6; *see also* Compl. ¶¶ 133, 135.) Tullett has no offices in New York or anywhere else in the United States, conducts no business other than holding the stock of its subsidiary entities, employs no brokers or any other non-executive employees of any type (and even its executive officers are all based in London, not the United States), and participates in no trading or brokering of any kind. (Mainwaring Decl. ¶¶ 5, 7.) Tullett has wholly owned subsidiaries in several countries, including the United States, that do business in the interdealer brokerage industry. (*Id.* ¶ 9; *see also* Compl. ¶ 134.) As interdealer brokers, those companies facilitate the trading activity of their customers, which are generally primary dealers, banks, and other large financial institutions. (Mainwaring Decl. ¶ 9.)

Neither Tullett nor any of its subsidiaries has ever been a panel bank authorized by the British Bankers' Association ("BBA") or the Japan Bankers Association ("JBA") to submit quotes for the calculation of LIBOR. (*Id.* ¶ 10.) Because Tullett has no non-executive employees and engages in no trading or brokering anywhere in the world, none of its employees could have engaged in any communications or submissions that allegedly were part of the attempted or actual manipulation of LIBOR. (*Id.* ¶ 7; *see, e.g.*, Compl. ¶¶ 23-25.) To the extent that Plaintiffs allege that interdealer brokers at some Tullett entity that is not a party to this action engaged in any such communications, those acts would have occurred in London, not in the United States. (*See* Mainwaring Decl. ¶¶ 8-9.) Moreover, neither Tullett nor any of its subsidiaries has ever entered into contracts of any kind with Plaintiffs. (*Id.* ¶ 11.)

Plaintiffs allege that the so-called Broker Defendants—a purposefully vague, collective noun that Plaintiffs use to lump together various interdealer brokers, including, but not

3

limited, to Tullett—"are subject to personal jurisdiction because they furthered Defendants' manipulation of Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-based derivatives from within the United States." (Compl. ¶ 162.) The only factual allegation ostensibly in support of this conclusion is contained in paragraph 162 of the Complaint, which asserts that an RBS trader allegedly spent weekends in Las Vegas with "Tullett Prebon's brokers, including Mark Jones." However, neither Mr. Jones nor the other broker the Complaint alleges worked for Tullett (Noel Cryan) did, in fact, work for Tullett and, in any event, both of those brokers worked in London (for subsidiaries of Tullett not named as defendants), not in the U.S. (Mainwaring Decl. ¶ 8.)

## ARGUMENT

As Tullett has challenged personal jurisdiction, Plaintiffs now bear the burden of establishing it. *See, e.g.*, *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). On a motion to dismiss for lack of personal jurisdiction, a complaint must be dismissed unless the plaintiffs can show that they have made out a *prima facie* showing that personal jurisdiction exists by "pleading in good faith … legally sufficient allegations of jurisdiction." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (internal quotations omitted).

In determining whether a plaintiff has met this burden, a Court must take as true the allegations in a complaint only "to the extent they are uncontroverted by the defendant's affidavits." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal citations omitted). Moreover, a court should not "draw argumentative inferences in the plaintiff's favor," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (internal quotation marks omitted), nor "accept as true a legal conclusion couched as a factual allegation," *Jazini*, 148 F.3d at 185 (internal quotation marks omitted).

## I.     THE COURT LACKS GENERAL JURISDICTION OVER TULLETT.

### A.     Tullett Is Not "At Home" in the United States.

The law is well-settled that a foreign corporation cannot be subject to general jurisdiction unless it has "affiliations with the State [that] are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (internal quotation marks omitted). Applying that standard, the Second Circuit has repeatedly emphasized that "a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014).

Plaintiffs acknowledge, as they must, that Tullett is not "at home" in New York or anywhere else in the United States, as the Complaint alleges that Tullett is "a United Kingdom public company headquartered in London." (Compl. ¶ 135.) That concession ends the general jurisdiction inquiry.[2] *See Daimler*, 134 S. Ct. at 761; *see also In re Methyl Tertiary Butyl Ether (MBTE) Prods. Liab. Litig.*, 959 F. Supp. 2d 476, 492 (S.D.N.Y. 2013) (exercise of personal jurisdiction over foreign non-operating holding company does not satisfy due process).

