UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
SONTERRA CAPITAL MASTER FUND, LTD., :
and HAYMAN CAPITAL MANAGEMENT, L.P., :
on behalf of themselves and all others similarly :
situated, : Case No. 15-cv-5844 (GBD)
 :
        Plaintiffs, : **ORAL ARGUMENT REQUESTED**
   v. :
 :
 :
UBS AG, et al., :
 :
        Defendants. :
 :
------------------------------------- x

# MEMORANDUM IN SUPPORT OF ICAP PLC'S AND ICAP EUROPE LTD.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Brian S. Fraser
Shari Brandt
H. Rowan Gaither IV
Katherine Kern Harrington
RICHARDS KIBBE & ORBE LLP
200 Liberty Street
New York, New York 10281
(212) 530-1800

*Attorneys for Defendants ICAP plc and ICAP Europe Ltd.*

Dated: February 1, 2016

Defendants ICAP plc and ICAP Europe Ltd. ("IEL") respectfully submit this memorandum of law in support of ICAP plc's and IEL's motion to dismiss for lack of personal jurisdiction the claims brought against them by Plaintiffs Sonterra Capital Master Fund, Ltd. and Hayman Capital Management, L.P. ("Plaintiffs") in the First Amended Complaint filed on December 18, 2015 (the "Complaint" or "FAC").  ICAP plc and IEL submit this separate memorandum because many of Plaintiffs' arguments for asserting personal jurisdiction over Defendants are simply not applicable to ICAP.[1]

## PRELIMINARY STATEMENT

This Court dismissed ICAP plc last year from *Laydon v. Mizuho* for lack of personal jurisdiction.  *Laydon* is based on the same alleged facts as this case.  The Court found in *Laydon* that ICAP plc's alleged "suit-related conduct d[id] not create a substantial connection with the United States," and therefore the Court had no personal jurisdiction over ICAP plc.  *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 GBD, 2015 WL 1515358, at *5 (S.D.N.Y. Mar. 31, 2015) ("*Laydon* PJ Op.").  The Court's reasoning in *Laydon* is just as applicable to both ICAP plc and IEL here.

## RELEVANT JURISDICTIONAL FACTS

ICAP plc "is a non-operational holding company, organized under the laws of the United Kingdom, with its registered office in London."[2]  *Laydon* PJ Op. at *4; Declaration of Stuart Bridges ("Bridges Decl.") ¶ 3.  "It has no other offices."  *Laydon* PJ Op. at *4; Bridges Decl. ¶ 4.

---

[1] For example, Plaintiffs correctly do not allege that ICAP plc or IEL (i) entered into any ISDA Master Agreements with Plaintiffs, *see* FAC ¶ 168; (ii) registered with the New York State Department of Financial Services under New York Banking Laws, *see* FAC ¶ 169; or (iii) have branch or representative offices located in the United States, *id.*  ICAP plc and IEL hereby adopt and incorporate as if fully set forth herein, to the extent applicable, the arguments in the European Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Class Action Complaint for Lack of Personal Jurisdiction.  ICAP plc and IEL join the Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Class Action Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim in its entirety.

[2] The facts as set forth herein and in the accompanying declarations were true at all relevant times.

ICAP plc does not list shares on any American exchange. *Id*. ¶ 6. Additionally, ICAP plc does not broker trades, does not employ interdealer brokers and has never communicated with Yen LIBOR or Euroyen TIBOR panel banks regarding LIBOR or TIBOR submissions. *Laydon* PJ Op. at *4; Bridges Decl. ¶ 10. Contrary to Plaintiffs' statements in the Complaint, ICAP plc does not provide independent brokerage services, has no derivative teams within the United States, and does not directly generate revenue from a voice brokerage service. Bridges Decl. ¶ 11; *cf.* FAC ¶ 85.

IEL is also a United Kingdom–based company, and is organized and has its registered offices in the UK. Declaration of Richard Bigwood ¶¶ 3-4. IEL has no offices in the United States. *Id.* ¶ 4. IEL is wholly owned, through intermediate wholly-owned UK-based subsidiaries, by ICAP plc, also a UK-based holding company. *Id.* ¶ 5. Thus IEL has no American shareholders, and IEL does not list stock on any public exchanges, including any in the United States. *Id.* IEL also has no employees in the United States. *Id.* ¶ 8. The Yen Broker desk is located outside of the United States, as are all of the supervisors of that desk. *Id.* ¶ 11. IEL does not have any derivative teams in the United States. *Id.* ¶ 6; *cf.* FAC ¶ 85. IEL does not pay taxes to the United States government and did not generate revenues in the 2012 fiscal year on which taxes were due to the United States government. *Id.* ¶ 10; *cf.* FAC ¶ 85.

