## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SONTERRA CAPITAL MASTER FUND, LTD., HAYMAN CAPITAL MANAGEMENT, L.P., AND CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBS AG, UBS SECURITIES JAPAN CO. LTD., MIZUHO BANK, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, RESONA BANK, LTD., J.P. MORGAN CHASE & CO., JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, MIZUHO TRUST AND BANKING CO., LTD., THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, THE BANK OF YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, THE ROYAL BANK OF SCOTLAND GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED, RBS SECURITIES INC., BARCLAYS BANK PLC, BARCLAYS PLC, BARCLAYS CAPITAL INC., CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, LLOYDS BANKING GROUP PLC, LLOYDS BANK PLC, ICAP PLC, ICAP EUROPE LIMITED, R.P. MARTIN HOLDINGS LIMITED, MARTIN BROKERS (UK) LTD., TULLETT PREBON PLC, BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., MERRILL LYNCH INTERNATIONAL, AND JOHN DOES NOS. 1-50,<br><br>Defendants. | DOCKET NO. 15-cv-05844-GBD<br><br><br>**THE EUROPEAN DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT FOR LACK OF PERSONAL JURISDICTION** |

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ...............................................................................................................2

    A.    The Parties ...........................................................................................2

    B.    Yen LIBOR and Euroyen TIBOR.........................................................3

    C.    Plaintiffs' Jurisdictional Allegations....................................................4

LEGAL STANDARD.......................................................................................................5

ARGUMENT ...................................................................................................................6

I.    THE EUROPEAN DEFENDANTS ARE NOT SUBJECT TO GENERAL
    JURISDICTION ...................................................................................................6

    A.    No European Defendant Is "At Home" in New York..............................6

    B.    No European Defendant Has Consented to General Jurisdiction ............7

        1.    Registration with New York State's Banking Regulator Does Not
            Entail Consent to General Jurisdiction .....................................7

        2.    No European Defendant Has Otherwise Consented to Personal
            Jurisdiction.................................................................................9

II.    THE EUROPEAN DEFENDANTS ARE NOT SUBJECT TO SPECIFIC
    JURISDICTION ...................................................................................................10

    A.    The Alleged Suit-Related Conduct Occurred Outside the United States .............11

    B.    Plaintiffs' Allegations Purporting To Establish a Substantial Nexus with
        the Forum Are Not Related to their Claims or Alleged Injury ..............14

        1.    General Allegations of Transactions in the United States Are
            Insufficient To Establish Personal Jurisdiction..........................14

        2.    Allegations Concerning the Use of U.S. Wires Are Insufficient To
            Establish Personal Jurisdiction .................................................15

        3.    Allegations of Foreseeable Harm in the Forum Are Insufficient To
            Establish Personal Jurisdiction .................................................16

        4.    Allegations of a Conspiracy with U.S.-based Entities Are
            Insufficient To Establish Personal Jurisdiction..........................17

        5.    Allegations of Derivatives Transactions by Plaintiffs Residing
            Outside New York Are Insufficient To Establish Personal
            Jurisdiction over the Counterparties in New York .....................19

        6.    Allegations of New York Forum-Selection Clauses Are
            Insufficient To Establish Personal Jurisdiction..........................19

III.   PLAINTIFFS' RICO AND SHERMAN ACT CLAIMS DO NOT PROVIDE
       ANY SEPARATE BASIS FOR PERSONAL JURISDICTION ......................................21

       A.   Because Plaintiffs' Federal Claims Fail on the Merits, a "Nationwide
            Contacts" Analysis Is Unnecessary ......................................................................21

       B.   Even under a "Nationwide Contacts" Analysis, the European Defendants
            Would Not Be Subject to Personal Jurisdiction....................................................22

       C.   A "Nationwide Contacts" Analysis Does Not Comport with Due Process...........22

       D.   A "Nationwide Contacts" Analysis Is Irrelevant to Plaintiffs' State Law
            Claims ...................................................................................................................23

IV.    CONSIDERATIONS OF FAIR PLAY, SUBSTANTIAL JUSTICE AND
       INTERNATIONAL COMITY SUPPORT DISMISSAL...................................................24

V.     JURISDICTIONAL DISCOVERY IS INAPPROPRIATE...............................................24

CONCLUSION.................................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7 W. 57th St. Realty Co.* v. *Citigroup, Inc.*,
  2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ............................................................ *passim*

*In re Aluminum Warehousing Antitrust Litig.*,
  90 F. Supp. 3d 219 (S.D.N.Y. 2015) ........................................................................ 17, 18

*AM Trust* v. *UBS AG*,
  78 F. Supp. 3d 977 (N.D. Cal. 2015) ...................................................................... 9, 10, 12

*Anselmo* v. *Univision Station Grp., Inc.*,
  1993 WL 17173 (S.D.N.Y. Jan. 15, 1993) ............................................................... 21

*Armco Inc.* v. *N. Atl. Ins. Co. Ltd.*,
  68 F. Supp. 2d 330 (S.D.N.Y. 1999) ..................................................................... 20-21

*Asahi Metal Indus. Co.* v. *Superior Court*,
  480 U.S. 102 (1987) ........................................................................................... 24

*AstraZeneca AB* v. *Mylan Pharm., Inc.*,
  72 F. Supp. 3d 549 (D. Del. 2014) ....................................................................... 9

*Banker* v. *Esperanza Health Sys., Ltd.*,
  201 F. App'x 13 (2d Cir. 2006) ............................................................................. 5

*Calder* v. *Jones*,
  465 U.S. 783 (1984) ........................................................................................... 17

*Chatwal Hotels & Resorts LLC* v. *Dollywood Co.*,
  90 F. Supp. 3d 97 (S.D.N.Y. 2015) ..................................................................... 8, 9

*Clopay Plastic Prods. Co.* v. *Excelsior Packaging Grp., Inc.*,
  2014 WL 4473352 (S.D.N.Y. Sept. 11, 2014) ...................................................... 11

*Daimler AG* v. *Bauman*,
  134 S. Ct. 746 (2014) ...................................................................................... *passim*

*Fiduciary Network, LLC* v. *Buehler*,
  2015 WL 2165953 (N.D. Tex. May 8, 2015) ......................................................... 9

*First Am. Corp.* v. *Price Waterhouse LLP*,
  154 F.3d 16 (2d Cir. 1998) ................................................................................. 8

*First Capital Asset Mgmt., Inc.* v. *Brickellbush, Inc.*,
  218 F. Supp. 2d 369 (S.D.N.Y. 2002)......................................................................23

*Galope* v. *Deutsche Bank Nat'l Tr. Co.*,
  2014 WL 8662645 (C.D. Cal. Nov. 14, 2014)...........................................1, 11, 17

*Gucci Am., Inc.* v. *Weixing Li*,
  768 F.3d 122 (2d Cir. 2014)..............................................................................7, 9

*Jazini* v. *Nissan Motor Co., Ltd.*,
  148 F.3d 181 (2d Cir. 1998)...........................................................................5, 24

*Keeley* v. *Pfizer Inc.*,
  2015 WL 3999488 (E.D. Mo. July 1, 2015) ...............................................................9

*Laydon* v. *Mizuho Bank, Ltd.*,
  2014 WL 1280464 (S.D.N.Y. Mar. 28, 2014) ...........................................................1

*Laydon* v. *Mizuho Bank, Ltd.*,
  2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) ............................................. *passim*

*Laydon* v. *Mizuho Bank, Ltd.*,
  2015 WL 1515487 (S.D.N.Y. Mar. 31, 2015) .....................................................1, 3

*In re LIBOR-based Fin. Instruments Antitrust Litig.*,
  2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015)............................................... *passim*

*In re LIBOR-based Fin. Instruments Antitrust Litig.*,
  2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015) ...........................................................1

*In re LIBOR-based Fin. Instruments Antitrust Litig.*,
  No. 11-md-2262 (NRB) (S.D.N.Y. Dec. 23, 2015) ...............................................25

*Motorola Credit Corp.* v. *Uzan*,
  2015 WL 5613077 (S.D.N.Y. Sept. 9, 2015).............................................................9

*ONY, Inc.* v. *Cornerstone Therapeutics, Inc.*,
  720 F.3d 490 (2d Cir. 2013)..................................................................................22

*Penguin Grp. (USA) Inc.* v. *Am. Buddha*,
  609 F.3d 30 (2d Cir. 2010)....................................................................................5

