# EXHIBIT 2

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY LAYDON, on behalf of himself and all others similarly situated, | Docket No. 12-cv-3419 (GBD) (HBP) |
| Plaintiff, | |
| - against – | |
| MIZUHO BANK, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, RESONA BANK, LTD., J.P. MORGAN CHASE & CO., J.P. MORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., DEUTSCHE BANK AG, MIZUHO TRUST AND BANKING CO., LTD., THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, UBS AG, UBS SECURITIES JAPAN CO. LTD., THE BANK OF YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, THE ROYAL BANK OF SCOTLAND GROUP PLC, ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED, BARCLAYS BANK PLC, CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, ICAP PLC, R.P. MARTIN HOLDINGS LIMITED AND JOHN DOE NOS. 1-50, | **STIPULATION AND AGREEMENT OF SETTLEMENT** |
| Defendants. | |

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

## TABLE OF CONTENTS

1.   TERMS USED IN THIS AGREEMENT ................................................................ 3

2.   SETTLEMENT CLASS ..................................................................................... 10

3.   SETTLEMENT PAYMENT ............................................................................... 10

4.   COOPERATION .............................................................................................. 11

5.   PAYMENT OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND APPLICATION FOR INCENTIVE AWARD ....................................................... 15

6.   APPLICATION FOR APPROVAL OF FEES, EXPENSES, AND COSTS OF SETTLEMENT FUND ADMINISTRATION ............................................................ 17

7.   NO LIABILITY FOR FEES AND EXPENSES OF INTERIM LEAD COUNSEL ........ 18

8.   DISTRIBUTION OF AND/OR DISBURSEMENTS FROM SETTLEMENT FUND ... 18

9.   DISBURSEMENTS PRIOR TO EFFECTIVE DATE ............................................. 19

10.   DISTRIBUTION OF BALANCES REMAINING IN NET SETTLEMENT FUND TO AUTHORIZED CLAIMANTS .............................................................................. 20

11.   ADMINISTRATION/MAINTENANCE OF SETTLEMENT FUND ........................... 20

12.   RELEASE AND COVENANT NOT TO SUE ...................................................... 21

13.   MOTION FOR PRELIMINARY APPROVAL ....................................................... 22

14.   CLASS NOTICE ............................................................................................. 23

15.   PUBLICATION ............................................................................................... 23

16.   MOTION FOR FINAL APPROVAL AND ENTRY OF FINAL JUDGMENT ............. 24

17.   BEST EFFORTS TO EFFECTUATE THIS SETTLEMENT ................................... 25

18.   EFFECTIVE DATE .......................................................................................... 25

19.   OCCURRENCE OF EFFECTIVE DATE ............................................................. 26

20.   FAILURE OF EFFECTIVE DATE TO OCCUR .................................................... 26

21.   TERMINATION .............................................................................................. 27

22.   EFFECT OF TERMINATION ............................................................................ 28

23.   SUPPLEMENTAL AGREEMENT ...................................................................... 29

24.   IMPACT OF ANY OTHER SETTLEMENT ......................................................... 29

25.   CONFIDENTIALITY PROTECTION ................................................................... 30

26.   BINDING EFFECT ......................................................................................... 30

27.   INTEGRATED AGREEMENT ........................................................................... 31

28.   NO CONFLICT INTENDED ............................................................................. 31

29.   NO PARTY IS THE DRAFTER ........................................................................ 31

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

| | | |
|---|---|---|
| 30. | CHOICE OF LAW ............................................................................................. | 31 |
| 31. | EXECUTION IN COUNTERPARTS ...................................................................... | 32 |
| 32. | SUBMISSION TO AND RETENTION OF JURISDICTION ........................................ | 32 |
| 33. | RESERVATION OF RIGHTS .............................................................................. | 32 |
| 34. | NOTICES ...................................................................................................... | 33 |
| 35. | AUTHORITY .................................................................................................. | 33 |

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

## STIPULATION AND AGREEMENT OF SETTLEMENT

THIS STIPULATION AND AGREEMENT OF SETTLEMENT (the **"Settlement Agreement"**) is made and entered into on August 11, 2015.  This Settlement Agreement is entered into on behalf of Representative Plaintiffs Jeffrey Laydon, Oklahoma Police Pension & Retirement System, Stephen P. Sullivan, the California State Teachers' Retirement System, Sonterra Capital Master Fund, Ltd., and Hayman Capital Management, L.P. ("Representative Plaintiffs") and the Settlement Class (as defined in Section 1(F) herein), by and through Representative Plaintiffs' Interim Lead Counsel (as defined in Section 1(W) herein), and on behalf of Citigroup Inc., Citibank, N.A., Citibank Japan Ltd., and Citigroup Global Markets Japan Inc., and their subsidiaries and affiliates (collectively, "Citi"), by and through their undersigned counsel of record in this Action.

WHEREAS, Representative Plaintiffs have filed civil class actions, *e.g.*, *Laydon v. Mizuho Bank, Ltd., et al.*, Case No. 12-cv-3419 (GBD) (HBP) (S.D.N.Y) and *Sonterra Capital Master Fund, Ltd., et al. v. UBS AG, et al.*, Case No. 1:15-cv-05844 (S.D.N.Y.), and have alleged, among other things, that Defendants (as defined in Section 1(L) herein), including Citi, from January 1, 2006 through June 30, 2011, acted unlawfully by, *inter alia*, manipulating, aiding and abetting the manipulation of, and conspiring, colluding or engaging in racketeering activities to manipulate Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-Based Derivatives (as defined in Sections 1(Q), 1(P), and 1(SS) respectively herein), in violation of the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and federal and state common law;

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

WHEREAS, Representative Plaintiffs further contend that they and the Settlement Class suffered monetary damages as a result of Citi's and other Defendants' conduct;

WHEREAS, Citi denies the material allegations in plaintiffs' pleadings and maintains that it has meritorious defenses to the claims of liability and damages made by Representative Plaintiffs;

WHEREAS, arms-length settlement negotiations have taken place between Representative Plaintiffs, Interim Lead Counsel and Citi, and this Settlement Agreement has been reached, subject to the final approval of the Court;