### B.     The Existence of Subsidiaries in the U.S. Does Not Subject Tullett to This Court's Jurisdiction.

Plaintiffs also allege in conclusory fashion that Tullett has "at least two wholly-owned U.S. subsidiaries," which "comprise [its] U.S. arm and alter ego." (Compl. ¶¶ 134-35.) These allegations cannot change the general jurisdiction analysis. The U.S. Supreme Court has

---

[2] Lest there be any doubt, not only is Tullett incorporated in England and Wales with a principal place of business in London, it has no offices or employees in the United States and conducts no business here. (Mainwaring Decl. ¶¶ 3-5.) Accordingly, this case could not possibly present the "exceptional" circumstances the Supreme Court posited could provide a jurisdictional nexus, which the Court explained could exist only where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 134 S. Ct. at 761 n.19.

5

made clear that a plaintiff must plead far more than the mere existence of U.S. subsidiaries to invoke U.S. jurisdiction. *See Daimler*, 134 S. Ct. at 761-62 ("Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Nevertheless, Plaintiffs appear to be urging the Court to hold that Tullett is subject to general jurisdiction based merely on the presence of subsidiaries in the U.S., even though Plaintiffs do not make a single allegation regarding those subsidiaries beyond the irrelevant fact that they exist.[3] Nor do Plaintiff make any effort to plead, as they must to allege adequately that Tullett is the alter ego of its subsidiaries, that corporate formalities between Tullett and its subsidiaries ever were disregarded (or, for that matter, facts regarding any of the other factors the Second Circuit held in *Volkswagenwerk AG v. Beech Aircraft Corp.*, 751 F.2d 117, 120-22 (2d Cir. 1984), that courts should consider in determining whether a corporate parent is the alter ego of its subsidiaries). This Court previously has rejected similarly thin jurisdictional allegations. *See Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419 (GBD), 2015 WL 1515358, at *4-5 (S.D.N.Y. Mar. 31, 2015) (no jurisdiction over U.K. holding company on alter ego theory where allegations did not "belie the presumption of corporate separateness or satisfy the considerations outlined in *Volkswagenwerk AG*").

---

[3] Typically, alter ego allegations are made in an effort to impute the conduct of a subsidiary to its parent to establish specific jurisdiction. Here, however, there is no conduct of Tullett's U.S. subsidiaries to impute to Tullett, as the Complaint does not include a single allegation regarding the conduct of Tullett's U.S. subsidiaries (beyond their existence), let alone allegations tying any purported conduct of those subsidiaries to the alleged manipulation of Yen LIBOR. Given the absence of specific allegations regarding the conduct of Tullett's U.S. subsidiaries, we can only assume, for purposes of this motion, that Plaintiffs have alleged the existence of those subsidiaries in an attempt to establish that general jurisdiction exists over Tullett (*i.e.,* that Tullett is "at home" in the United States based on the presence of its U.S. subsidiaries), which would be inconsistent with the Supreme Court's holdings in *Daimler*.

Nevertheless, in a misguided effort to bolster their alter ego theory, Plaintiffs mischaracterize statements made in a filing by Tullett nearly six years ago in an unrelated civil RICO action in the District of New Jersey. (Compl. ¶ 135.) In that case, Tullett brought suit against a competitor to vindicate its own rights after that competitor violated New Jersey's RICO statute in an attempt to cripple Tullett's business and destroy its own market capitalization. *See Tullett Prebon plc v. BGC Partners, Inc.*, No. 09-cv-05365, Memorandum of Law of Plaintiff Tullett Prebon plc in Opposition to Defendant BGC Partners, Inc.'s Motion to Dismiss and Motion to Stay [Dkt. No. 39], at 1 (Mar. 10, 2010) (the "New Jersey Brief").

After Tullett's competitor argued in a motion to dismiss that Tullett lacked standing to assert the RICO claims because it had alleged no harm to Tullett that was not derivative of injuries purportedly suffered by its domestic subsidiaries, Tullett opposed the motion by explaining how the injuries alleged in *that* action—a dramatic reduction in Tullett's own stock price and *its* own market capitalization—were suffered only by Tullett (not its subsidiaries) and that, therefore, Tullett was "the real party in interest."[4] (*Id.* at 10.) Tullett also explained that it was "not attempting to assert contractual rights or any other right belonging to [its subsidiaries], but rather, it [was] seeking to recover for damage done to it." (*Id.* at 14.)