On September 25, 2013, the Commodity Futures Trading Commission ("CFTC") issued an Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act Making Findings and Imposing Remedial Sanctions Against ICAP Europe Limited (the "CFTC Order"). *Id.* ¶ 13. IEL neither admitted nor denied the findings or conclusions of the CFTC Order, and expressly withheld consent to the use of the CFTC Order by any other party in any other proceeding. *Id*. The conduct alleged in the CFTC Order took place entirely outside of

2

the United States. *Id*. ¶ 14. The CFTC Order contains no allegations related to individuals located in, or communicating with individuals located in, the United States. *Id.*

## ARGUMENT

I.   There Is No Personal Jurisdiction Over ICAP plc.

This Court found, in its March 31, 2015 decision in *Laydon v. Mizuho*, that there was no personal jurisdiction over ICAP plc in this District. *Laydon* PJ Op. at *5. Because the *Sonterra* Complaint is based on the same facts and circumstances, the Court should likewise find that no jurisdiction exists over ICAP plc in this case.[3]

This Court found that ICAP plc's alleged suit-related conduct in *Laydon* did not create a "substantial connection with the United States," that a settlement with CFTC was "insufficient to establish minimum contacts [between ICAP plc and] the United States," and that neither the effects test nor an alter-ego theory supported personal jurisdiction. *Laydon* PJ Op. at *5. The Complaint in this action does not provide any additional bases for jurisdiction. Given Plaintiffs' own assertion that *Laydon* and this case are "substantially identical," and that Plaintiffs urge the Court to adopt "the significant body of case law developed in [*Laydon*] over the last two-and-a-half years" (Dkt. 33, Case Mgmt. Plan at 2, Oct. 2, 2015), there can be no dispute that this Court should dismiss ICAP plc for lack of general or specific personal jurisdiction.

II.   There Is No Personal Jurisdiction Over IEL.

A.   There Is No General Jurisdiction Over IEL.

There can be no credible assertion that the Court has general jurisdiction over IEL for the same reasons that plaintiff withdrew that argument against ICAP plc in *Laydon*. IEL is in the same position as ICAP plc for purposes of the Court's jurisdictional analysis: IEL is a UK-

---

[3] Plaintiff in *Laydon* initially asserted that the Court had both general and specific jurisdiction over ICAP plc, but later withdrew his general jurisdiction argument. *Laydon* Dkt. 393, Oral Arg. Tr. 68:15-18, Sept. 30, 2014.

3

organized company headquartered in London with its principal place of business in the U.K. Bigwood Decl. ¶¶ 3-4. IEL has no offices or employees in the United States, and it has no United States-based business that is "so continuous and systematic as to render [it] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. __, 134 S. Ct. 746, 754 (2014) (internal quotations omitted); Bigwood Decl. ¶¶ 4, 8. Indeed, the Second Circuit recently held that even "four branch offices in the United States" were insufficient to support general personal jurisdiction over a defendant. *Gucci Am. v. Li*, 768 F.3d 122, 135 (2d Cir. 2014). Here, IEL is not "at home" in New York or anywhere in the United States, and the exercise of general jurisdiction over IEL would violate due process.

    B. <u>There Is No Specific Jurisdiction Over IEL</u>.

      a. <u>Specific Jurisdiction Can Only Be Exercised Where a "Substantial Connection" Exists Between a Foreign Defendant's Suit-Related Conduct and the United States.</u>

For the exercise of specific personal jurisdiction to comport with due process, a defendant's "suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. __, 134 S. Ct. 1115, 1121 (2014). The relationship must "arise out of contacts that the 'defendant *himself*' creates with the forum State," and the contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 1122 (internal citation omitted). If and only if a court finds that such minimum contacts exist, it must then determine whether the exercise of personal jurisdiction would be "reasonable under the circumstances of the particular case." *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 469 (S.D.N.Y. 2010) (Daniels, J.) (internal citations omitted).

Following *Walden*, courts in this District have required no less than a "'but for' connection between the defendant's forum-directed activities and the claim" when adjudicating personal jurisdiction motions brought by foreign defendants. *In re Libor-Based Fin. Instruments*

4

*Antitrust Litig.*, No. 11 MDL 2262, 2015 WL 4634541, at \*22-23 (S.D.N.Y. Aug. 4, 2015) ("*USD LIBOR IV*") (internal citations omitted); *see Clopay Plastic Prods. Co. v. Excelsior Packaging Group, Inc.*, 12-cv-5262, 2014 WL 4473352, at \*4 (S.D.N.Y. Sept. 11, 2014) (Specific jurisdiction requires a "'substantial nexus' between the [contacts] and the cause of action.") (internal citation omitted). Judge Buchwald recently dismissed claims against many foreign defendants in the *U.S. Dollar LIBOR* litigation for lack of personal jurisdiction, applying reasoning consistent with this Court's decision in *Laydon*. *See USD LIBOR IV* at \*21-27. Judge Buchwald found that there was no specific jurisdiction over most foreign defendants because personal jurisdiction would exist "only where the LIBOR submission was determined or transmitted" in the forum or, in a suit involving allegations that a specific individual manipulated LIBOR, where the "location of the person who requested the submitter to engage in manipulation" was within the forum. *Id.* at \*32. Plaintiffs here have made no allegations that conduct related to the submission of LIBOR occurred in the United States.