*Reich* v. *Lopez*,
  38 F. Supp. 3d 436 (S.D.N.Y. 2014)....................................................................21

*Republic of Pan.* v. *BCCI Holdings (Lux.) S.A.*,
  119 F.3d 935 (11th Cir. 1997) .............................................................................23

*Robinson* v. *Overseas Military Sales Corp.*,
  21 F.3d 502 (2d Cir. 1994)...................................................................................5

*In re Roman Catholic Diocese*,
  745 F.3d 30 (2d Cir. 2014)..................................................................................14

*SEC* v. *Softpoint Inc.*,
  2001 WL 43611 (S.D.N.Y. Jan. 18, 2001) ..........................................................22

*Sonterra Capital Master Fund Ltd.* v. *Credit Suisse Grp. AG*,
  No. 15-cv-0871 (S.D.N.Y. Sept. 22, 2015)..........................................................25

*Tarsavage* v. *Citic Tr. Co.*,
  3 F. Supp. 3d 137 (S.D.N.Y. 2014)......................................................................19

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013)................................................................................16

*United States* v. *51 Pieces of Real Prop. Roswell, N.M.*,
  17 F.3d 1306 (10th Cir. 1994) ............................................................................10

*Varga* v. *Credit Suisse*,
  155 N.Y.S.2d 655 (N.Y. Sup. Ct. 1956) ................................................................9

*Vera* v. *Republic of Cuba*,
  91 F. Supp. 3d 561 (S.D.N.Y. 2015)......................................................................8

*In re Vitamins Antitrust Litig.*,
  120 F. Supp. 2d 45 (D.D.C. 2000) ......................................................................10

*Walden* v. *Fiore*,
  134 S. Ct. 1115 (2014) ................................................................................*passim*

**Statutes and Rule**

15 U.S.C. § 22...................................................................................................21, 22

18 U.S.C. § 1965...............................................................................................21, 22

Federal Rule of Civil Procedure 12(b).................................................................1, 25

Conn. Gen. Stat. § 36a-428g...............................................................................9, 10

New York Banking Law § 200 ..............................................................................8, 9

**Other Authority**

4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
  § 1069.7 (3d ed. 2002) .......................................................................................23

The European Defendants respectfully submit this joint memorandum of law in support of their motion to dismiss the above-captioned action for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

Plaintiffs in this action recycle facially deficient claims that this Court has already rejected regarding the alleged manipulation of the London Interbank Offered Rate for Japanese yen ("Yen LIBOR") and the Tokyo Interbank Offered Rate ("Euroyen TIBOR").[2]  Plaintiffs' allegations of personal jurisdiction fare no better:  in its more than 1,000 paragraphs and 450 pages, the amended complaint ("Amended Complaint" or "AC") offers only scattershot jurisdictional allegations that this Court, and every other court that has considered these issues in the context of alleged benchmark interest rate manipulation, has held insufficient to plead personal jurisdiction or entitle plaintiffs to jurisdictional discovery.[3]

The European Defendants are not subject to general jurisdiction and none of them has consented to jurisdiction in this Court.  Each of the European Defendants has its place of incorporation and principal place of business outside the United States.  As multiple courts have

---

[1] The European Defendants are:  Barclays plc, Barclays Bank plc, Coöperatieve Rabobank U.A. (f/k/a Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.) ("Rabobank"), Deutsche Bank AG, DB Group Services (UK) Limited ("DBGS"), HSBC Bank plc, HSBC Holdings plc, J.P. Morgan Securities plc, Lloyds Banking Group plc ("LBG"), Lloyds Bank plc (formerly known as Lloyds TSB Bank plc), The Royal Bank of Scotland Group plc ("RBS Group"), The Royal Bank of Scotland plc ("RBS plc"), RBS Securities Japan Ltd., Société Générale, UBS AG ("UBS") and UBS Securities Japan Co. Ltd.

[2] *See Laydon* v. *Mizuho Bank, Ltd.* ("*Laydon I*"), 2014 WL 1280464, at *7-14 (S.D.N.Y. Mar. 28, 2014); *Laydon* v. *Mizuho Bank, Ltd.* ("*Laydon II*"), 2015 WL 1515487, at *7-11 (S.D.N.Y. Mar. 31, 2015); *see also* Defendants' Memorandum of Law in Support of their Motion to Dismiss the Amended Class Action Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim ("Merits Brief" or "Merits Br."), submitted herewith.

[3] *See, e.g.*, *Laydon* v. *Mizuho Bank, Ltd.* ("*Laydon III*"), 2015 WL 1515358, at *2-7 (S.D.N.Y. Mar. 31, 2015); *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR V*"), 2015 WL 6696407, at *8, 14, 19 (S.D.N.Y. Nov. 3, 2015); *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR IV*"), 2015 WL 6243526, at *19-39 (S.D.N.Y. Oct. 20, 2015); *7 W. 57th St. Realty Co.* v. *Citigroup, Inc.*, 2015 WL 1514539, at *10-11 (S.D.N.Y. Mar. 31, 2015); *Galope* v. *Deutsche Bank Nat'l Tr. Co.*, 2014 WL 8662645, at *3-4 (C.D. Cal. Nov. 14, 2014).

already held, the European Defendants are not "at home" in the United States, let alone New York.  Thus, they are not subject to the exercise of general jurisdiction by this Court.  Nor has any of the European Defendants consented to the exercise of general jurisdiction, whether by subjecting itself to regulation by state or federal authorities, by consenting to the jurisdiction of a court in a criminal matter, or otherwise.

Plaintiffs similarly fail to plead any basis for this Court to exercise specific jurisdiction over each European Defendant.  Indeed, Plaintiffs base their claims on allegations of uniquely foreign conduct—namely, that the European Defendants engaged in conduct outside the United States that supposedly impacted foreign interest rate benchmarks.  At all relevant times, Yen LIBOR and Euroyen TIBOR were administered in London and Tokyo, respectively.  Further, the European Defendants made submissions used to calculate these rates from outside the United States.  Plaintiffs offer no allegations to suggest that a New York court could possibly exercise personal jurisdiction over the European Defendants for such foreign conduct.  Accordingly, Plaintiffs' claims should be dismissed with prejudice against the European Defendants.

## BACKGROUND

### A.     The Parties

***Plaintiffs.***  Sonterra Capital Master Fund, Ltd. ("Sonterra"), "an investment fund with its principal place of business in New York," does not allege that it engaged in any direct transactions with any European Defendant.  (AC ¶¶ 55 & 906.)  The California State Teachers' Retirement System ("CalSTRS"), a California-based retirement fund, alleges that it engaged in "U.S.-based" transactions involving "Euroyen-based derivatives, including Yen foreign exchange forwards" (*id*. ¶¶ 57 & 918), with six of the sixteen European Defendants:  Barclays Bank plc, Deutsche Bank AG, HSBC Bank plc, RBS, Société Générale and UBS (*see, e.g.*, *id*.

¶¶ 57, 67, 82 & 918).  Hayman Capital Management, L.P. ("Hayman"), an investment advisor in

Dallas, Texas, purports to bring claims on behalf of a group of unidentified funds that it advises

(*id*. ¶ 56), some of which allegedly engaged in transactions involving "Euroyen-based

derivatives, including Yen-LIBOR-based interest rate swaps and Yen-LIBOR-based

'swaptions,'" with two of the sixteen European Defendants:  Barclays Bank plc and Deutsche

Bank AG.  (*Id*.; *see also, e.g.*, ¶¶ 67, 78, 164 & 166.)

    ***European Defendants.***  Each European Defendant is incorporated outside the United

States and has its principal places of business outside the United States.  (*See* App'x A.)[4]  Each

European Defendant's business operations and contacts in New York and the United States

represent a comparatively small portion of its overall global business operations.  (*See id*.)

Indeed, Barclays plc, DBGS, HSBC Holdings plc, RBS Group and LBG are merely foreign

holding companies with no U.S. operations whatsoever.  (*See id*.)  No European Defendant

determined its Yen LIBOR or Euroyen TIBOR submissions in the United States or transmitted

those submissions from the United States (*see id*.), and no transaction between any Plaintiff and

any European Defendant is alleged to have been solicited or negotiated in New York.