WHEREAS, Citi agrees to cooperate with Representative Plaintiffs and Interim Lead Counsel as set forth below in this Agreement;

WHEREAS, Interim Lead Counsel conducted an investigation of the facts and the law regarding the Action (as defined in Section 1(A) herein), considered the settlement set forth herein to be fair, reasonable, adequate and in the best interests of Representative Plaintiffs and the Settlement Class, and determined that it is in the best interests of the Settlement Class to enter into this Settlement Agreement in order to avoid the uncertainties of complex litigation and to assure a benefit to the Settlement Class;

WHEREAS, Citi, despite believing that it is not liable for the claims asserted against it in the Action and that it has good and meritorious defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and distraction of burdensome and protracted litigation, thereby putting this controversy to rest and avoiding the risks inherent in complex litigation; and

NOW, THEREFORE, Representative Plaintiffs, on behalf of themselves and the Settlement Class by and through Interim Lead Counsel, and Citi, by and through the undersigned

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

counsel, agree that the Action and Released Claims (as defined in Section 1(II) herein) be settled, compromised, and dismissed on the merits and with prejudice as to Citi and without costs as to Representative Plaintiffs, the Settlement Class or Citi, subject to the approval of the Court, on the following terms and conditions:

## 1.  Terms Used In This Agreement

The words and terms used in this Stipulation and Settlement Agreement, which are expressly defined below, shall have the meaning ascribed to them.

(A)  **"Action"** means *Laydon v. Mizuho Bank, Ltd. et al.,* Case No. 12-cv-3419 (GBD) (HBP) (S.D.N.Y.) and *Sonterra Capital Master Fund, Ltd., et al. v. UBS AG, et al.,* Case No. 1:15-cv-05844 (S.D.N.Y.), collectively.

(B)  **"Agreement"** or **"Settlement Agreement"** means this Stipulation and Agreement of Settlement, together with any exhibits attached hereto, which are incorporated herein by reference.

(C)  **"Any"** means one or more.

(D)  **"Authorized Claimant"** means any Class Member who, in accordance with the terms of this Agreement, is entitled to a distribution from the Net Settlement Fund pursuant to any Distribution Plan or order of the Court.

(E)  **"Citi"** means Citigroup Inc., Citibank, N.A., Citibank Japan Ltd., and Citigroup Global Markets Japan Inc., and their subsidiaries and affiliates.

(F)  **"Class"** or **"Settlement Class"** means all Persons that engaged in a Class Contract during the Class Period.  Excluded from the Class are: (i) Defendants and any parent, subsidiary, affiliate, or agent of any Defendant; (ii) the Released Parties (as defined in Section 1(JJ) herein); and (iii) any Class Member who files a timely and valid

3

request for exclusion.

(G)   **"Class Contract"** means a transaction in Euroyen-Based Derivatives or any other similar financial instruments priced, benchmarked, settled to or otherwise affected by Yen-LIBOR or Euroyen TIBOR entered into by a U.S. Person, or by a Person from or through a location within the U.S.

(H)   **"Class Member"** or **"Settlement Class Member"** means a Person who is a member of the Class.

(I)   **"Class Period"** means the period of January 1, 2006 through June 30, 2011.

(J)   **"Class Notice"** means the form of notice of the proposed Settlement to be distributed to the Settlement Class as provided in this Agreement and the Preliminary Approval Order.

(K)   **"Court"** means the United States District Court for the Southern District of New York.

(L)   **"Defendants"** means the defendants currently named in the Action and any parties that may be added to the Action as defendants through amended or supplemental pleadings.

(M)   **"Distribution Plan"** means any plan or formula of allocation of the Net Settlement Fund, to be approved by the Court, upon notice to the Class as may be required, whereby the Net Settlement Fund shall in the future be distributed to Authorized Claimants.

(N)   **"Effective Date"** means the date when this Settlement Agreement becomes final as set forth in Section 18 of this Settlement Agreement.

4

(O)    **"Escrow Agent"** means any person jointly designated by Interim Lead Counsel and Citi and approved by the Court to act as escrow agent for the Settlement Fund.

(P)    **"Euroyen-Based Derivatives"** means (i) a purchase or sale of a Euroyen TIBOR futures contract on the Chicago Mercantile Exchange ("CME"); (ii) a purchase or sale of a Euroyen TIBOR futures contract on the Tokyo Financial Exchange, Inc. ("TFX"), Singapore Exchange ("SGX"), or London International Financial Futures and Options Exchange ("LIFFE") by a U.S. Person, or by a Person from or through a location within the U.S.; (iii) a purchase or sale of a Japanese Yen currency futures contract on the CME; (iv) a purchase or sale of a Yen-LIBOR and/or Euroyen TIBOR based interest rate swap entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (v) a purchase or sale of a Japanese Yen currency forward agreement entered into by a U.S. Person, or by a Person from or through a location within the U.S.; and/or (vi) a purchase or sale of a Yen-LIBOR and/or Euroyen TIBOR based forward rate agreement entered into by a U.S. Person, or by a Person from or through a location within the U.S.

(Q)    **"Euroyen TIBOR"** means the Euroyen Tokyo Interbank Offered Rate.

(R)    **"Execution Date"** means the date on which this Agreement is executed by the last Party to do so.

(S)    **"Fairness Hearing"** means a hearing scheduled by the Court following the issuance of the Preliminary Approval Order to consider the fairness, adequacy and reasonableness of the proposed Settlement and Settlement Agreement.

(T)    **"Final"** means, with respect to any court order, including, without limitation, the Final Judgment, that such order represents a final and binding

5

determination of all issues within its scope and it not subject to further review on appeal or otherwise. An order becomes "Final" when: (i) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (ii) an appeal has been filed and either (a) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (b) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired. Any appeal or other proceeding pertaining solely to any order adopting or approving the Distribution Plan, and/or any order issued in respect of an application for attorneys' fees and expenses pursuant to Sections 5 and 6 below, shall not in any way delay or prevent the Judgment from becoming Final.

(U)     **"Final Approval Order"** means an order from the Court approving of the Settlement following (i) preliminary approval of the Settlement Agreement, (ii) the issuance of the Class Notice pursuant to the Preliminary Approval Order, and (iii) the Fairness Hearing.