The context of the New Jersey Brief appears to be completely lost on Plaintiffs. Tullett never argued in that case that it was acting on behalf of its subsidiaries (it argued the opposite). Regardless, Plaintiffs misleadingly cherry pick language from the New Jersey Brief in an attempt to create the illusion that Tullett conceded general jurisdiction in that case by seeking to recover for injuries purportedly suffered by its subsidiaries. It did no such thing.

---

[4] Tullett did not argue in the New Jersey Brief, as Plaintiffs suggest, that its subsidiaries were not also injured by the conduct of Tullett's competitor. (Compl. ¶ 135.) To the contrary, Tullett expressly explained that two of Tullett's U.S. subsidiaries also suffered their own distinct damages as a result of the RICO violations and were pursuing their own claims through a FINRA arbitration. (New Jersey Brief, at 9-10.)

7

But even if it had (which would be a non sequitur given that Tullett was the plaintiff—not the defendant—in that action), that would have no bearing on whether jurisdiction exists over Tullett in this Court in connection with the specific claims asserted in the Complaint. *See Laydon*, 2015 WL 1515358, at *5 n.10 (finding that plaintiff's argument that another foreign holding company conceded it was subject to jurisdiction in New Jersey in an unrelated case did not "factor into the personal jurisdiction analysis … because '[a] party's consent to jurisdiction in one case … extends to that case alone'") (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991) (alterations in original)).

In sum, because Plaintiffs (i) concede that Tullett is not "at home" in the United States, and (ii) have not made a single substantive allegation supporting their theory of alter ego jurisdiction, they have failed to plead general jurisdiction over Tullett.

## II.  THE COURT LACKS SPECIFIC JURISDICTION OVER TULLETT.

Nor have Plaintiffs come close to making the necessary *prima facie* showing that Tullett is subject to specific jurisdiction, which could be the case only if Tullett's forum-related activities gave rise or relate to the claims asserted in the Complaint.  *See Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).  Moreover, Tullett's suit-related conduct would have to "create a substantial connection with the forum."  *Id.*  Here, as a holding company with no employees or offices anywhere in the United States and which engages in no trading or brokering activities anywhere in the world, Tullett has engaged in absolutely no forum-related activities, let alone forum-related activities that relate in any way to Plaintiffs' allegations of Yen LIBOR and Euroyen TIBOR manipulation.  (Mainwaring Decl. ¶¶ 7-10.)  Accordingly, specific jurisdiction over Tullett does not exist.

### A. The Complaint's Allegations Regarding a Broker's Trips to Las Vegas Are Jurisdictionally Irrelevant.

The sole paragraph in the 452-page Complaint (which contains 1078 paragraphs) expressly aimed at establishing personal jurisdiction over Tullett alleges that "Tullett Prebon's brokers, including Mark Jones … conspired with [RBS trader Neil] Danziger in Las Vegas, spending long weekends there and planning their manipulation of Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-based derivatives." (Compl. ¶ 162.) As an initial matter, this allegation is false—Tullett has never employed Mr. Jones or any other broker. (Mainwaring Decl. ¶¶ 7-8.) But even if the court were required to accept this allegation as true (and it does not given Tullett's declaration to the contrary, *see In re Terrorist Attacks*, 714 F.3d at 673), it would be insufficient to establish specific jurisdiction over Tullett.

In determining whether a defendant's activities created "a substantial connection" with the forum, a court must decide if the defendant has "purposefully directed his activities at … the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King,* 471 U.S. at 472 (internal citations and quotations omitted). Accordingly, a defendant cannot be "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2801 (2011) (quoting *Burger King*, 471 U.S. at 475). For that reason, courts in this circuit have found specific jurisdiction on the basis of a defendant's limited contacts with the forum only in cases that "have involved no less than a 'but for' connection between the defendant's forum-directed activities and the claim." *See In re Libor-Based Fin. Instruments Antitrust Litig*., No. 11 MDL 2262 NRB, 2015 WL 4634541, at *23 (S.D.N.Y. Aug. 4, 2015).

Here, Plaintiffs attempt to meet their burden with only the unfounded conclusion that Tullett brokers "conspired" to manipulate the benchmarks with an RBS trader during long

9

weekends in Las Vegas. (Compl. ¶ 162.) But those alleged weekends—assuming the brokers even worked for Tullett (and Tullett has conclusively demonstrated that they did not)—are precisely the type of fortuitous contacts the Supreme Court repeatedly has held cannot support an exercise of specific jurisdiction over a defendant. *See, e.g.*, *Burger King*, 471 U.S. at 475.