Similarly, in *7 West 57th St. Realty Co. v. Citigroup, Inc.*, Judge Gardephe dismissed foreign defendants from a U.S. Dollar LIBOR litigation for lack of specific jurisdiction where the only allegation that "even hint[ed] at a connection between New York and the Foreign Banks' suit-related conduct" was a newspaper article reporting that one of the foreign defendants fired two employees who worked in the bank's New York office for their roles in attempted LIBOR manipulation. No. 13-cv-981, 2015 WL 1514539 at \*10 (S.D.N.Y. Mar. 31, 2015). The court found this allegation to be an insufficient basis for specific jurisdiction over that defendant or any others, and similarly found that, even accepting a causal relationship between changes to LIBOR rates and an effect on Plaintiff's portfolio of assets, "the fact that harm in the forum is foreseeable. . . is insufficient for the purpose of establishing specific personal jurisdiction over a

5

defendant." *Id.* at *11 (quoting *In re Terrorist Attacks*, 714 F.3d at 674). Here, Plaintiffs cannot even allege that IEL had a New York office and their reliance on the same foreseeability test is equally unavailing.

### b. Allegations of the Complaint Do Not Support the Exercise of Specific Jurisdiction.

Plaintiffs allege that IEL's Yen brokers "colluded" with traders at various banks to manipulate Euroyen TIBOR and/or Yen LIBOR submissions. *See, e.g.* FAC ¶¶ 19, 34. All of Plaintiffs' allegations against IEL exclusively concern Yen brokers who worked outside of the United States – as IEL's Yen Broker desk was in fact located abroad – and conduct that occurred outside of the United States. *See* Bigwood Decl. ¶ 11. Plaintiffs have failed to identify any United States–based trader with whom an IEL broker purportedly colluded. Such allegations do not constitute "intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden*, 134 S. Ct. at 1123.

Additionally, as this Court held in *Laydon*, the mere fact of a settlement with a U.S. regulatory authority provides no basis for specific jurisdiction. *See Laydon* PJ Op. at *5 ("the CFTC Order is insufficient to establish minimum contacts with the United States" over ICAP plc); *see also USD LIBOR IV* at *27 (rejecting government settlements as a basis for personal jurisdiction as "such governmental actions are not the basis of plaintiffs' claims"). IEL's settlement with the CFTC, like all of the allegations against IEL in the Amended Complaint, describes conduct that took place entirely outside of the United States and provides no support for Plaintiffs' attempt to establish personal jurisdiction over IEL. The CFTC Order contains no additional allegations beyond those in the Amended Complaint, and relates entirely to individuals and activities that took place abroad.

Allegations that IEL employees distributed false transaction information on "screens" and distributed false suggested Yen LIBOR rates via email "run thrus" to "banks located in New York and in the United States" (*see, e.g.,* FAC ¶¶ 86; 173; 387) also do not provide a sufficient basis for specific jurisdiction.  Plaintiffs' argument that it was "foreseeable" that publishing such information would have an impact in the United States is unavailing (*see, e.g.,* FAC ¶ 54), as "mere foreseeability does not convey personal jurisdiction."  *USD LIBOR* IV at *15 (finding no personal jurisdiction even where "the effect of LIBOR manipulation in the states in which plaintiffs sued was foreseeable.").  Plaintiffs have not – and cannot – allege that this conduct was done "with the express aim of causing an effect" in the United States, as is required for a showing of specific jurisdiction over a foreign entity such as IEL.  *See 7 West 57th St. Realty*, 2015 WL 1514539 at *11; *SPV OSUS Ltd. v. UBS AG*, No. 14-cv-9744, 2015 WL 4394955, at *6 (S.D.N.Y. July 20, 2015) (where defendants "are foreign banks alleged to have provided services to foreign investment funds, acting entirely abroad and with only sporadic or indirect contacts with the United States," it is appropriate to require the plaintiff to establish that his "injury was proximately caused by those contacts.").  The Amended Complaint does not identify anyone in the United States who was allegedly targeted by "run thrus" or "screens," nor does it allege that anyone who may have received the "run thrus" or viewed the "screens" in the United States had anything at all to do with setting the Yen LIBOR or Euroyen TIBOR benchmarks.