    **B.    Yen LIBOR and Euroyen TIBOR**

    During the relevant period, Yen LIBOR was determined in and published from London

by the British Bankers' Association ("BBA") (AC ¶¶ 186 & 189), and Euroyen TIBOR was

determined in and published from Tokyo by the Japanese Bankers Association ("JBA")

(*id*. ¶ 182 & Ex. A-1 app. A ¶ 11).  *See Laydon II*, 2015 WL 1515487, at *9.  Barclays Bank plc,

---

[4] For the convenience of the Court, Appendix A compiles and cites directly to the relevant testimony contained in the declarations filed by each of the European Defendants contemporaneously with this motion.  On a motion pursuant to Rule 12(b)(2), courts may rely upon materials outside the pleadings, including declarations.  *See Laydon III*, 2015 WL 1515358, at *4.

Deutsche Bank AG, HSBC Bank plc, Lloyds Bank plc, Rabobank, RBS plc, Société Générale

and UBS were members of the Yen LIBOR panel during the putative class period (AC ¶ 145),

and only Deutsche Bank AG, UBS and RBS plc were members of the Euroyen TIBOR panel.[5]

(*Id.* ¶ 144.)

C.    **Plaintiffs' Jurisdictional Allegations**

Plaintiffs' theory of personal jurisdiction relies on allegations that some or all of the

European Defendants (or their unnamed corporate affiliates):

- employed individuals in New York or the United States (AC ¶¶ 67, 78, 81 & 126), or maintain offices in New York (*id.* ¶¶ 65, 78, 92, 106, 111, 124 & 136);

- earned some unspecified fraction of their overall global income in the United States (*id.* ¶¶ 67, 78, 81, 111 & 125);

- are subject to regulation by one or more state or federal authorities, including the New York State Department of Financial Services ("NYDFS"), the Connecticut Department of Banking, the Federal Reserve Bank of New York ("Federal Reserve") and the U.S. Securities and Exchange Commission ("SEC") (*id.* ¶¶ 67, 78, 92, 107, 112, 125, 137 & 169);

- described one or more of their U.S. branches or subsidiaries as a "material entity" in papers submitted to the Federal Reserve (*id.* ¶¶ 65, 78, 91, 107, 126 & 138);

- listed their shares on a U.S. exchange (*id.* ¶¶ 67, 81, 91 & 138);

- had U.S. branches or subsidiaries that allegedly traded Euroyen-based derivatives with various U.S. counterparties (*e.g.*, *id.* ¶¶ 113, 141, 171-172 & 211);

- entered into foreign exchange transactions or traded foreign exchange derivative products in the United States with unspecified counterparties (*e.g.*, *id.* ¶¶ 79 & 141);

- engaged in electronic communications with some attenuated connection to Yen LIBOR or Euroyen TIBOR within the United States (*id.* ¶¶ 173, 176-177 & 1034), or that were routed through U.S. servers (*e.g.*, *id.* ¶¶ 1030 & 1033);

---

[5] The remaining European Defendants—Barclays plc, DBGS, HSBC Holdings plc, J.P. Morgan Securities plc, RBS Group, RBS Securities Japan Ltd. and UBS Securities Japan Co. Ltd.—were not members of either panel.

- caused, by means of their extraterritorial conduct, non-defendants to publish false information concerning Yen LIBOR and Euroyen TIBOR via U.S.-based wires or servers (*e.g.*, *id.* ¶¶ 175, 205, 741 & 1033); and

- caused harm to counterparties in the United States as a result of their extraterritorial conduct (*id.* ¶¶ 170-171).

As discussed below, these allegations fail to establish personal jurisdiction over any of the European Defendants.

## LEGAL STANDARD

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc.* v. *Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).[6]  This burden must be met separately by each plaintiff, against each defendant, "with respect to each claim asserted." *LIBOR IV*, 2015 WL 6243526, at *27.  "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists."  *Penguin Grp.*, 609 F.3d at 34-35.  This showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *Laydon III*, 2015 WL 1515358, at *1.  While a plaintiff's pleadings "are construed in the light most favorable to the plaintiff," *Banker* v. *Esperanza Health Sys., Ltd.*, 201 F. App'x 13, 15 (2d Cir. 2006), a court need not "draw argumentative inferences in the plaintiff's favor," *Robinson* v. *Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994), nor accept as true "a legal conclusion couched as a factual allegation," *Jazini* v. *Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998).

---

[6] Unless otherwise specified, all citations and internal quotation marks have been omitted.

**ARGUMENT**

The Amended Complaint fails to establish personal jurisdiction over any European Defendant for four distinct reasons. *First*, no European Defendant is subject to this Court's exercise of general jurisdiction because none is "at home" in the United States, let alone in New York, and none has consented to the exercise of general personal jurisdiction by this Court. *Second*, no European Defendant is subject to specific jurisdiction in this Court because the alleged suit-related conduct occurred entirely outside New York. *Third*, the nationwide service of process provisions in the statutes underlying Plaintiffs' RICO and antitrust claims are inapplicable because, among other reasons, those nationwide service provisions are not triggered here, where Plaintiffs have failed to state a claim under those statutes. *Fourth*, because there is no relevant nexus between any of the European Defendants' alleged contacts with the forum and Plaintiffs' claims, subjecting the European Defendants to suit in this Court would not comport with the "fair play and substantial justice" that due process requires. In addition, Plaintiffs are not entitled to jurisdictional discovery because they have not made a *prima facie* showing of personal jurisdiction, nor is there any reason to believe that new facts that supposedly might be obtained through jurisdictional discovery would alter this analysis.

I.    **THE EUROPEAN DEFENDANTS ARE NOT SUBJECT TO GENERAL JURISDICTION.**

None of the European Defendants is subject to general jurisdiction in this Court because none of them (i) is "at home" in New York (or in the United States), or (ii) has consented to the exercise of general jurisdiction.

A.    **No European Defendant Is "At Home" in New York.**

The Supreme Court has held that "a court may assert jurisdiction over a foreign corporation to hear any and all claims against [it], only when the corporation's affiliations with

the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum State." *Daimler AG* v. *Bauman*, 134 S. Ct. 746, 751 (2014).  Absent exceptional circumstances not present here, a corporate defendant is generally subject to general jurisdiction only in its "place of incorporation and principal place of business."[7] *Daimler*, 131 S. Ct. at 760.  Here, none of the European Defendants is incorporated in New York or has its principal place of business in New York (*see* App'x A), and thus none can be subject to the exercise of general jurisdiction by this Court.[8]

    **B.**    **No European Defendant Has Consented to General Jurisdiction.**

        **1.**    **Registration with New York State's Banking Regulator Does Not Entail Consent to General Jurisdiction.**

Plaintiffs assert that Barclays Bank plc, Deutsche Bank AG, Lloyds Bank plc, Société Générale, Rabobank and RBS have "consented to the personal jurisdiction of the United States Courts by registering their New York branch or representative offices with the [NYDFS] under New York Banking Law §§ 200 and 200-b." (AC ¶ 169.)  Not so.  Both the text of the statute and the case law interpreting it make clear that registration pursuant to New York Banking Law

---

[7] The type of "exceptional case" that would justify the exercise of general jurisdiction over the European Defendants in New York would require contacts "so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 134 S. Ct. at 761 n.19.  Each European Defendant's operations in New York (and in the United States generally) account for only a fraction of its global business operations (*see* App'x A), and "'plainly do not approach' the required level of contact" necessary to subject it to the exercise of general jurisdiction of courts in the forum.  *Gucci Am. Inc.* v. *Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler*, 134 S. Ct. at 761 n.19).  Indeed, Judge Buchwald ruled that European Defendants Barclays Bank plc, Deutsche Bank AG, and RBS Group are not subject to general jurisdiction in New York.  *LIBOR IV*, 2015 WL 6243526, at *26-27.  Plaintiffs in the actions before Judge Buchwald did not even attempt to argue that European Defendants HSBC Bank plc, HSBC Holdings plc, LBG or Rabobank—each of whom was named as a defendant in an action filed in New York—are subject to general jurisdiction there.

[8] Apparently acknowledging that the European Defendants are not "at home" in this forum, Plaintiffs' counsel has expressly represented to liaison counsel for Defendants that they do not intend to argue that any foreign defendant is subject to the general jurisdiction of the Court on those grounds.