(V)     **"Incentive Award"** means any award by the Court to Representative Plaintiffs as described in Section 5.

(W)     **"Interim Lead Counsel"** means Lowey Dannenberg Cohen & Hart, P.C., acting pursuant to the authority conferred by the Order Appointing Interim Lead Class Counsel (Dkt. No. 99), and subsequent stipulations and orders.

(X)     **"Final Judgment"** means the order of judgment and dismissal of the Action with prejudice as to Citi, the form of which shall be mutually agreed upon by the Parties and submitted to the Court for approval thereof.

(Y)     **"LIBOR"** means the London Interbank Offered Rate.

6

(Z)   **"Net Settlement Fund"** means the Settlement Fund less Court-approved disbursements, including: (i) notice, claims administration and escrow costs; (ii) any attorneys' fees and/or expenses awarded by the Court; (iii) any Incentive Award(s) awarded by the Court; (iv) subject to prior Court approval, up to five hundred thousand dollars ($500,000) to defray current and future litigation expenses, including discovery related expenses and expert fees, that accrue during the course of prosecuting claims against Defendants in this Action; and (v) all other expenses, costs, taxes and other charges approved by the Court.

(AA)   **"Non-Settling Defendants"** means any and all Defendants in this Action, excluding Citi.

(BB)   **"Other Settlement"** means any stipulation and settlement agreement Representative Plaintiffs reach with any other Defendant involving this Action that will be submitted to the Court for notice and approval purposes at the same time as this Settlement Agreement.

(CC)   **"Parties"** means Citi and Representative Plaintiffs collectively, and **"Party"** applies to each individually.

(DD)   **"Person"** means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint-stock company, estate, legal representative, trust, unincorporated association, proprietorship, municipality, state, state agency, entity that is a creature of any state, any government, governmental or quasi-governmental body or political subdivision, authority, office, bureau, agency or instrumentality of the government, any business or legal entity, or any other entity or organization; and any spouses, heirs,

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

predecessors, successors, representatives or assignees of any of the foregoing.

(EE)   **"Plaintiffs' Counsel"** means Interim Lead Counsel and other counsel for the Representative Plaintiffs.

(FF)   **"Preliminary Approval Order"** means an order by the Court issued in response to the Motion for Preliminary Approval in Section 13 providing for, *inter alia*, preliminary approval of the Settlement, including certification of the Settlement Class for purposes of the Settlement only, and for a stay of all proceedings in the Action against Citi until the Court renders a final decision on approval of the Settlement.

(GG)   **"Proof of Claim and Release"** means the form to be sent to Class Members, upon further order(s) of the Court, by which any Class Member may make a claim against the Net Settlement Fund.

(HH)   **"Regulatory Agencies"** means any local, state, provincial, regional, or national regulatory, governmental or quasi-governmental agency or body that was authorized, is authorized or will be authorized to enforce laws and regulations concerning the conduct at issue in this Action, including, but not limited to, the United States Department of Justice, United States Commodity Futures Trading Commission, United Kingdom Financial Conduct Authority (formerly, United Kingdom Financial Services Authority), the European Commission, Japanese Financial Services Agency, Japanese Securities and Exchange Surveillance Commission, Swiss Competition Commission, Canadian Competition Bureau, New York Department of Financial Services, and their predecessors or successors.

(II)   **"Released Claims"** means those claims described in Section 12 of this Settlement Agreement.

(JJ)   **"Released Parties"** means Citi; as well as their parents, subsidiaries, affiliates, officers, directors, employees and agents, including former employee Thomas Hayes for the time period he was employed by Citi.   Claims against Thomas Hayes arising from his conduct during the time he was not employed by Citi are not released herein.   In addition, claims against the Non-Settling Defendants are not released herein.

(KK)   **"Releasing Parties"** means Settling Class Members on behalf of themselves and (as applicable) their heirs, executors, administrators, agents, members, trustees, participants, and beneficiaries, and their respective predecessors, successors, representatives, principals, and assigns.

(LL)   **"Representative Plaintiffs"** means Jeffrey Laydon, Oklahoma Police Pension & Retirement System, Stephen P. Sullivan, the California State Teachers' Retirement System, Sonterra Capital Master Fund, Ltd., and Hayman Capital Management, L.P., and any other Person named as a named plaintiff in the Action who was not subsequently withdrawn as a named plaintiff, and any named plaintiff who may be added to the action through amended or supplemental pleadings.   This Settlement Agreement is entered with each and every Representative Plaintiff.   In the event that one or more Representative Plaintiff(s) fails to secure court approval to act as a Representative Plaintiff, the validity of this Settlement Agreement as to the remaining Representative Plaintiffs, the Settlement Class, and Interim Lead Counsel shall be unaffected.

(MM)   **"Settlement"** means the settlement of the Released Claims set forth herein.

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

(NN)   **"Settlement Administrator"** means any Person that the Court approves to perform the tasks necessary to provide notice of the Settlement to the Class and to otherwise administer the Settlement Fund, as described further herein.

(OO)   **"Settlement Amount"** means twenty-three million dollars ($23,000,000).

(PP)   **"Settlement Fund"** means the Settlement Amount plus any interest that may accrue.

(QQ)   **"Settling Class Members"** means Representative Plaintiffs and other members of the Settlement Class who do not timely exclude themselves from the Settlement pursuant to Fed. R. Civ. P. 23(c).

(RR)   **"U.S. Person"** means a citizen or resident of the United States; a corporation, including a limited liability company, either incorporated or headquartered in the United States; a partnership created or resident in the United States; any other Person or entity created and/or formed under the laws of the United States, or any other Person or entity residing in the United States.

(SS)   **"Yen-LIBOR"** means the London Interbank Offered Rate for the Japanese Yen.

### 2.        Settlement Class

Representative Plaintiffs will file an application seeking the certification of the Settlement Class as described herein pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

### 3.        Settlement Payment

Citi shall pay by wire transfer to the Escrow Agent five million dollars ($5 million) of the Settlement Amount into the Settlement Fund within seven (7) business days after the Preliminary

Approval Order is entered.  The balance of the Settlement Amount, which shall be eighteen million dollars ($18 million), shall be paid into the Settlement Fund by Citi within seven (7) business days after entry of the Final Approval Order.  All interest earned by any portion of the Settlement Amount paid into the Settlement Fund shall be added to and become part of the Settlement Fund.  Upon occurrence of the Effective Date, no funds may be returned to Citi through a reversion or other means.  The Escrow Agent shall only act in accordance with instructions mutually agreed upon by the Parties in writing, except as otherwise provided in this Agreement.