Indeed, far from being "purposefully directed" at the forum, the alleged trips to Las Vegas just as easily could have occurred anywhere else in the world. *Id.* at 472. In fact, Plaintiffs' only source for their wildly exaggerated allegation—a *Wall Street Journal* article—notes that Las Vegas was one of several destinations for client entertainment, which also included "the Alps and Saint-Tropez," and that client entertainment was "even more prevalent in London."[5] Nothing in the article (or, for that matter, the Complaint), suggests that Tullett's purported "conduct connects [it] to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125. As the alleged Las Vegas trips are jurisdictionally irrelevant here, Plaintiffs have failed to meet their burden of making out a *prima facie* showing of specific jurisdiction over Tullett.

### B. Plaintiffs' Allegations Regarding Wash Trades and Instant Messages Have No Bearing on the Jurisdictional Analysis.

Plaintiffs also allege that Tullett brokers solicited "wash trades" from their clients in order to boost profitability, citing to a handful of Bloomberg messages between two brokers the Complaint erroneously identifies as Tullett employees and two non-U.S. traders. (*See, e.g.*,

---

[5] What is more, although the Wall Street Journal article contains no discussion of what occurred on those alleged trips to Las Vegas, Plaintiffs nevertheless conclude—citing only to that article—that, while in Las Vegas, the alleged Tullett brokers and Danziger spent their time "planning their manipulation of Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-based derivatives." (*Id.* ¶ 162.) The article says nothing of the sort and Plaintiffs' guess that that must have been what happened during the trips is precisely the type of speculation that the Supreme Court rejected in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Instead, the article presents the trips and other entertainment simply as rewards provided by interdealer brokers to the traders for business they generated for the brokers—a fact Plaintiffs readily acknowledge later in the Complaint. (*See id.* ¶ 442 ("Danziger … knew that the more commission he generated for Tullett Prebon, the more they would be willing to spend entertaining him.").) The Court should reject Plaintiffs' efforts to establish jurisdiction over Tullett through conjecture and conclusory allegations. *See, e.g.*, *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) ("A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place.").

Compl. ¶¶ 162, 524-25.)  According to Plaintiff, once these wash trades became an established practice, they were used by traders "as a means to pay [Tullett broker Noel] Cryan illicit brokerage in exchange for his assistance in coordinating false Yen-LIBOR submissions among Contributor Bank Defendants."  (Compl. ¶ 525.)

Putting aside the fact that this allegation is factually impossible because Tullett has never employed any brokers who could have generated commissions and the two brokers who are identified in the Complaint (Noel Cryan and Mark Jones) *never* worked for Tullett *and* instead were based in London (working for Tullett's U.K. subsidiaries) (Mainwaring Decl. ¶¶ 7-8), the Complaint does not allege that any of the traders or purported Tullett brokers coordinated the trades or sent or received instant messages within the U.S.  In sum, Plaintiffs have not made a single allegation that by allegedly participating in the wash trades or the related instant messages, Tullett has "purposely directed [its] activities at … the forum" or that "the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King,* 471 U.S. at 472 (internal quotations omitted).[6]  Accordingly, Plaintiffs cannot rely on the wash trades or instant messages to make the *prima facie* showing of jurisdiction necessary to survive this motion.

---

[6] To the extent Plaintiffs argue that merely by communicating over Bloomberg, Tullett's computers made electronic connections to the United States sufficient to support a finding of specific jurisdiction, this Court already has rejected that argument.  *See Laydon*, 2015 WL 1515358, at *3 (finding "no basis to conclude" that defendants who "passively connect[ed] to the United States" via Bloomberg "took actions 'expressly aimed' at the United States").

## **CONCLUSION**

For all of the foregoing reasons, Tullett respectfully requests that the Court grant its Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and dismiss with prejudice all claims asserted against Tullett.

Dated: New York, New York
February 1, 2016

SCHULTE ROTH & ZABEL LLP

By: /s/ Harry S. Davis
    Harry S. Davis
    Brian T. Kohn

919 Third Avenue
New York, New York 10022
(212) 756-2000

*Attorneys for Defendant Tullett Prebon plc*