Allegations related to IEL's purported failure to "implement adequate controls and procedures" governing its Yen brokers and to "adequately supervise and oversee its Yen brokers and the Yen and Cash Desks" are also insufficient to establish specific jurisdiction.  *See, e.g.* FAC ¶¶ 247-52.  Those allegations again relate entirely to conduct (or an absence thereof) outside of the United States.  IEL did not have any Yen brokers, or individuals responsible for

supervising those brokers, working in the United States. Bigwood Decl. ¶ 11. Allegations that personnel, who were located and conducted all of their work outside of the United States, purportedly failed to supervise other personnel, who were also located and conducted their business entirely outside of the United States, cannot possibly form the basis for specific jurisdiction in a New York court. In any event, the Complaint does not state any claim for failure to adequately supervise, and the "failure to supervise" allegations cannot constitute "suit-related conduct" that connects IEL to this forum. *See Walden*, 134 S. Ct. at 1121.

Generalized jurisdictional allegations against defendants as a group are also insufficient to establish jurisdiction. *See, e.g.*, *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980) (rejecting an "attempt[] to attribute [one defendant]'s contacts to [another defendant] by considering the 'defending parties' together and aggregating their forum contacts," because due process requirements "must be met as to each defendant over whom a . . . court exercises jurisdiction."). Personal jurisdiction must be assessed on a defendant-by-defendant basis. *Laydon* PJ Op. at *4 ("[T]his Court must analyze the contacts articulated as to each defendant separately."), citing *Calder v. Jones*, 465 U.S. 783, 790 (1984); *Doe v. Del. State Police*, 939 F. Supp. 2d 313, 321 (S.D.N.Y. 2013) ("the plaintiff bears the burden of establishing the court's personal jurisdiction over a *particular* defendant") (emphasis added). Any suit-related conduct by other defendants in the United States is irrelevant to the question of jurisdiction over IEL, as are allegations pled against Defendants or brokers as a group without specifically alleging conduct by IEL. *See* FAC ¶ 173 (failing to specifically allege information related to ICAP rather than to other Broker Defendants).

Finally, the Court should reject Plaintiffs' allegations of a purported conspiracy as a basis for specific jurisdiction over IEL, just as the Court rejected such allegations as a basis for

jurisdiction over ICAP plc in *Laydon*. *Laydon* PJ Op. at *3. "Courts have been increasingly reluctant to extend [the conspiracy] theory of jurisdiction beyond the context of New York's long arm statute. . . ." *Id.*; *see also USD LIBOR IV* at *23-24 (rejecting applicability of conspiracy theory of personal jurisdiction where there was no *prima facie* factual showing of a conspiracy). The facts in this case, including the thin allegations of conspiracy, stem from the same nucleus of facts as in *Laydon*, and the Court similarly should not permit Plaintiffs to use purported conspiracy allegations as a basis for personal jurisdiction here.

      III.         Plaintiffs Are Not Entitled to Jurisdictional Discovery.

Plaintiffs have failed to make the *prima facie* showing that is necessary before they can take jurisdictional discovery.[4] *Laydon* PJ Op. at *7; *see also Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998) (district court did not err in denying discovery where Plaintiff failed to establish a *prima facie* case for personal jurisdiction); *Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 169 (E.D.N.Y. 2006) ("District courts in this circuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a *prima facie* case of jurisdiction."). As was the case in *Laydon*, the alleged facts in the *Sonterra* Complaint provide "no basis to believe Plaintiff[s] would find any of the information that [they] seek[] through jurisdictional discovery." *Laydon* PJ Op. at *7. Plaintiffs therefore are not entitled to jurisdictional discovery.

## CONCLUSION

For the foregoing reasons stated herein, Defendants ICAP plc and ICAP Europe Ltd. respectfully request that this Court dismiss Plaintiffs' claims against them with prejudice for lack of personal jurisdiction.

---

[4] Magistrate Judge Pitman has stayed merits discovery in Sonterra pending adjudication on personal jurisdiction. Dkt. 532, Oral Arg. Tr. at 57:1-4, October 21, 2015.

Dated: New York, New York
February 1, 2016

         RICHARDS KIBBE & ORBE LLP


      By:  /s/ Brian Fraser
         Brian S. Fraser
         (bfraser@rkollp.com)
         Shari Brandt
         (sbrandt@rkollp.com)
         H. Rowan Gaither IV
         (rgaither@rkollp.com)
         Katherine Kern Harrington
         (kharrington@rkollp.com)

         200 Liberty Street
         New York, New York 10281
         (212) 530-1800

         *Attorneys for Defendants ICAP plc and*
         *ICAP Europe Ltd.*