§ 200 does not require or constitute consent to all-purpose general jurisdiction.[9]  Rather, it is a limited consent to a narrow species of specific jurisdiction, which is inapplicable here.[10]

Any entity that registers as a foreign banking corporation in New York must appoint an agent in the state for service of process with respect to an "action or proceeding against [the registrant] on a cause of action *arising out of a transaction with its New York agency or agencies or branch or branches*."  N.Y. Banking Law § 200(3) (emphasis added).  Thus, as Judge Gardephe held when considering the identical argument in a case alleging LIBOR misconduct against some of the same foreign banks who are defendants in this case, "[t]he plain language of [N.Y. Banking Law § 200(3)] limits any consent to personal jurisdiction by registered banks to specific personal jurisdiction" regarding claims directly related to the activities of the bank's New York branch or agency.  *7 West 57th St.*, 2015 WL 1514539, at *11; *see also Varga* v. *Credit Suisse*, 155 N.Y.S.2d 655, 658 (N.Y. Sup. Ct.) (action arising out of a foreign bank's conduct in Europe "does not come within the scope of [§ 200(3)]"), *aff'd*, 157 N.Y.S.2d 596 (App. Div. 1st Dep't 1956).  Moreover, a determination that registration under § 200 constitutes consent to general jurisdiction "would directly contradict" the Second Circuit's decision in

---

[9] Plaintiffs cite to an irrelevant case where a court compelled a foreign bank to comply with an information subpoena issued to its New York branch in the course of discovery relating to post-judgment execution proceedings. (AC ¶ 169 n.88 (citing *Vera* v. *Republic of Cuba*, 91 F. Supp. 3d 561 (S.D.N.Y. 2015)).)  The court in *Vera*, however, was not concerned with determining whether it could exercise personal jurisdiction over a foreign bank as a defendant in a civil action involving claims unrelated to that bank's registered New York branch.  The narrow ruling in *Vera* was limited to the question of whether the New York branch itself can be compelled to comply with a judgment enforcement subpoena for information by conducting electronic searches in its New York offices.  *Vera*, 91 F. Supp. 3d at 570-72.  As the Second Circuit has made clear, ordering compliance with a third-party subpoena does not imply that the same party could be haled into court in the forum as a defendant in a civil action.  *See First Am. Corp.* v. *Price Waterhouse LLP*, 154 F.3d 16, 20 (2d Cir. 1998).

[10] This limitation is buttressed by the statute's historical evolution.  The 1938 version of Banking Law § 200(3) provided *unlimited* consent for service of process in "any action or proceeding" brought by a resident of New York.  N.Y. Banking Law § 200(3) (1938).  The scope of the consent was limited in 1951, when the Legislature amended that service of process provision to restrict it to "cause[s] of action arising out of a transaction with [a foreign bank's] New York agency or agencies."  N.Y. Banking Law § 200(3) (1951).

*Gucci*, which "stands for the proposition that mere operation of a branch office in a forum—and satisfaction of any attendant licensing requirements—is not constitutionally sufficient to establish general jurisdiction." *Motorola Credit Corp.* v. *Uzan*, 2015 WL 5613077, at *2 (S.D.N.Y. Sept. 9, 2015).[11]  Because Plaintiffs fail to connect any European Defendant's New York branch or agency with any relevant alleged conduct (*see infra* pp. 11-13), Plaintiffs' allegations regarding New York Banking Law § 200 fail to establish personal jurisdiction.

### 2.    No European Defendant Has Otherwise Consented to Personal Jurisdiction.

Plaintiffs allege that certain European Defendants have consented to the exercise of general jurisdiction in one of two additional ways.  *First*, Plaintiffs suggest that certain Defendants have consented to the exercise of general jurisdiction because they are subject to regulation by various state or federal authorities such as the Connecticut Department of Banking (AC ¶ 169), the Florida Office of Financial Regulation (*id.* ¶ 67), the SEC (*id.* ¶ 107), and the Federal Reserve (*e.g.*, *id.* ¶ 112, 125 & 137).  But any argument that a foreign corporation "is subject to general jurisdiction because it is regulated" by the government "amounts to saying that a foreign corporation is subject to general personal jurisdiction in the U.S. simply because U.S. operations are governed by U.S. law." *AM Trust* v. *UBS AG*, 78 F. Supp. 3d 977, 985 (N.D. Cal. 2015).  This absurd result, which is tantamount to a conclusion that "every foreign corporation

---

[11] Even if New York Banking Law § 200(3) could be read as requiring consent to general jurisdiction, many courts have ruled that, in light of *Daimler*, laws requiring a business to consent to general jurisdiction in a state as a precondition for conducting business in the state violate a defendant's due process rights.  *See, e.g.*, *Chatwal Hotels & Resorts LLC* v. *Dollywood Co.*, 90 F. Supp. 3d 97, 105 (S.D.N.Y. 2015) (after *Daimler* and *Gucci*, "the mere fact of [a corporation's] being registered to do business is insufficient to confer general jurisdiction in a state that is neither its state of incorporation [n]or its principal place of business"); *AstraZeneca AB* v. *Mylan Pharm., Inc.*, 72 F. Supp. 3d 549, 557 (D. Del. 2014) ("Finding mere compliance with [state registration] statutes [requiring the appointment of an agent for service of process] sufficient to satisfy jurisdiction would expose companies with a national presence . . . to suit all over the country, a result specifically at odds with *Daimler*."); *Fiduciary Network, LLC* v. *Buehler*, 2015 WL 2165953, at *4-6 (N.D. Tex. May 8, 2015); *Keeley* v. *Pfizer Inc.*, 2015 WL 3999488, at *2-4 (E.D. Mo. July 1, 2015).

would be subject to general jurisdiction in the U.S., since every corporation operating in the U.S. is subject to some extent to U.S. laws," *id.*, is plainly inconsistent with *Daimler*'s determination that a "corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 134 S. Ct. at 762 n.20; (*see also supra* n.11).[12]

*Second*, Plaintiffs suggest that a few of the European Defendants have consented to general jurisdiction in this forum by entering criminal guilty pleas or agreeing to waivers of indictment in jurisdictions *outside* New York.  (*E.g.*, AC ¶¶ 80, 114, 141, 759 & 770.)  This contention contradicts well-established law.  An entity's consent to the exercise of personal jurisdiction by a criminal court does not constitute consent to personal jurisdiction in a civil action, let alone one in a different forum.  *See, e.g., United States* v. *51 Pieces of Real Prop. Roswell, N.M.*, 17 F.3d 1306, 1313 (10th Cir. 1994) (exercise of personal jurisdiction over defendant in a criminal proceeding "did not automatically confer jurisdiction on the court in the related civil proceeding"); *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 45, 53 (D.D.C. 2000) (subsequent history omitted) (same for criminal antitrust pleas and a leniency agreement).

## II.   THE EUROPEAN DEFENDANTS ARE NOT SUBJECT TO SPECIFIC JURISDICTION.

To be subject to specific jurisdiction, (i) "the defendant's suit-related conduct must create a substantial connection with the forum State," (ii) that connection "must arise out of contacts that the 'defendant *himself*' creates with the forum State," and (iii) the contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there."  *Walden* v. *Fiore*,

---

[12] Plaintiffs' argument that RBS and UBS "consented to personal jurisdiction in the United States by registering with the [Connecticut Department of Banking] under Section 36a-428g of the Connecticut General Statutes" is also flawed.  (AC ¶ 169.)  Even if a "nationwide contacts" analysis applied—and it does not (*see infra* pp. 21-23)—by registering, a foreign bank consents only to regulation by Connecticut's Banking Commissioner, not to the exercise of personal jurisdiction by Connecticut courts—let alone courts in other jurisdictions—in civil actions unrelated to the bank's activity in Connecticut.  *See* Conn. Gen. Stat. § 36a-428g.

134 S. Ct. 1115, 1121-22 (2014).  Plaintiffs fail to allege any relevant link—let alone the

required "substantial nexus"—between the European Defendants' contacts with the forum and

any cause of action.  *Clopay Plastic Prods. Co.* v. *Excelsior Packaging Grp., Inc.*, 2014 WL

4473352, at *4 (S.D.N.Y. Sept. 11, 2014).  The alleged suit-related conduct occurred entirely

outside the United States, and Plaintiffs' scattered factual allegations of conduct that purportedly

occurred within the United States fall well short of establishing a substantial nexus.