### 4.        Cooperation

(A)     Citi shall provide reasonable cooperation in the Action, including discovery cooperation, requested by Interim Lead Counsel, to benefit the Class.  All cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided.  Interim Lead Counsel shall tailor its requests for the production of documents with a view towards minimizing unnecessary burdens and costs to Citi in connection with collecting, reviewing and producing materials that have not already been collected in the course of related settlements, reports and/or investigations by Regulatory Agencies.

(B)     Notwithstanding any other provision of this Agreement, in the event that Citi believes Interim Lead Counsel has unreasonably requested cooperation, or Interim Lead Counsel believes Citi has unreasonably withheld cooperation, Citi and Interim Lead Counsel agree to meet and confer regarding such disagreement and seek resolution from the Court if necessary.  If Court resolution is sought, the disputed aspect of cooperation shall be held in abeyance until such resolution by the Court, and such abeyance shall not constitute a breach of this Settlement Agreement.  Interim Lead Counsel agrees to use any and all of the information and documents

obtained from Citi only for the purpose of the Action, and agrees to be bound by the terms of the protective orders entered in the Action.

(C)     Subject to the terms of this Settlement Agreement, and in settlement and release of all claims of the Settling Class Members as set forth in this Settlement Agreement, Citi agrees to do the following, to the extent not prevented from doing so by any court order or any law, regulation, policy, or other rule of any regulatory agency or governmental body restricting disclosure of documents or information:

(i)     provide attorney proffers regarding the facts and information that Citi has found in the course of its investigations concerning the Yen LIBOR and Euroyen TIBOR issues raised in the Action;

(ii)     produce to Interim Lead Counsel:

(a)     all underlying documents and communications related to or concerning the subject matter of this Action that have been provided to Regulatory Agencies in connection with investigations concerning the Yen LIBOR and Euroyen TIBOR issues raised in the Action (and to the extent additional productions of such documents are made to Regulatory Agencies after this Agreement is signed, Citi will provide copies of such documents to Interim Lead Counsel within a reasonable period of time thereafter);

(b)     reasonably available information concerning Citi's total volume in the interest rate and foreign derivatives market for Yen-denominated financial

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

instruments between 2006 and 2011;

(c)     reasonably     available     transaction     data reflecting trades of Euroyen-Based Derivatives for the period of January 1, 2006 through June 30, 2011 maintained by Citi;

(d)     all documents produced to any Defendant or third party during the course of the prosecution of this Action concerning the subject matter of this Action; and

(e)     all declarations, affidavits, witness statements, or other sworn or unsworn statements of former and/or current Citi directors, officers, or employees concerning the allegations set forth in this Action, subject to any claim of attorney-client privilege that has not been waived.

(iii)     provide Interim Lead Counsel reasonable access to witnesses within Citi's possession, custody or control knowledgeable about the Yen-LIBOR or Euroyen TIBOR conduct alleged in the Action.  Citi will allow Interim Lead Counsel to interview, depose, or take trial or other testimony from any such Person (up to 4 Persons) as requested by Interim Lead Counsel; provided, however, that Citi shall not be required to cause any such Person who resides outside the U.S. to travel to the U.S. in connection with such access;

(iv)     designate     witness(es)    to     serve     as     Citi's     corporate representative pursuant to the framework of Rule 30(b)(6) of the Federal

Rules of Civil Procedure in connection with any depositions, hearing or trial of the Defendants without issuance of a subpoena; and

(v)    cooperate as necessary to authenticate and otherwise make usable at trial the documents and information provided pursuant to this Settlement Agreement, including electronically-stored information, and audio recordings.

(D)    Citi agrees to consider in good faith reasonable requests from Interim Lead Counsel for additional documents and information beyond the items specified in Subsection C above.

(E)    Citi agrees to begin producing documents pursuant to this section within fourteen (14) days following the Execution Date, and agrees to begin providing other elements of the cooperation contemplated by this Agreement within forty-five (45) days of the Execution Date. Such other elements of cooperation will focus initially on issues pertinent to the proposed plan of allocation, and will extend to other issues after preliminary approval is granted.

(F)    Citi and Interim Lead Counsel agree to work in good faith to resolve any issues relating to electronic discovery, including the form of production for electronic data files.

(G)    Notwithstanding any other provision in this Agreement, Citi may assert, where applicable, the attorney work-product doctrine, the attorney-client privilege, the common interest doctrine, the joint defense privilege, or any other applicable privilege or protection with respect to any documents, interviews, declarations and/or affidavits, depositions, testimony, material, and/or information requested under this Agreement. Any information provided to Interim Lead Counsel pursuant to this provision shall be covered by the protective orders in place in the Action. None of the cooperation provisions are intended to, nor do they, waive any such

privileges or protections.  Citi agrees that its counsel will meet with Interim Lead Counsel as is reasonably necessary to discuss any applicable privilege, protection or restriction.  Any disputes regarding privilege, protection or restriction that cannot be resolved amongst the parties shall be reserved for resolution by the Court.

(H)     If any document protected by the attorney-client privilege, attorney work-product doctrine, common interest doctrine, joint defense privilege any other applicable privilege or protection, law, regulation, policy and/or rule of any regulatory agency or governmental body restricting disclosure of such documents is accidentally or inadvertently produced, the document shall promptly be returned to Citi's counsel, and its production shall in no way be construed to have waived any privilege, protection or restriction attached to such document or information.

5.     **Payment of Attorneys' Fees and Reimbursement of Expenses, and Application for Incentive Award**

(A)     Subject to Court approval, Representative Plaintiffs and Interim Lead Counsel shall be reimbursed and paid solely out of the Settlement Fund for all fees and expenses including, but not limited to, attorneys' fees, and past, current or future litigation expenses, and any incentive award approved by the Court.  Citi shall have no responsibility for any costs, fees, or expenses incurred for or by Representative Plaintiffs' or Class Members' respective attorneys, experts, advisors, agents, or representatives.  Nothing in this provision shall expedite the date(s) for Citi's payments as set forth in Section 3.