### A.  The Alleged Suit-Related Conduct Occurred Outside the United States.

Courts consistently have dismissed suits regarding the alleged manipulation of foreign

interest rate benchmarks because plaintiffs failed to adequately allege any suit-related contacts

with the forum.  *See Laydon III*, 2015 WL 1515358, at *2-6; *LIBOR IV*, 2015 WL 6243526, at

*21-27; *7 W. 57th St.*, 2015 WL 1514539, at *10-11; *Galope*, 2014 WL 8662645, at *3-4.  The

claims here should be dismissed for the same reason.  Plaintiffs' claims arise from the alleged

manipulation of Yen LIBOR and Euroyen TIBOR.  These benchmarks were published abroad by

foreign trade associations in London and Tokyo, respectively (*see supra* p. 3), and all European

Defendants' Yen LIBOR and/or Euroyen TIBOR submissions were always determined and

transmitted from outside the United States (*see* App'x A).  Plaintiffs do not plead any facts

showing alleged manipulation of Yen LIBOR or Euroyen TIBOR from within New York.  And

their allegations premised on government investigations and prosecutions fail to show otherwise.

Plaintiffs point to criminal proceedings against former employees of Rabobank in an

attempt to suggest that certain of its traders engaged in suit-related conduct in the United States

(*see, e.g.*, AC ¶¶ 37-38, 151-152 & 235-236), but these allegations do not provide a basis for

specific jurisdiction.  *First*, each of these former Rabobank employees was based in Europe or

Asia and none was alleged in the proceedings to have made Yen LIBOR submissions or requests for Yen LIBOR submissions from within the United States.[13]  Plaintiffs do not allege otherwise. *Second*, nothing in the recent criminal trial of two of those foreign-based former Rabobank employees—Anthony Allen and Anthony Conti (which concerned both USD LIBOR and Yen LIBOR)—indicates that either of them colluded with any New York-based Rabobank employees in relation to *Yen LIBOR*.[14]  No testimony from the proceeding supports such an assertion, and Plaintiffs cite none.  Plaintiffs' failure to allege any facts indicating that any Rabobank employee in the United States engaged in any conduct concerning Yen LIBOR is unsurprising, as none of the detailed regulatory settlements—which were the result of years of investigation by multiple authorities with access to millions of pages of documents and audio communications—alleges that any Rabobank employee engaged in Yen LIBOR-related conduct in the United States.[15]

Plaintiffs' allegations regarding Deutsche Bank and DBGS are also flawed.  Plaintiffs assert that DBGS traders and Deutsche Bank's New York traders participated in "Monday Risk Calls" to "discuss trading strategy and trading positions, including its Yen-LIBOR submissions

---

[13] *See* AC ¶ 275 (A. Allen based in London), ¶ 277 (T. Motomura based in Tokyo), ¶ 278 (P. Thompson based in Asia); *id.* Ex. D-7, ¶ 17 (P. Robson based in London); Declaration of David R. Gelfand, dated February 1, 2016, filed herewith ("Gelfand Decl."), Ex. A at 172:1-2 (L. Stewart based in London), 1172:8-9 (A. Conti based in London); *id.*, Ex. B at 2 (T. Yagami based in Asia).

[14] Although Plaintiffs suggest that testimony in the Allen/Conti proceeding indicates that Christian Schluep, a former Rabobank employee based in New York, colluded with Messrs. Allen and Conti in relation to Yen LIBOR (AC ¶ 152), the *only* testimony pertaining to misconduct by Mr. Schluep during the proceeding related solely to *USD LIBOR*—a benchmark not at issue in this action.  *See* Gelfand Decl., Ex. A at 861:12-17, 1007:19-1008:11.

[15] *See, e.g.*, AC, Ex. D-1 at Attachment A ¶ 30 (describing Yen LIBOR requests made by traders in Tokyo, Hong Kong and Singapore to submitters in London and Utrecht, and making no allegation of Yen LIBOR conduct in the United States).  Although Plaintiffs allege that certain former employees of Rabobank had counterparties located in the United States (none of whom are Plaintiffs here) and knew that U.S. counterparties would be adversely affected by Yen LIBOR manipulation (AC ¶¶ 151-153), such allegations fail to establish specific jurisdiction over Rabobank because (i) the sole question on this motion is whether there is personal jurisdiction over the claims of any named plaintiff, *AM Trust*, 78 F. Supp. 3d at 986 ("claims of unnamed class members are irrelevant to the question of specific jurisdiction"), and no Rabobank counterparty is a plaintiff here; and (ii) as discussed below, personal jurisdiction cannot be based on the foreseeable in-forum effects of the alleged manipulation (*see infra* pp. 16-17).

-12-

and Euroyen-based derivatives positions" (AC ¶ 157), but Plaintiffs do not allege any facts

showing—nor do the regulatory findings suggest—that Deutsche Bank's Yen LIBOR

submissions were ever discussed on these calls or that the calls even contemplated—much less

had any impact on—Yen LIBOR- or Euroyen TIBOR-based derivatives sold in the United

States.[16]

Plaintiffs also attempt to establish specific jurisdiction by referencing alleged conduct by

employees of certain European Defendants (or their affiliates) located in the United States but

outside New York.  (AC ¶¶ 155 & 159.)  But such allegations are irrelevant.  These allegations

are not suit-related, and even if they were, they are not contacts *with New York*, which are the

only contacts that are relevant here (*see infra* pp. 21-23).

In any event, even if any of Plaintiffs' allegations did properly plead a relevant contact

between a European Defendant and New York—or any other forum in the United States—

Plaintiffs must tie that contact to their alleged injury in order to support the exercise of specific

jurisdiction.  *See Laydon III*, 2015 WL 1515358, at *2; *see also 7 W. 57th St.*, 2015 WL

1514539, at *10 (allegations that New York-based employees of foreign bank engaged in LIBOR

manipulation were insufficient to establish specific jurisdiction over the foreign bank where

plaintiff did not allege that it was injured by the conduct of those employees).  It is well

established that "specific jurisdiction properly exists if the defendant purposefully directed his

activities at residents of the forum, *and the litigation results from alleged injuries that arise out*

---

[16] Plaintiffs' allegations that a single New York-based Deutsche Bank employee conspired with an employee of R.P. Martin to "manipulate Yen-LIBOR, Euroyen TIBOR and the prices of Euroyen-based derivatives" are equally without merit.  (AC ¶¶ 156 & 503-505.)  Nothing on the face of the single communication Plaintiffs claim evidences a request remotely suggests that it concerns Yen LIBOR or any Yen LIBOR submissions.  Moreover, the communication does not indicate that the Deutsche Bank employee agreed to take any action in response to the alleged request.

-13-

*of or relate to those activities.*"  *Laydon III*, 2015 WL 1515358, at *2 (emphasis added).  Thus,

allegations regarding communications about benchmarks or products that were allegedly

manipulated (*e.g.*, AC ¶¶ 152, 156-157 & 242) are insufficient to establish the requisite

substantial nexus among "the defendant, the forum and the litigation" necessary for specific

jurisdiction.  *Walden*, 134 S. Ct. at 1121.

> **B.    Plaintiffs' Allegations Purporting To Establish a Substantial Nexus
>          with the Forum Are Not Related to their Claims or Alleged Injury.**

> **1.    General Allegations of Transactions in the United States
>          Are Insufficient To Establish Personal Jurisdiction.**

Plaintiffs' allegations that certain European Defendants traded products and/or interest

rate derivatives in the United States (AC ¶ 163) and that certain European Defendants employed

traders in the United States who traded instruments tied to Yen LIBOR or Euroyen TIBOR

(*id.* ¶¶ 68, 107-08, 139-40, 150, 154 & 158) fail to establish personal jurisdiction because neither

forms the basis of Plaintiffs' claims.  *See In re Roman Catholic Diocese*, 745 F.3d 30, 38 (2d

Cir. 2014) ("[S]pecific jurisdiction cases are limited to those involving issues deriving from, or

connected with, the very controversy that establishes jurisdiction."); *LIBOR IV*, 2015 WL

6243526, at *28 (the Second Circuit requires a "'but for' connection between the defendant's

forum-directed activities and the claim").  Plaintiffs' claims arise from the European Defendants'

alleged manipulation of Yen LIBOR, Euroyen TIBOR and the prices of Euroyen-based

derivatives (*see, e.g.*, AC ¶ 1), not from the mere trading of derivatives in the United States.  *See

7 West 57th St.*, 2015 WL 1514539, at *10 (allegations of New York-based conduct unconnected

to the alleged injury do not support specific personal jurisdiction).  Thus, allegations regarding

derivatives trading (*e.g.*, AC ¶¶ 152, 156-157 & 242) are insufficient to establish the requisite

substantial nexus among "the defendant, the forum and the litigation."  *Walden*, 134 S. Ct. at 1121.