(B)     Interim Lead Counsel, on behalf of all Plaintiffs' Counsel, may apply to the Court for an award from the Settlement Fund of attorneys' fees, plus interest.  Interim Lead Counsel also may apply to the Court for reimbursement from the Settlement Fund of Plaintiffs' Counsels' litigation expenses, plus interest.  Representative Plaintiffs may make an application to the Court

for an award in connection with their representation of the Settlement Class in this litigation, which amount constitutes the Incentive Award.

(C)     The Released Parties shall have no responsibility for, and no liability with respect to, the attorneys' fees, litigation expenses, or Incentive Award that the District Court may award in the Action.

(D)     The procedures for, and the allowance or disallowance by the Court of, any application for approval of fees, expenses and costs or an Incentive Award (collectively, "Fee and Expense Application") are not part of the Settlement set forth in this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Agreement.  Any order or proceeding relating to a Fee and Expense Application, or the reversal or modification thereof, shall not operate to terminate or cancel this agreement, or affect or delay the finality of the Judgment and the Settlement of the Action as set forth herein.  No order of the Court or modification or reversal on appeal of any order of the Court concerning any Fee and Expense Application or the Distribution Plan shall constitute grounds for termination of this agreement.

(E)     In connection with this Settlement, Interim Lead Counsel may, subject to prior Court approval, withdraw up to $500,000 from the Escrow Account to defray current and future litigation expenses, including discovery expenses and expert fees, for prosecuting the claims asserted against Defendants in this Action.

(F)     At least thirty (30) calendar days prior to the Fairness Hearing, Interim Lead Counsel and Representative Plaintiffs shall file any motions seeking awards from the Settlement Fund for payment of attorneys' fees and reimbursement of costs and expenses, and for the payment of an Incentive Award as follows:

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

(i)     Plaintiffs' Counsel shall seek attorneys' fees of no more than one-fourth (*i.e.*, 25%) of the Settlement Fund;

(ii)    Interim Lead Counsel shall seek reimbursement for their costs and expenses incurred as of the date the Motion for Final Approval and Entry of Final Judgment is filed pursuant to Section 16; and

(iii)   Representative Plaintiffs may make an application to the Court for an award in connection with their representation of the Settlement Class in this litigation, which amount constitutes the Incentive Award.

(G)    Upon the Court's approval of an award of attorneys' fees, costs and expenses, Interim Lead Counsel may immediately withdraw up to thirty percent (30%) of any such approved amount from Subsections (F)(i) and (F)(ii), above.  The remainder may be withdrawn from the Settlement Fund only upon occurrence of the Effective Date.  If an event occurs that will cause the Settlement Agreement not to become final pursuant to Section 18 or if Representative Plaintiffs or Citi terminates the Settlement Agreement pursuant to Sections 21 through 23, then within ten (10) business days after receiving written notice of such an event from counsel for Citi or from a court of appropriate jurisdiction, Interim Lead Counsel shall refund to the Settlement Fund any attorneys' fees, costs and expenses (not including any non-refundable expenses as described in section 9(b)) that were withdrawn plus interest thereon at the same rate at which interest is accruing for the Settlement Fund.

### 6.    Application for Approval of Fees, Expenses, and Costs of Settlement Fund Administration

Interim Lead Counsel may apply, at the time of any application for distribution to Authorized Claimants, for an award from the Settlement Fund of attorneys' fees for services

17

performed and reimbursement of expenses incurred in connection with the administration of the Settlement after the date of the Fairness Hearing.  Interim Lead Counsel reserves the right to make additional applications for payment from the Settlement Fund for attorneys' fees for services performed and reimbursement of expenses incurred.

### 7.        No Liability for Fees and Expenses of Interim Lead Counsel

The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment(s) to Interim Lead Counsel for attorneys' fees, costs and expenses and/or to any other Person who may assert some claim thereto, or any fee and expense award the Court may make in the Action.

### 8.        Distribution of and/or Disbursements from Settlement Fund

The Settlement Administrator, subject to such supervision and direction by the Court and/or Interim Lead Counsel as may be necessary, shall administer the Proof of Claim and Release forms submitted by the Settling Class Members and shall oversee the distribution of the Settlement Fund pursuant to the Distribution Plan.   Upon the Effective Date (or earlier if provided in Section 5 herein), the Settlement Fund shall be applied as follows:

(i)        to pay costs and expenses associated with the distribution of the Class Notice and Administration of the Settlement as provided in this Section and Section 6, including all costs and expenses reasonably and actually incurred in assisting Class Members with the filing and processing of claims against the Net Settlement Fund at any time after Citi makes the payments described in Section 3;

(ii)       to pay Escrow Agent costs;

    (iii)    to pay taxes assessed on the Settlement Fund, and tax preparation fees in connection with such Taxes;

    (iv)    to pay any attorneys' fees, costs and expenses approved by the Court upon submission of a Fee and Expense Application, as provided in Sections 5;

    (v)    to pay the amount of any Incentive Award for Representative Plaintiffs, as provided in Section 5; and

    (vi)    to pay the Net Settlement Fund to Authorized Claimants as allowed by the Agreement, any Distribution Plan, or order of the Court.

### 9. Disbursements Prior to Effective Date

(A)    Except as provided in Subsection (B) herein or by Court order, no distribution to any Settlement Class Member or disbursement of fees, costs and expenses of any kind may be made from the Settlement Fund until the Effective Date.  As of the Effective Date, all fees, costs and expenses and Incentive Awards as approved by the Court may be paid out of the Settlement Fund.

(B)    Upon written notice to the Escrow Agent by Interim Lead Counsel with a copy to Citi, the following may be disbursed prior to the Effective Date:  (i) reasonable costs of Class Notice and Administration may be paid from the Settlement Fund as they become due (up to a maximum of $500,000); (ii) reasonable costs of the Escrow Agent may be paid from the Settlement Fund as they become due; (iii) taxes and tax expenses may be paid from the Settlement Fund as they become due; and (iv) up to thirty percent (30%) of Plaintiff's Counsel's attorneys' fees and costs and expenses as approved by the Court.  In the event the Settlement does not become final, Citi shall be entitled to return of all such funds, except for up to $500,000

for reasonable costs of Class Notice and Administration that have been actually disbursed prior to the date the Settlement was terminated.