CalSTRS's allegations that it entered into foreign exchange forward contracts ("FX Forwards") with certain European Defendants are similarly deficient.  (*See* AC ¶¶ 918-932.) CalSTRS's claims arise from the alleged manipulation of Yen LIBOR and Euroyen TIBOR, but—as this Court held in *Laydon*—FX Forwards are not indexed to or priced according to those benchmark rates.  *See* Merits Br. at 11-13.  Accordingly, these FX forward contracts do not represent suit-related contacts.[17]

### 2.     Allegations Concerning the Use of U.S. Wires Are Insufficient To Establish Personal Jurisdiction.

Plaintiffs allege that certain European Defendants used U.S.-based wires and servers to transmit "false or misleading or knowingly inaccurate" information (AC ¶ 1028; *see also, e.g.*, ¶¶ 173, 176-177 & 1033-1034), and that all of the European Defendants supposedly caused innocent third parties to publish false information concerning Yen LIBOR and Euroyen TIBOR by means of U.S.-based wires or servers (*e.g.*, *id.* ¶¶ 175, 205, 741 & 1033).  But the Court has rejected these same allegations in *Laydon III* because "[c]ommunications that passed through and/or were stored within the United States are insufficient to assert personal jurisdiction over a defendant," 2015 WL 1515358, at *3, and it should do the same here.  The Amended Complaint does not allege that any European Defendant determined Yen LIBOR or Euroyen TIBOR submissions in the United States or transmitted those submissions from within the United States. Instead, the Amended Complaint alleges that certain European Defendants transmitted material,

---

[17] And even if CalSTRS's FX Forwards were indexed to Yen LIBOR or Euroyen TIBOR, they would not support the exercise of personal jurisdiction over the counterparty European Defendants in New York because the Amended Complaint does not specify that the FX Forwards were negotiated, performed, or consummated in New York.  *See LIBOR IV*, 2015 WL 6243526, at *31.

such as trade confirmations (AC ¶ 1033) or "information regarding their trading positions" (*id.* ¶ 1034), through U.S. wires and servers, and that each day's Yen LIBOR and Euroyen TIBOR fixings were "published and disseminated in the United States or while crossing U.S. borders through electronic servers located in the United States" (*id.* ¶ 1033).  Such allegations merely illustrate the "highly attenuated connection" between the European Defendants' alleged conduct in the United States and Plaintiffs' claims that this Court has already rejected as insufficient to support personal jurisdiction.  *Laydon III*, 2015 WL 1515358, at *3.

### 3.    Allegations of Foreseeable Harm in the Forum Are Insufficient To Establish Personal Jurisdiction.

Plaintiffs cannot establish personal jurisdiction by alleging that the European Defendants knew that Yen LIBOR and Euroyen TIBOR were disseminated in the United States and that the alleged manipulation of those benchmarks "had direct, substantial, and reasonably foreseeable effects in the U.S."  (AC ¶ 54.)  As this Court has previously held, "foreseeability alone has never been a sufficient benchmark for [specific] personal jurisdiction."  *Laydon III*, 2015 WL 1515358, at *2; *accord In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674-75 (2d Cir. 2013).  Indeed, "[t]he proper question [for specific jurisdiction] is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Walden*, 134 S. Ct. at 1125.  Thus, courts have consistently held that personal jurisdiction cannot be based on the foreseeable effects of the alleged manipulation of foreign benchmark interest rates.  *See Laydon III*, 2015 WL 1515358, at *3 ("foreseeability is not the standard for recognizing personal jurisdiction, the actions must instead be 'expressly aimed'" at the forum); *7 W. 57th St.*, 2015 WL 1514539, at *11 (dismissing USD LIBOR manipulation claims because "the fact that harm [from alleged USD LIBOR manipulation] in

[New York] is foreseeable . . . is insufficient for the purpose of establishing specific personal jurisdiction over a defendant"); *LIBOR IV*, 2015 WL 6243526, at *27, *32 (same); *Galope*, 2014 WL 8662645, at *3-4 (same).  As these precedents show, plaintiffs must "plead facts demonstrating that the [alleged] manipulation was done with the express aim of causing an effect in New York."  *7 W. 57th St.*, 2015 WL 1514539, at *10-11.

The Amended Complaint comes nowhere close to satisfying this standard.  Plaintiffs do not allege facts demonstrating, as they must, that New York (or the United States) was the "focal point" of the European Defendants' conduct and that the European Defendants "knew that the brunt of [the] injury" would be felt in the forum.  *Calder* v. *Jones*, 465 U.S. 783, 789-90 (1984).  Indeed, although Plaintiffs allege that the European Defendants knew the alleged misconduct would have effects in the United States (AC ¶¶ 152, 170-171 & 175), Plaintiffs acknowledge, as they must, that Yen LIBOR and Euroyen TIBOR were published and disseminated "globally" (*id*. ¶ 741) and allege generalized effects "on financial markets worldwide" (*id*. ¶ 2).  Thus, "it does not stand to reason[] that foreign defendants aimed their [allegedly] manipulative conduct at the United States or any particular forum state."  *LIBOR IV*, 2015 WL 6243526, at *32.

#### 4. Allegations of a Conspiracy with U.S.-based Entities Are Insufficient To Establish Personal Jurisdiction.

The Amended Complaint alleges that, "by virtue of participating in a conspiracy with U.S.-based persons and entities," each defendant is subject to the Court's specific jurisdiction. (AC ¶ 174.)  Such allegations are facially deficient because courts have rejected the notion of "conspiracy jurisdiction" as a matter of law.  *See In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) ("The rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous

-17-

'conspiracy jurisdiction' doctrine."); *cf. Laydon III*, 2015 WL 1515358, at *3 ("Courts have been

increasingly reluctant to extend [the 'conspiracy theory'] of jurisdiction beyond the context of

New York's long-arm statute . . . .").  Indeed, *Walden* requires that specific jurisdiction be based

on "contacts that the defendant *himself* creates with the forum State," 134 S. Ct. at 1122, not

solely upon the contacts of third parties, such as alleged co-conspirators.

Regardless, even if Plaintiffs' theory of conspiracy jurisdiction were legally viable,

Plaintiffs fail to allege adequately a conspiracy with U.S.-based persons and entities.  To

establish conspiracy jurisdiction, a "plaintiff must make a prima facie showing of conspiracy,

allege specific facts warranting an inference that the defendant was a member of the conspiracy,

and show that the defendant's co-conspirator committed a tort in the forum." *Laydon III*, 2015

WL 1515358, at *3 n.6.  Plaintiffs fail to satisfy any of these prerequisites.

*First*, Plaintiffs fail to make a *prima facie* showing of the supposed conspiracy described

in the Amended Complaint.  Plaintiffs assert that 44 Defendants—each with its own corporate

structure, business strategies, and investments—somehow conspired to move Yen LIBOR and/or

Euroyen TIBOR upward and downward "on a daily basis" over a five-and-one-half-year time

period (AC ¶ 50).  But, as set forth in the Merits Brief, Plaintiffs fail to make a *prima facie*

factual showing of such a conspiracy.  (*See* Merits Br. at 24-26, 31.)  *Second*, Plaintiffs fail to

allege any specific facts that could support an inference that *each* European Defendant was a

member of any purported conspiracy with any person or entity in the United States.  (*See*

*generally* AC App'x A (collecting defendant communications).)  *See Aluminum Warehousing*,

90 F. Supp. 3d at 234 (foreign defendant not subject to conspiracy jurisdiction where there is no

allegation of a specific action taken with a domestic defendant in furtherance of the alleged

conspiracy); *Laydon III*, 2015 WL 1515358, at *3; *LIBOR IV*, 2015 WL 6243526, at *29.  *Third*,

-18-

Plaintiffs further fail to plausibly plead that any Defendant committed allegedly tortious acts in furtherance of the conspiracy in New York.  *See Tarsavage* v. *Citic Tr. Co.*, 3 F. Supp. 3d 137, 143, 147-48 (S.D.N.Y. 2014) (conclusory allegations tying alleged tortious conduct to forum insufficient to support personal jurisdiction based on alleged conspiracy).  As explained above, the Amended Complaint fails to identify any Yen LIBOR- or Euroyen TIBOR-related misconduct in New York (or the United States).  (*See supra* pp. 11-14.)