      (C)     Interim Lead Counsel will attempt in good faith to minimize the costs of the Escrow Agent, Class Notice and Administration.

### 10. Distribution of Balances Remaining in Net Settlement Fund to Authorized Claimants

      The Net Settlement Fund shall be distributed to Authorized Claimants and, except as provided in Section 9(B), there shall be no reversion to Citi. The distribution to Authorized Claimants shall be in accordance with the Distribution Plan to be approved by the Court upon such notice to the Class as may be required. Any such Distribution Plan is not a part of this Agreement. No funds from the Net Settlement Fund shall be distributed to Authorized Claimants until the later of (i) the Effective Date or (ii) the date by which the Distribution Plan has received final approval and the time for any further appeals with respect to the Distribution Plan has expired. Should there be any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), Interim Lead Counsel shall submit an additional distribution plan to the Court for its approval.

### 11. Administration/Maintenance of Settlement Fund

      (A)     The Settlement Fund shall be maintained by Interim Lead Counsel under supervision of the Court and shall be distributed solely at such times, in such manner and to such Persons as shall be directed by subsequent orders of the Court (except as provided for in this Agreement) consistent with the terms of this Settlement Agreement. The Parties intend that the Settlement Fund be treated as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B. Interim Lead Counsel shall ensure that the Settlement Fund at all times complies with Treasury Regulation § 1.468B in order to maintain its treatment as a qualified

settlement fund. To this end, Interim Lead Counsel shall ensure that the Settlement Fund is approved by the Court as a qualified settlement fund and that any Escrow Agent, Settlement Administrator or other administrator of the Settlement Fund complies with all requirements of Treasury Regulation § 1.468B-2. Any failure to ensure that the Settlement Fund complies with Treasury Regulation § 1.468B-2, and the consequences thereof, shall be the sole responsibility of Interim Lead Counsel.

### 12.        Release and Covenant Not To Sue

(A)     The Releasing Parties finally and forever release and discharge from and covenant not to sue the Released Parties for any and all manner of claims, including unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, which Settling Class Members or any of them ever had, now has, or hereafter can, shall or may have, representatively, derivatively or in any other capacity, against the Released Parties arising from or relating in any way to conduct alleged in the Action or which could have been alleged in the Action against the Released Parties concerning Class Contracts held by the Representative Plaintiffs, Class Members, and/or Settling Class Members, including, but not limited to, any alleged manipulation of Euroyen TIBOR and/or Yen-LIBOR under the Commodity Exchange Act, 7 U.S.C. § 1 et seq., or any purported conspiracy, collusion, racketeering activity, or other improper conduct relating to Euroyen TIBOR and/or

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

Yen-LIBOR (including, but not limited to, all claims under Section 1 of the Sherman Antitrust

Act 15 U.S.C. § 1 et seq., the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§

1961-1968, and any other federal or state statute or common law).

(B)    This release constitutes a waiver of Section 1542 of the California Civil Code (to

the extent it applies to the Action), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.

This release also constitutes a waiver of any and all provisions, rights, and benefits of any

federal, state or foreign law, rule, regulation, or principle of law or equity that is similar,

comparable, equivalent to, or which has the effect of, Section 1542 of the California Civil Code.

The Settling Class Members acknowledge that they are aware that they may hereafter discover

facts in addition to, or different from, those facts which they know or believe to be true with

respect to the subject matter of this Agreement, but that it is their intention to release fully,

finally, and forever all of the Released Claims, and in furtherance of such intention, the release

shall be irrevocable and remain in effect notwithstanding the discovery or existence of any such

additional or different facts. In entering and making this Agreement, the Parties assume the risk

of any mistake of fact or law and the release shall be irrevocable and remain in effect

notwithstanding any mistake of fact or law.

### 13.    Motion for Preliminary Approval

As soon as practicable after the Execution Date, at a time to be mutually agreed by Citi

and Interim Lead Counsel, Interim Lead Counsel shall submit this Settlement Agreement to the

Court and shall file a motion for entry of the Preliminary Approval Order.

### 14.      Class Notice

In the event that the Court preliminarily approves the Settlement, Interim Lead Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure, provide Class Members, whose identities can be determined after reasonable efforts, with notice of the date of the Fairness Hearing. The Class Notice may be sent solely for this Settlement or combined with notice of Other Settlements or of any litigation class. The Class Notice shall also explain the general terms of the Settlement Agreement, the general terms of the proposed Distribution Plan, the general terms of the Fee and Expense Application, and a description of Class Members' rights to object to the Settlement, request exclusion from the Class and appear at the Fairness Hearing. The text of the Class Notice shall be agreed upon by the Parties before its submission to the Court for approval thereof. Citi agrees to provide Interim Lead Counsel with reasonably available contact information for counterparties to Euroyen-Based Derivatives it transacted with during the Class Period, to the extent not prevented from doing so by any court order or any law, regulation, policy, or other rule of any regulatory agency or governmental body restricting disclosure of such information.

### 15.      Publication

Interim Lead Counsel shall cause to be published a summary in accord with the Class Notice submitted to the Court by the Parties and approved by the Court. Citi shall have no responsibility for providing publication or distribution of the Settlement or any notice of the Settlement to Class Members or for paying for the cost of providing notice of the Settlement to Class Members except as provided for in Section 9(B). The Parties shall mutually agree on any content relating to Citi that will be used by Interim Lead Counsel and/or the Settlement

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

Administrator in any Settlement-related press release or other media publication, including on websites.