> **5.**     **Allegations of Derivatives Transactions by Plaintiffs Residing Outside New York Are Insufficient To Establish Personal Jurisdiction over the Counterparties in New York.**

The Amended Complaint asserts that specific jurisdiction exists because Hayman and CalSTRS supposedly engaged in certain direct transactions with some of the European Defendants.  (*See supra* pp. 2-3.)  But an alleged contract with a particular defendant provides a basis for specific jurisdiction over that defendant—if at all—only to the extent that there is a nexus between the contract and the forum *in which the action is filed*.  As Judge Buchwald recently held, allegations of contractual relationships with defendants arising from derivative transactions may give rise to such a nexus to "support personal jurisdiction in the plaintiff['s] home forum[]," but not elsewhere.  *LIBOR IV*, 2015 WL 6243526, at *31 & 31 n.51 (finding no basis for specific jurisdiction in state where action was filed when plaintiffs' derivative contracts were solicited and negotiated in a different state).  Hayman resides in Texas (AC ¶ 56), and CalSTRS resides in California—but both chose to file this action in New York.

> **6.**     **Allegations of New York Forum-Selection Clauses Are Insufficient To Establish Personal Jurisdiction.**

Hayman alleges that it entered into transactions with Barclays Bank plc in April 2010 and Deutsche Bank AG in January 2010 (AC ¶ 166) (collectively, the "Swap Transactions") that

were purportedly governed by forum selection clauses contained in a 2008 ISDA Master Agreement with Barclays Bank plc and a 2006 ISDA Master Agreement with Deutsche Bank AG (collectively, the "ISDA Agreements") through which these defendants allegedly consented to personal jurisdiction in New York.  (AC ¶¶ 164-165.)  But these allegations are insufficient to establish personal jurisdiction over Barclays Bank plc or Deutsche Bank AG because the Amended Complaint provides no factual allegations to support its conclusory assertion that the Swap Transactions were actually governed by or had any connection to the ISDA Agreements.[18]

Moreover, even if the Amended Complaint adequately alleged facts showing that the Swap Transactions were related to the ISDA Agreements, and it does not, the alleged forum selection clauses provide for consent only to "any suit, action or proceedings relating to this [ISDA] Agreement";[19] they do not evince a sweeping consent to litigate in this forum all of the claims that Hayman seeks to assert.  Barclays Bank plc and Deutsche Bank AG have not consented to the exercise of personal jurisdiction by this Court over claims, such as Plaintiffs' antitrust and RICO claims, that are untethered to the contracts at issue.  Indeed, Plaintiffs' antitrust and RICO claims fall outside the reach of the contractual forum selection clauses because they depend on allegations of a "large scale scheme to defraud that included numerous pre-contract activities by defendants."[20]  *Armco Inc.* v. *N. Atl. Ins. Co. Ltd.*, 68 F. Supp. 2d 330,

---

[18] The forum selection clauses *a fortiori* do not provide a basis for personal jurisdiction over the corporate affiliates of these defendants also named in this action:  Barclays plc and DBGS.  In any event, the Court need not consider Hayman's claim that the ISDA Agreements establish personal jurisdiction over Hayman's counterparties because, for the reasons set forth in Defendants' accompanying Merits Brief, Hayman's claims fail on the merits.  *LIBOR IV*, 2015 WL 6243526, at *21 (declining to engage in jurisdictional analysis where claims failed on the merits).

[19] *See* Exhibit A to the Declaration of Matthew J. Porpora (Template ISDA Master Agreement (1992) § 13(b)), dated February 1, 2016, filed herewith.

[20] Just as in *Armco* and *Anselmo*, here too, the purported conspiracy is alleged to have begun well before the contracts containing the forum selection clauses were entered.  *Compare* AC ¶ 1 ("[t]his action arises from Defendants' unlawful combination, agreement, and conspiracy to fix and restrain trade . . . [from] January 1, 2006

338 (S.D.N.Y. 1999); *see also Anselmo* v. *Univision Station Grp., Inc.*, 1993 WL 17173, at \*2 (S.D.N.Y. Jan. 15, 1993) ("plaintiffs' tort claim . . . d[id] not 'relate to' the Agreement because the tort grew out of events which preceded the Agreement").

## III. PLAINTIFFS' RICO AND SHERMAN ACT CLAIMS DO NOT PROVIDE ANY SEPARATE BASIS FOR PERSONAL JURISDICTION.

Presumably relying upon nationwide service of process provisions in the federal antitrust laws and in RICO,[21] the Amended Complaint attempts to allege personal jurisdiction based on the European Defendants' contacts with the United States as a whole rather than with New York specifically.  (*See, e.g.*, AC ¶¶ 54, 149, 163 & 170-173.)  But these provisions do not salvage Plaintiffs' defective jurisdictional allegations.

### A. Because Plaintiffs' Federal Claims Fail on the Merits, a "Nationwide Contacts" Analysis Is Unnecessary.

As a threshold matter, the nationwide service of process provisions of RICO and the Clayton Act are inapplicable because Plaintiffs' antitrust and RICO claims are subject to dismissal on the merits based on this Court's prior rulings and for the additional reasons set forth in Defendants' accompanying Merits Brief.  *See LIBOR IV*, 2015 WL 6243526, at \*24 (declining to assess personal jurisdiction under federal statutes' nationwide service provisions where claims under those statutes failed on merits); *7 W. 57th St.*, 2015 WL 1514539, at \*7 n.2 (same); *Reich* v. *Lopez*, 38 F. Supp. 3d 436, 453 (S.D.N.Y. 2014) (same).  Although courts typically examine personal jurisdiction challenges before examining motions to dismiss claims on other grounds,

---

through at least June 30, 2011"), *with* ¶¶ 164-165 (alleging the earliest contract with a forum selection clause involving one of the European Defendants was executed on October 27, 2006.  Nor can Hayman credibly argue that its antitrust and RICO claims relate to the specific ISDA Agreements because it asserts the same claims against dozens of other defendants with which it had no such agreements, and Sonterra brings identical claims against all defendants despite not alleging any such agreement with any defendant.

[21] *See* 15 U.S.C. § 22 (Clayton Act); 18 U.S.C. § 1965(b) (RICO).

this Court can and should exercise its discretion to consider the merits of Plaintiffs' Sherman Act

and RICO claims before deciding personal jurisdiction questions.  *See ONY, Inc.* v. *Cornerstone*

*Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013).

### B. Even under a "Nationwide Contacts" Analysis, the European Defendants Would Not Be Subject to Personal Jurisdiction.

Even if the Court were to look at each European Defendant's contacts with the United

States as a whole, these contacts are insufficient to establish general jurisdiction under *Daimler*

and *Gucci* because each European Defendant is incorporated and has its principal place of

business outside the United States and is not "at home" anywhere within the United States.

(*See supra* pp. 6-7.)  Specific jurisdiction is also lacking because none of the suit-related conduct

is alleged to have occurred in the United States and Plaintiffs fail to allege conduct "expressly

aimed at" the United States.[22]  (*See supra* pp. 11-17.)

### C. A "Nationwide Contacts" Analysis Does Not Comport with Due Process.

Moreover, even if the Court were required to reach the issue of whether to examine a

defendant's contacts with a particular forum or with the United States as a whole, *Daimler*

compels the rejection of the nationwide contacts approach.  Pre-*Daimler* cases typically reasoned

that, when a federal statute authorizes nationwide service, due process can be satisfied by

contacts with the United States as a whole.  *See, e.g.*, *SEC* v. *Softpoint Inc.*, 2001 WL 43611, at

*5 (S.D.N.Y. Jan. 18, 2001).  But *Daimler* acknowledged that "exorbitant exercises of all-

purpose jurisdiction would scarcely permit out-of-state defendants to structure their primary

---

[22] To the extent Plaintiffs rely on the nationwide service of process provisions in the RICO statute and Clayton Act as a basis for personal jurisdiction, Plaintiffs do not attempt to satisfy other statutory prerequisites for such jurisdiction, including (i) those statutes' venue provisions, *see* 18 U.S.C. § 1965(a); 15 U.S.C. § 22, or (ii) RICO's ends-of-justice requirement, *see* 18 U.S.C. § 1965(b).

conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." 134 S. Ct. at 761-62 (quotations omitted). *Walden* echoed these fairness concerns by noting that the "minimum contacts" inquiry exists principally to protect "the liberty of the nonresident defendant." 134 S. Ct. at 1125 n.9. Such concerns compel the conclusion that due process permits the assertion of personal jurisdiction only when defendants have sufficient contacts, either general or specific, with the specific forum where the suit was brought. *See Republic of Pan.* v. *BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 945 (11th Cir. 1997) ("We discern no reason why these constitutional notions of 'fairness' and 'reasonableness' should be discarded completely when jurisdiction is asserted under a federal statute.").[23]

**D.      A "Nationwide Contacts" Analysis Is Irrelevant to Plaintiffs' State Law Claims.**

Finally, Plaintiffs cannot bootstrap personal jurisdiction for their state law claims to the nationwide service of process provisions in the statutes underlying their meritless federal claims. Personal jurisdiction is analyzed on a claim-by-claim basis. *See First Capital Asset Mgmt., Inc.* v. *Brickellbush, Inc.*, 218 F. Supp. 2d 369, 397 (S.D.N.Y. 2002); *see also* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069.7, at 226 (3d ed. 2002) (collecting cases). Thus, Plaintiffs' state law claims should be analyzed separately from their federal claims and the Court should consider each European Defendant's contacts with New York alone when determining whether it has jurisdiction over Plaintiffs' state law claims.