### 16.     Motion for Final Approval and Entry of Final Judgment

(A)     After Class Notice is issued, and at least thirty (30) calendar days prior to the Fairness Hearing, the parties hereto shall jointly move for entry of a Final Approval Order and Final Judgment:

(i)     finally certifying solely for settlement purposes the Settlement Class as defined in Section 1(F) herein;

(ii)     finding that the Class Notice constituted the best notice practicable under the circumstances and complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process;

(iii)     finally approving this Settlement Agreement and its terms as being a fair, reasonable and adequate settlement of the Settlement Class' claims under Rule 23 of the Federal Rules of Civil Procedure;

(iv)     directing that, as to the Released Parties, the Action be dismissed with prejudice and without costs as against the Settling Class Members;

(v)     discharging and releasing the Released Claims as to the Released Parties;

(vi)     determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal shall be final and appealable;

24

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

   (vii)  reserving the Court's continuing and exclusive jurisdiction over the Settlement and this Agreement, including the administration and consummation of this Agreement; and

   (viii)  containing such other and further provisions consistent with the terms of this Agreement to which the Citi and Representative Plaintiffs expressly consent in writing.

 (B)  At least thirty (30) calendar days prior to the Fairness Hearing, as provided in Section 5, Interim Lead Counsel will timely request by separate motion that the Court approve its Fee and Expense Application. The Fee and Expense Application and the Distribution Plan (as defined in Section 1(M)) are matters separate and apart from the Settlement between the Parties. If the Fee and Expense Application or the Distribution Plan are not approved, in whole or in part, it will have no effect on the finality of the judgment.

### 17.  Best Efforts to Effectuate This Settlement

 The Parties agree to cooperate with one another to the extent reasonably necessary to effectuate and implement the terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the terms and conditions of this Agreement.

### 18.  Effective Date

 Unless terminated earlier as provided in this Settlement Agreement, this Settlement Agreement shall become effective and final as of the date upon which all of the following conditions have been satisfied:

 (A)  The Settlement Agreement has been fully executed by the Citi and Representative Plaintiffs through their counsel;

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

(B)     The Court has certified a Settlement Class, granted preliminary approval of this Settlement Agreement, and approved the program and form for the Class Notice;

(C)     Class Notice has been issued as ordered by the Court;

(D)     The Court has finally approved the Settlement Agreement in all respects as required by Rule 23(e) of the Federal Rules of Civil Procedure; however, this required approval does not include the approval of the Fee and Expense Application and the Distribution Plan;

(E)     The Court has entered its Final Judgment of dismissal with prejudice as to the Released Parties with respect to Representative Plaintiffs and Settling Class Members; and

(F)     The time to appeal or seek permission to appeal the Court's Final Approval Order and or Final Judgment has expired or, if appealed, either (i) the Settlement Agreement and the Final Judgment of dismissal have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review, or (ii) such appeal has been withdrawn or dismissed with prejudice.

### 19.     Occurrence of Effective Date

Upon the occurrence of all of the events in Section 18, any and all remaining interest or right of Citi in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, and the Net Settlement Fund shall be transferred from the Escrow Agent to the Settlement Administrator at the written direction of Interim Lead Counsel.

### 20.     Failure of Effective Date to Occur

If any of the conditions specified in Section 18 are not satisfied, then this Agreement shall be terminated, subject to and in accordance with Section 21, unless the Parties mutually agree in writing to continue with it for a specified period of time.

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

### 21.    Termination

(A)    Citi shall have the right, but not the obligation, in its sole discretion, to terminate this Settlement Agreement by providing written notice to Interim Lead Counsel within fifteen (15) business days of any of the following events:

    (i)    the Court denies, in whole or in part, Representative Plaintiffs' Motion for Preliminary Approval pursuant to Section 13 or the Motion for Final Approval pursuant to Section 16;

    (ii)    Final Judgment is withdrawn, rescinded, or modified by the Court or Final Judgment is reversed, vacated, or modified on appeal; or

    (iii)    the Court declines to enter Final Judgment.

(B)    Interim Lead Counsel, acting on behalf of the Representative Plaintiffs, shall have the right, but not the obligation, in their sole discretion, to terminate this Settlement Agreement by providing written notice to Citi's counsel within fifteen (15) business days of any of the following events, provided that the occurrence of the event substantially deprives Plaintiffs of the benefit of the Settlement:

    (i)    the Court denies, in whole or in part, Representative Plaintiffs' Motion for Preliminary Approval pursuant to Section 13 or the Motion for Final Approval pursuant to Section 16;

    (ii)    Final Judgment is withdrawn, rescinded, or modified by the Court or Final Judgment is reversed, vacated, or modified on appeal;

    (iii)    the Court declines to enter Final Judgment; and

    (iv)    Citi, for any reason, fails to comply with Section 3 and fails to cure such non-compliance as contemplated by Section 21(c) below.

(C)    In the event that Citi, for any reason, fails to comply with Section 3, then on ten (10) business days written notice to Citi's counsel, during which ten-day period Citi shall have the opportunity to cure the default without penalty, Representative Plaintiffs, by and through Interim Lead Counsel, may terminate this Settlement Agreement or elect to enforce it as provided by the Federal Rules of Civil Procedure.

## 22.    Effect of Termination

Unless otherwise ordered by the Court, in the event that the Effective Date does not occur or this Agreement is terminated or cancelled, or otherwise fail to become effective for any reason, including, without limitation, in the event that the Settlement as described herein is not finally approved by the Court or the Final Judgment is reversed or vacated following any appeal, then:

(A)    Within fifteen (15) business days after written notification of such event is sent by counsel for Citi or Interim Lead Counsel to all Parties and the Escrow Agent, the Settlement Amount, and all interest earned in the Settlement Fund will be refunded, reimbursed, and repaid by the Escrow Agent to Citi, except as provided in Section 9(B);

(B)    The Escrow Agent or its designee shall apply for any tax refund owed to the Settlement Fund and pay the proceeds to Citi, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund;

(C)    The Parties shall be restored to their respective positions in the Action as of the Execution Date, with all of their respective legal claims and defenses preserved as they existed on that date; and

(D)    Upon termination of this Settlement Agreement, then:

(i)      this Agreement shall be null and void and of no further effect, and neither Citi, the Representative Plaintiffs, or members of the Settlement Class shall be bound by any of its terms;

(ii)      any and all releases shall be of no further force and effect;

(iii)      the parties shall be restored to their respective positions in the Action as of the Execution Date, with all of their respective legal claims and defenses preserved as they existed on that date; and

(iv)      any judgment or order entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc.*

## 23.      Supplemental Agreement

In addition to the provisions contained in Section 21(A) herein, Citi shall have the right, but not the obligation, in its sole discretion, to terminate this Settlement Agreement pursuant to the terms and conditions of a Supplemental Agreement to be filed with the Court under seal at the same time as the motion for entry of the Preliminary Approval Order.