---

[23] Though the court in *LIBOR IV* declined to accept this analysis, it recognized that the question is still open under Second Circuit law. 2015 WL 6243526, at *23 (citing *Gucci*, 768 F.3d at 142 n.23).

IV.   **CONSIDERATIONS OF FAIR PLAY, SUBSTANTIAL JUSTICE AND INTERNATIONAL COMITY SUPPORT DISMISSAL.**

Even where a court is otherwise able to exercise personal jurisdiction over a defendant, the court must also assess whether doing so "would . . . accord with the 'fair play and substantial justice' due process demands." *Daimler*, 134 S. Ct. at 763.  With respect to foreign defendants, international comity is a key element of the analysis because "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co.* v. *Superior Court*, 480 U.S. 102, 115 (1987).  As the Supreme Court has noted, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."  *Id*. at 114; *see also Daimler*, 134 S. Ct. at 763 (an "uninhibited approach to personal jurisdiction" poses "risks to international comity").  It would be unreasonable for this Court to exercise personal jurisdiction over the European Defendants because the alleged manipulation of Yen LIBOR and Euroyen TIBOR could have occurred only abroad—in London, Tokyo or the European Defendants' home countries—and Plaintiffs have alleged no suit-related connections with the United States.

V.   **JURISDICTIONAL DISCOVERY IS INAPPROPRIATE.**

Jurisdictional discovery should be granted only upon "a *prima facie* showing of [personal] jurisdiction." *Jazini*, 148 F.3d at 184.  Plaintiffs fail to meet this burden.  No amount of discovery will change the fact that none of the European Defendants is "at home" in New York. *See Daimler*, 134 S. Ct. at 762 n.20 ("[I]t is hard to see why much in the way of discovery would be needed to determine where a corporation is at home.").  Moreover, notwithstanding that Plaintiffs possess extensive information from the findings of government investigations, a

-24-

variety of other public sources and their own transaction documents, the Amended Complaint

contains no plausible allegations supporting specific jurisdiction, rendering jurisdictional

discovery inappropriate.  *See Laydon III*, 2015 WL 1515358, at *7 (denying jurisdictional

discovery absent a "basis to believe Plaintiff would find any of the information that he seeks

through jurisdictional discovery").  Indeed, Plaintiff Sonterra, represented by the same counsel,

sought jurisdictional discovery in substantially similar actions related to Swiss Franc LIBOR and

Sterling LIBOR, and the courts in both of those actions rejected Sonterra's requests.[24]  The Court

should do the same here.

## CONCLUSION

For the foregoing reasons, the claims against the European Defendants should be

dismissed in full, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(2).

---

[24] *Sonterra Capital Master Fund Ltd.* v. *Barclays Bank plc*, No. 15-cv-03538 (VSB), Hr'g Tr. at 20:7-15 (S.D.N.Y. Oct. 19, 2015) (Dkt. No. 62) (Sterling LIBOR); *Sonterra Capital Master Fund Ltd.* v. *Credit Suisse Grp. AG*, No. 15-cv-0871 (SHS) (S.D.N.Y. Sept. 22, 2015) (Dkt. No. 81) (Swiss Franc LIBOR); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 (NRB) (S.D.N.Y. Dec. 23, 2015) (Dkt. No. 1267) (denying jurisdictional discovery where defendants had already provided the geographic location of the relevant USD LIBOR submitter(s)).

Dated: February 1, 2016
        New York, New York

Respectfully submitted,


/s/ Jeffrey T. Scott
_____
David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
braffd@sullcrom.com
quinny@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com


/s/ Jonathan D. Schiller
_____
Jonathan D. Schiller
Leigh M. Nathanson
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York  10022
Telephone: (212) 446-2300
jschiller@bsfllp.com
lnathanson@bsfllp.com

Michael Brille
Melissa Felder Zappala
5301 Wisconsin Avenue NW
Washington, D.C.  20015
Telephone: (202) 237-2727
mbrille@bsfllp.com
mzappala@bsfllp.com

*Attorneys for Defendants*
*Barclays plc and Barclays Bank plc*


/s/ David R. Gelfand
_____
David R. Gelfand
Sean M. Murphy
Mark D. Villaverde
MILBANK TWEED HADLEY & McCLOY
LLP
28 Liberty Street
New York, New York 10005
Tel.: (212) 530-5000
dgelfand@milbank.com
smurphy@milbank.com
mvillaverde@milbank.com

*Attorneys for Defendant Coöperatieve*
*Rabobank U.A. (f/k/a Coöperatieve*
*Centrale Raiffeisen-Boerenleenbank B.A.*)

/s/ Moses Silverman

Moses Silverman
Andrew C. Finch
Matthew J. Weiser
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
msilverman@paulweiss.com
afinch@paulweiss.com
mweiser@paulweiss.com
Tel.: (212) 373-3355

*Attorneys for Defendants Deutsche Bank AG
and DB Group Services (UK) Limited*

/s/ Edwin R. DeYoung

Edwin R. DeYoung
Gregory T. Casamento
LOCKE LORD LLP
Three World Financial Center
New York, New York  10281
Tel.: (212) 415-8600
Fax: (212) 303-2754
edeyoung@lockelord.com
gcasamento@lockelord.com

Roger B. Cowie
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
Tel.: (214) 740-8000
Fax: (214) 740-8800
rcowie@lockelord.com

J. Matthew Goodin
Julia C. Webb
Chicago, Illinois 60606
Tel.: (312) 443-0700
Fax: (312) 896-6472
jmgoodin@lockelord.com
jwebb@lockelord.com

*Attorneys for Defendants
HSBC Holdings plc and HSBC Bank plc*

/s/ Thomas C. Rice

Thomas C. Rice
Paul C. Gluckow
Shannon P. Torres
Omari L. Mason
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Tel.: (212) 455-2000
Fax: (212) 455-2502
trice@stblaw.com
pgluckow@stblaw.com
stores@stblaw.com
omason@stblaw.com

*Attorneys for Defendant*
*J.P. Morgan Securities plc*

/s/ Marc J. Gottridge

Marc J. Gottridge
Lisa J. Fried
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Fax: (212) 918-3100
marc.gottridge@hoganlovells.com
lisa.fried@hoganlovells.com

*Attorneys for Defendants Lloyds Bank plc*
*(formerly known as Lloyds TSB Bank plc)*
*and Lloyds Banking Group plc*

/s/ Fraser L. Hunter

Fraser L. Hunter, Jr.
David Sapir Lesser
Jamie Dycus
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800 (phone)
(212) 230-8888 (fax)
fraser.hunter@wilmerhale.com
david.lesser@wilmerhale.com
jamie.dycus@wilmerhale.com

*Attorneys for Defendants The Royal Bank of*
*Scotland Group plc, The Royal Bank of*
*Scotland plc and RBS Securities Japan*
*Limited*

/s/ Steven Wolowitz

Steven Wolowitz
Henninger S. Bullock
Andrew J. Calica
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 506-2500
Fax: (212) 262-1910
swolowitz@mayerbrown.com
hbullock@mayerbrown.com
acalica@mayerbrown.com

*Attorneys for Defendant Société Générale*

/s/ Peter Sullivan
_____
Peter Sullivan
Lawrence J. Zweifach
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel.: (212) 351-4000
Fax: (212) 351-4035
psullivan@gibsondunn.com
lzweifach@gibsondunn.com

Joel S. Sanders (*admitted pro hac vice*)
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Tel.: (415) 393-8200
jsanders@gibsondunn.com

*Attorneys for Defendants UBS AG and UBS
Securities Japan Co. Ltd.*