## 24.      Impact of Any Other Settlement

(A)      If any Other Settlement (as defined in Section 1(BB)) is reached, the "Settlement Class" definition in Section 1(F), as well as the terms contained within the "Cooperation," "Release and Covenant Not to Sue," and "Termination" provisions herein (as described in Sections 4, 12, and 21 respectively) shall be no less favorable to Citi than the corresponding term or provision applicable to any Other Settlement.

(B)      If Citi believes one or more terms or provisions referenced in subsection (A) is less favorable than a corresponding term or provision in the Other Settlement, Citi will provide

29

written notice of such belief to Interim Lead Counsel as prescribed in this Settlement Agreement within ten (10) business days of the filing of the Other Settlement with the Court.  Following receipt of the written notice, Citi and Interim Lead Counsel will confer as to whether the relevant term or provision in this Settlement Agreement is less favorable as compared to the Other Settlement.  If there is agreement between Citi and Interim Lead Counsel that the provision at issue is less favorable, Citi and Interim Lead Counsel will execute an amendment to the Settlement Agreement, adopting and incorporating the provision as drafted in the Other Settlement into the Settlement Agreement, and will submit the amendment to the Court for its approval.  If Citi and Interim Lead Counsel are unable to reach an agreement on the relevant provision, Citi or Interim Lead Counsel may move the Court to resolve the dispute.

### 25.      Confidentiality Protection

Representative Plaintiffs, Interim Lead Counsel, and Citi agree to keep private and confidential the terms of this Settlement Agreement, except for disclosure at the Court's direction or disclosure *in camera* to the Court, until this document is filed with the Court, provided, however, that nothing in this Section shall prevent Citi, upon notice to Interim Lead Counsel, from making any disclosures it deems necessary to comply with any relevant laws, subpoena or other form of judicial process.

### 26.      Binding Effect

(A)      This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Citi, the Released Parties, the Representative Plaintiffs, and Settling Class Members.

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

(B)   The waiver by any Party of any breach of this Settlement Agreement by another Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

### 27.   Integrated Agreement

This Settlement Agreement, including any exhibits hereto and agreements referenced herein, contains the entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties and is not subject to any condition not provided for or referenced herein.   This Settlement Agreement supersedes all prior or contemporaneous discussions, agreements, and understandings among the Parties to this Settlement Agreement with respect hereto.   This Settlement Agreement may not be modified in any respect except by a writing that is executed by all the Parties hereto.

### 28.   No Conflict Intended

The headings used in this Settlement Agreement are for the convenience of the reader only and shall not have any substantive effect on the meaning and/or interpretation of this Settlement Agreement.

### 29.   No Party is the Drafter

None of the Parties shall be considered to be the drafter of this Settlement Agreement or any provision herein for the purpose of any statute, case law, or rule of interpretation or construction that might cause any provision to be construed against the drafter.

### 30.   Choice of Law

All terms within the Settlement Agreement and its exhibits hereto shall be governed by and interpreted according to the substantive laws of the State of New York, without regard to its choice of law or conflict of laws principles.

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

### 31.      Execution in Counterparts

This Settlement Agreement may be executed in one or more counterparts. Facsimile and scanned/PDF signatures shall be considered valid signatures. All executed counterparts shall be deemed to be one and the same instrument. There shall be no agreement until the fully signed counterparts have been exchanged and delivered on behalf of all Parties.

### 32.      Submission to and Retention of Jurisdiction

The Parties, Released Parties and the Settlement Class irrevocably submit, to the fullest extent permitted by law, to the exclusive jurisdiction of the United States District Court for the Southern District of New York for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement, or the exhibits hereto. For the purpose of such suit, action, or proceeding, to the fullest extent permitted by law, the Parties, Released Parties and the Settlement Class irrevocably waive and agree not to assert, by way of motion, as a defense, or otherwise, any claim or objection that they are not subject to the jurisdiction of such Court, or that such Court is, in any way, an improper venue or an inconvenient forum or that the Court lacked power to approve this Settlement Agreement or enter any of the orders contemplated hereby.

### 33.      Reservation of Rights

This Settlement Agreement does not settle or compromise any claims by Representative Plaintiffs or any Settlement Class Member asserted against any Defendant or any potential defendant other than Citi and the Released Parties. The rights of any Settlement Class Member against any other Person other than Citi and the Released Parties are specifically reserved by Representative Plaintiffs and the Settlement Class Members.

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

### 34.    Notices

All notices and other communications under this Settlement Agreement shall be sent to the Parties to this Settlement Agreement at their address set forth on the signature page herein, *viz*, if to Representative Plaintiffs, then to: Vincent Briganti, Lowey Dannenberg Cohen & Hart, P.C., One North Broadway, White Plains, NY 10601 and if to Citi, then to Andrew A. Ruffino, Covington & Burling LLP, 620 Eighth Avenue, New York, NY 10018-1405, or such other address as each party may designate for itself, in writing, in accordance with this Settlement Agreement.

### 35.    Authority

In executing this Settlement Agreement, Interim Lead Counsel represent and warrant that they have been fully authorized to execute this Settlement Agreement on behalf of the Representative Plaintiffs and the Settlement Class (subject to final approval by the Court after notice to all Class members), and that all actions necessary for the execution of this Settlement

[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]

SETTLEMENT COMMUNICATION PROTECTED BY FED. R. EVID. 408

Agreement have been taken.    Citi represents and warrants that the undersigned is fully empowered to execute the Settlement Agreement on behalf of Citi, and that all actions necessary for the execution of this Settlement Agreement have been taken.


Dated:  August 11, 2015                    By: _____

Vincent Briganti
**LOWEY DANNENBERG COHEN & HART, P.C.**
One North Broadway
White Plains, New York 10601
Telephone: (914) 997-0500

*Interim Lead Counsel for Representative Plaintiffs and the Proposed Class*


Dated:  August  11, 2015                    By: _____

Andrew A. Ruffino
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1097

*Counsel for Citi*


34