IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SONTERRA CAPITAL MASTER FUND, LTD., HAYMAN CAPITAL MASTER FUND, L.P., JAPAN MACRO OPPORTUNITIES MASTER FUND, L.P., and CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated, | Docket No. 15-CV-5844 (GBD) |
| Plaintiffs, | |
| - against - | ECF CASE |
| UBS AG, UBS SECURITIES JAPAN CO. LTD., MIZUHO BANK, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, RESONA BANK, LTD., J.P. MORGAN CHASE & CO., JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, MIZUHO TRUST AND BANKING CO., LTD., THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, THE BANK OF YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, THE ROYAL BANK OF SCOTLAND GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED, RBS SECURITIES INC., BARCLAYS BANK PLC, BARCLAYS PLC, BARCLAYS CAPITAL INC., CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, LLOYDS BANKING GROUP PLC, LLOYDS BANK PLC, ICAP PLC, ICAP EUROPE LIMITED, R.P. MARTIN HOLDINGS LIMITED, MARTIN BROKERS (UK) LTD., TULLETT PREBON PLC, BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., MERRILL LYNCH INTERNATIONAL, AND JOHN DOE NOS. 1-50, | |
| Defendants. | |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ii
INTRODUCTION .................................................................................................................................1
ARGUMENT..........................................................................................................................................2
    I.   The Court should approve the proposed forms and methods of notice.....................................2
        A.  Plaintiffs' proposed notice program. ...................................................................................3
           1.       Direct-Mailing Notice .................................................................................................3
           2.       Settlement Website and Toll-Free Telephone Number.............................................7
           3.       Publication ...................................................................................................................7
        B.  Plaintiffs' notice program comports with Rule 23(c)(2)(B) and due process. ......................8
    II.  The plan of distribution should be preliminarily approved. ..........................................................8
CONCLUSION....................................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
    818 F.2d 145 (2d Cir. 1987) ..................................................................................................3

*In re Sony Corp. Sxrd Rear Projection TV Mktg.*, No. 09-MD-2102, 2010 U.S. Dist. LEXIS 49565
    (S.D.N.Y. May 19, 2010) ........................................................................................................7

*Maley v. Del. Global Technologies Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................................................9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ...............................................................................................................8

*Reiter v. Sonotone Corp.*,
    442 U.S. 330 (1979) ...............................................................................................................3

*Soberal-Perez v. Heckler*,
    717 F.2d 36  (2d Cir. 1983) ....................................................................................................2

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005) ................................................................................................. 2, 8

*Weigner v. The City of New York*,
    852 F.2d 646 (2d Cir. 1988) ...................................................................................................2

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... 2, 3, 8

**INTRODUCTION**

On February 1, 2016, Plaintiffs[1] moved for preliminary approval of the proposed settlements with R.P. Martin[2] and Citi[3] (collectively, "Settlements"). ECF No. 187. Plaintiffs contemporaneously filed a memorandum of law in support of their motion, demonstrating the procedural fairness and substantive fairness of the Settlements and the sufficiency of the proposed settlement class under Rules 23(a) and 23(b)(3). ECF No. 188.[4]

Plaintiffs now submit this Supplemental Memorandum of Law in Support of Preliminary Approval, and accompanying Declarations of Geoffrey M. Horn ("Horn Decl.") and Dr. Craig Pirrong ("Pirrong Decl."),[5] and the Affidavit of Linda V. Young ("Young Aff."),[6] detailing the proposed notice program and plan of allocation to administer the Settlements. Plaintiffs, on behalf of themselves and the proposed Settlement Class, respectfully move the Court to enter an Order that:

    (a)    preliminarily approves Plaintiffs' proposed Settlements, subject to later, final approval;

    (b)    conditionally certifies a Settlement Class on the claims against R.P. Martin and Citi;

---

[1] Jeffrey Laydon, the California State Teachers' Retirement System ("CalSTRS"), Sonterra Capital Master Fund, Ltd., and Hayman Capital Management, L.P., filed the initial motions for preliminary approval. On March 18, 2016, Hayman Capital Management L.P. and Sonterra Capital Master Fund Ltd. filed a motion to substitute party, substituting Hayman Capital Master Fund, L.P. and Japan Macro Opportunities Master Fund, L.P. as named party plaintiffs. *Sonterra Capital Master Fund Ltd. et al. v. UBS AG et al.,* No. 15-cv-5844 (GBD) (S.D.N.Y.), ECF No. 212. Defendants submitted a letter response on March 28, 2016 consenting to the substitution. ECF No. 216. The Court granted the motion on March 30, 2016. ECF No. 217. Hereinafter, "Plaintiffs" refers to Jeffrey Laydon, CalSTRS, Sonterra Capital Master Fund, Ltd., Hayman Capital Master Fund, L.P. and Japan Macro Opportunities Master Fund, L.P. Unless otherwise noted, ECF Citations are to the docket in *Sonterra Capital Master Fund Ltd. et al. v. UBS AG et al.,* No. 15-cv-5844 (GBD) (S.D.N.Y.)

[2] "R.P. Martin" means R.P. Martin Holdings Limited and Martin Brokers (UK) Ltd., and their subsidiaries and affiliates. The R.P. Martin Settlement Agreement is annexed to the Declaration of Vincent Briganti ("Briganti Decl."), ECF No. 189, Ex. 1.

[3] "Citi" means Citigroup Inc., Citibank, N.A., Citibank Japan Ltd., and Citigroup Global Markets Japan Inc., and their subsidiaries and affiliates. The Citi Settlement Agreement is annexed to the Briganti Decl., ECF No. 189, Ex. 2.

[4] Plaintiffs' Memorandum in Support of Motion for Preliminary Approval of Class Action Settlements is hereby incorporated by reference.

[5] Attached as Ex. 1 to the Horn Decl.

[6] Attached as Ex. 2 to the Horn Decl.

(c)     appoints Lowey Dannenberg Cohen & Hart, P.C. ("Lowey Dannenberg") as Class Counsel;

(d)     appoints A.B. Data, Ltd. ("A.B. Data") as the Settlement Administrator under the Settlements;[7]

(e)     approves Plaintiffs' proposed Class notices (Horn Decl., Exs. 4, 5) and proposed notice plan (Young Aff., attached as Ex. 2 to the Horn Decl.);

(f)     approves Plaintiffs' Proposed Plan of Allocation (Horn Decl., Ex. 6); and

(g)     sets a schedule leading to the Court's consideration of final approval of the Settlement Agreements, including:

    (i) the date, time, and place for a hearing to consider the fairness, reasonableness and adequacy of the Settlement Agreements ("Fairness Hearing");

    (ii) the deadline for members of the Settlement Class to exclude themselves (*i.e.*, opt out) from the Settlement Agreements;

    (iii) the deadline for Class Counsel to submit a petition for attorneys' fees and reimbursement of expenses, and incentive awards for Settlement Class representatives; and

    (iv) the deadline for members of the Settlement Class to object to the Settlement Agreements and any of the related petitions.

*See* Revised Proposed Order annexed hereto as Exhibit A.

## ARGUMENT

**I.**    **The Court should approve the proposed forms and methods of notice.**

Due process and the Federal Rules require that the class receive adequate notice of a class action settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 114 (2d Cir. 2005). The adequacy of a settlement notice is measured by reasonableness. *See Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983); *see also* FED. R. CIV. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."); *Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir. 1988) (due process does not require actual notice to every class member, as long as class counsel "acted reasonably in selecting means likely to inform persons affected.").

---

[7] Capitalized terms here have the same meaning as in the Citi Settlement Agreement.

Rule 23(c)(2) requires only that members of a Rule 23(b)(3) class, like this one, be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Notice must clearly state:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* District Courts are afforded "considerable discretion" in fashioning class notice. *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 168 (2d Cir. 1987) (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979)). Plaintiffs' proposed notice program—consisting of mailed, published, and online notice—easily satisfies this standard.

### A. Plaintiffs' proposed notice program.

#### 1. *Direct-Mailing Notice*

The Settlement Administrator will send the mailed notice (Horn Decl., Ex. 3) and the Proof of Claim (Horn Decl., Ex. 6) via First-Class mail, postage prepaid to members of the Settlement Class.

**Exchange Traded.** To distribute the long-form notice to futures traders, Plaintiffs first propose to send individual, mailed notice to all large traders in Chicago Mercantile Exchange

3

("CME") Euroyen TIBOR and CME Japanese Yen futures contracts whose names Plaintiffs will obtain pursuant to a subpoena to the CME.[8]

Second, everyone who transacted in CME Euroyen TIBOR and CME Japanese Yen futures contracts had to do so through a CME clearing broker. Plaintiffs propose that mailed notice be given to all CME clearing brokers whose names Plaintiffs will obtain pursuant to a subpoena to the CME, with the direction that the CME clearing brokers forward the notice to their customers who bought, sold, or held CME Euroyen TIBOR or CME Japanese Yen futures contracts during the Class Period (or provide the names and addresses of such customers to the Settlement Administrator). This should result in mailed notice to all Settlement Class Members, and provide overlapping notice to the Settlement Class Members who had the largest positions in CME Euroyen TIBOR and CME Japanese Yen futures contracts.

Third, U.S. market participants that transacted in Tokyo Financial Exchange ("TFX"), Singapore Exchange ("SGX"), or London International Financial Futures and Options Exchange ("LIFFE") Euroyen TIBOR futures contracts also did so through a TFX, SGX, or LIFFE clearing broker. Thus, Plaintiffs propose that mailed notice be given to all TFX, SGX, or LIFFE clearing brokers whose names Plaintiffs obtained through the TFX, SGX, or LIFFE websites, with the direction that the TFX, SGX, or LIFFE clearing brokers forward the notice to their U.S.-based customers who bought, sold, or held Euroyen TIBOR futures contracts during the Class Period (or provide the names and addresses of such U.S. market participants to the Settlement Administrator). This should result in mailed notice to all Settlement Class Members that traded the relevant futures contracts.

---

[8] According to the CFTC's Commitments of Traders reports, on average during the Class Period, 76% of Euroyen TIBOR futures contracts and 82% of Japanese Yen futures contracts were held by large traders.

4

**Over-The-Counter Market.** To distribute the long-form notice to over-the-counter ("OTC") Euroyen-Based Derivatives traders, Plaintiffs plan to capitalize on the relatively concentrated nature of the OTC derivatives market by mailing notice (1) to a list of large OTC investors; and (2) to the largest Euroyen-Based Derivatives dealers in the United States.

OTC Euroyen-Based Derivatives are typically traded only by "institutional investors," *e.g.*, investment firms, insurers, commodity pools, and large employee-benefit plans.[9] According to the Federal Reserve Bank of New York, more than 90% of U.S.-based trade in OTC interest rate derivatives, including Euroyen-Based Derivatives, is conducted by a small group of financial institutions and derivatives dealers.[10] For example, the Federal Reserve Bank of New York identified roughly 300 unique participants in the OTC interest rate derivatives market between June 1, 2010 and August 31, 2010.[11] Applying these results to the rest of the Class Period, there are likely hundreds (if not thousands) of OTC Euroyen-Based Derivatives traders in the United States, significantly less than the number of investors who transacted in exchange-traded Euroyen-Based Derivatives during the same period.[12] To help identify these traders and notify the Class, Citi, one of the largest derivatives dealers in the United States, has agreed to provide Plaintiffs with counterparty information for its transactions in OTC Euroyen-Based Derivatives during the Class Period. *See* Citi Settlement Agreement ¶ 14.

Transactions in the OTC Euroyen-Based Derivatives market also are handled by a relatively small group of interest rate derivatives dealers. For example, trading data produced to the Federal

---

[9] *See e.g.*, J. Christopher Giancarlo, *Pro-Reform Reconsideration of the CFTC Swaps Trading Rules: Return to Dodd-Frank*, U.S. Commodity Futures Trading Commission (Jan. 29, 2015) at 10 (explaining that the swaps market is closed to retail traders).

[10] *See e.g.*, *The Foreign Exchange and Interest Rate Derivatives Markets: Turnover in the United States*, FEDERAL RESERVE BANK OF NEW YORK (April 2010) at 9 (91% counterparties in foreign exchange and interest rate derivatives transactions were one of approximately 30 reporting dealers or other financial institutions).

[11] Michael Fleming, John Jackson, Ada Li, Asani Sarkar, and Patricia Zobel, *An Analysis of OTC Interest Rate Derivatives Transactions: Implications for Public Reporting*, FEDERAL RESERVE BANK OF NEW YORK (March 2012) at 3.

[12] *See supra* note 9 at 11 (comparing the sizes of the OTC and exchange-based derivatives markets).

Reserve Bank of New York shows that between June 1, 2010 and August 31, 2010 the top fourteen ("G14") interest rate derivatives dealers were on one side of roughly 80% of all OTC interest rate derivatives transactions.[13] This is consistent with the Federal Reserve Bank of New York's triennial survey of turnover in the U.S. foreign exchange and interest rate derivatives markets, which shows that during the Class Period the ten largest dealers in the United States accounted for between 90% and 95% of all trade in OTC interest swaps, forward rate agreements, and options.

Therefore, the Settlement Administrator proposes mailing the following notice to OTC market participants:

- **Direct Mailing.** Notice will be sent directly to a list of U.S.-based derivatives market participants, including: (1) members of the International Swaps and Derivatives Association ("ISDA"), a global trade association for OTC derivatives responsible for maintaining the standardized ISDA Master Agreement used in OTC Euroyen-Based Derivatives transactions; (2) Citi's OTC Euroyen-Based Derivatives counterparties; (3) senior executives at hedge funds, investment banks, and real estate companies – the commercial end-users of OTC Euroyen-Based Derivatives; (4) financial executives, including pension fund managers and derivatives traders, responsible for managing Yen exposure; (5) individual traders and brokers who have transacted in the Euroyen market during the Class Period; (6) the CME's list of large traders, including those who transacted in Euroyen TIBOR and Yen currency futures contracts; and (7) a proprietary list of banks, brokers, and other investors. This list is several times larger than the anticipated number OTC Euroyen-Based Derivatives market participants and should effectively reach a large percentage of the Class. Young Aff, attached as Ex. 2 to the Horn Decl.

- **Dealer Notification.** Notice will also be sent to approximately the thirty largest foreign exchange and interest rate derivatives dealers in the United States with instructions to either (a) forward the notice on to their customers; or (b) provide a customer list that the Settlement Administrator can notify directly. The list of dealers notified will come from the Federal Reserve Bank of New York's triennial survey of turnover in the U.S. foreign exchange an interest rate derivatives markets.[14] Because these dealers collectively account for at least 90% to 95% of turnover in the OTC market, this method will reach almost all Class members who transacted in OTC Euroyen-Based Derivatives. Young Aff, attached as Ex. 2 to the Horn Decl.

---

[13] *See An Analysis of OTC Interest Rate Derivatives Transactions*, *supra* note 11 at 2 n.3 (identifying "major derivatives dealers" or "G14 dealers" as Bank of America-Merrill Lynch, Barclays Capital, BNP Paribas, Citibank, Credit Suisse, Deutsche Bank AG, Goldman Sachs & Co., HSBC Group, J.P. Morgan, Morgan Stanley, The Royal Bank of Scotland Group, Société Générale, UBS AG and Wachovia Bank N.A.).

[14] *See e.g.*, *The Foreign Exchange and Interest Rate Derivatives Markets: Turnover in the United States*, FEDERAL RESERVE BANK OF NEW YORK, April 2007, at Annex II (listing more than 30 dealers, including the G14 dealers identified *supra* at note 10).

By mailing individual notice to these various persons and entities, notice is reasonably calculated to reach all Settlement Class Members that traded OTC Euroyen-Based Derivatives.

2. *Settlement Website and Toll-Free Telephone Number*

A Settlement Website, www.EuroyenSettlement.com, will be created for members of the Class to obtain necessary information regarding the Settlements. By visiting the Settlement Website, members of the Class can review and obtain: (i) a blank proof of claim form; (ii) the full and summary notices; (iii) the proposed plan of allocation; (iv) the Stipulations and Agreements of Settlement with Citi and R.P. Martin; and (v) key pleadings and Court orders, such as the Complaints and this motion. The Settlement Administrator will also set up a toll-free telephone number to answer Class Members' questions and facilitate the filing of claims.

3. *Publication*

The Settlement Administrator also will publish the attached Publication Notice (Horn Decl., Ex. 4) in The Wall Street Journal, Investor's Business Daily, the Financial Times, Modern Trader, Stocks & Commodities, Global Capital, Hedge Fund Alert, Grant's Interest Rate Observer, and on the following websites: (i) futuresmag.com; (ii) FINAlternatives.com; (iii) traders.com; (iv) HFAlert.com; (v) FOW.com; and (vi) GlobalCapital.com. *See* Young Aff, attached as Ex. 2 to the Horn Decl. In addition, the Settlement Administrator will publish the summary notice in e-newsletters from Futures & Options World, Stocks & Commodities, FuturesMag.com, and FINAlternatives, as well as in email "blasts" to subscribers of Stocks & Commodities, Modern Trader, and FINAlternatives. *See, e.g., In re Sony Corp. Sxrd Rear Projection TV Mktg.*, No. 09-MD-2102, 2010 U.S. Dist. LEXIS 49565, at *16 (S.D.N.Y. May 19, 2010) (approving notice by direct mail and email to class members). The Settlement Administrator will also disseminate a news release via Newswire's US1 Finance Newsline distribution list to announce the Notice of Settlement, which will be distributed to over 4,600 financial newsrooms, both print and broadcast, and approximately

7

550 websites. Young Aff, attached as Ex. 2 to the Horn Decl. Any members of the Settlement Class that do not receive notice through direct mail are likely to receive notice through the foregoing publications or through word of mouth.

### B. Plaintiffs' notice program comports with Rule 23(c)(2)(B) and due process.

Plaintiffs' proposed notice satisfies all of the Rule 23(c)(2)(B) factors. It carefully details the nature of these actions and the Class of U.S. investors that are included in the Settlements, provides an ample "Background of the Litigation," which describes the claims, issues, and/or defenses presented in the actions, and that the Court's judgment will be binding for all Class Members that remain in the Class. Linda Young, the Vice President, Media with A.B. Data, confirms "that the Proposed Notice Program is adequate and reasonable and will effectively reach Settlement Class Members[]" and "is fully compliant with Rule 23[.]" Horn Decl., Ex. 2. at 6-7.

The proposed notice also comports with due process. The notice is written in clear and concise language, which "may be understood by the average class member." *See Wal-Mart*, 396 F.3d at 114. Class Members are provided with a full and fair opportunity to consider the proposed Settlements and to respond and/or appear in Court. The Supreme Court has consistently found that mailed notice satisfies the requirements of due process. *See, e.g., Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950).[15] Because Plaintiffs' proposed notice program is the best under the circumstances, the Court should approve proposed forms and methods of notice.

## II. The plan of distribution should be preliminarily approved.

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized -- namely, it must be fair and adequate." *Maley v. Del. Global Technologies*

---

[15] Plaintiffs propose essentially the same program of notice that has been repeatedly approved in prior manipulation class action settlements, *In re Platinum and Palladium Commodities Litig.*, No. 10 Civ. 3617 (WHP), ECF No. 213 at ¶¶ 7-11 (S.D.N.Y. Jul. 15, 2014), *In re Amaranth Natural Gas Commodities Litig.*, No. 07 Civ. 6377 (SAS), ECF No. 376 at ¶¶ 7-10 (S.D.N.Y. Jan. 3, 2012); *In re Dairy Farmers of America Inc. Cheese Antitrust Litig.,* No. 09 Civ. 3690, ECF No. 495 at ¶¶ 7-10 (N.D. Ill. Mar. 17, 2014); *Hershey v. Pacific Inv. Mgmt. Co. LLC*, No. 05 Civ. 04681 (RAG), ECF No. 562 at ¶¶ 2-4 (N.D. Ill. Jan. 26, 2011); *In re Optiver Commodities Litig.*, No. 08-cv-6842 (LAP), ECF No. 67 at ¶¶ 14-18.

8

*Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) (citation omitted). The allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel. *Id.*

Here, the Proposed Plan of Allocation (Horn Decl., Ex. 5) was crafted by competent counsel, based on the knowledge and opinions of several experts, including Dr. Craig Pirrong. Dr. Pirrong has extensive experience with commodities manipulation cases and developed plans of allocation in several class actions over the last 18 years, including in *In re Amaranth Natural Gas Commodities Litig.*, 07-cv-6377 (SAS) (S.D.N.Y.) and *In re Optiver Commodities Litig.*, 08-cv-6842 (LAP) (S.D.N.Y.). Pirrong Decl., attached as Ex. 1 to the Horn Decl., ¶¶ 2-15.

Under the proposed methodology, Dr. Pirrong will perform a standard event study to quantify the "artificiality," *i.e.*, the amount that prices and payments differed from what they would have been absent the alleged manipulation, for Euroyen-Based Derivatives traded during the Class Period. *Id.* ¶¶ 32-33. Dr. Pirrong will use regression analysis to generate an "artificiality matrix" for Yen-LIBOR and Euroyen TIBOR reflecting each forward rate and swap rate on each day of the Class Period. *Id.* ¶¶ 35-36. Once the regressions are complete, Dr. Pirrong will multiply the artificiality in each manipulated spot rate by the appropriate regression coefficients for each tenor and then add these products to get a total impact of the manipulations on the rate for each tenor of Yen-LIBOR and Euroyen TIBOR. *Id.* ¶ 37. Dr. Pirrong will then determine the "but for" rate by deducting the artificiality for that rate from the market rate for that tenor on a given date. *Id.* ¶ 38. Dr. Pirrong's daily artificiality matrix, as described in the Proposed Plan of Allocation, will be posted on the Settlement Website on or before thirty days prior to the opt-out deadline. Changes, if any, to the daily artificiality matrix based on newly available data or information will be promptly posted on the Settlement Website. *Id.* ¶ 34. The Net Settlement Fund will be distributed by multiplying the Net Artificiality Paid by each Class Member by the Pro Rata Fraction, *i.e.*, the Net Settlement Fund

9

divided by total Net Artificiality Paid by all Class Members who have positive Net Artificiality Paid. For example, if the Net Settlement Fund is $15 million and the sum total of the Net Artificiality Paid for all Class Members who have positive Net Artificiality Paid is $150 million, then the Pro Rata Fraction will be 10%. *Id.* This will determine the amount to be paid to each Class Member. Because the plan of allocation is based on peer reviewed literature and is a fair and reasonable method to distribute the Net Settlement Fund, it should be approved.

## CONCLUSION

For the stated reasons, Plaintiffs respectfully request that the Court enter the accompanying proposed Order: (1) granting preliminary approval of the proposed Settlements with R.P. Martin and Citi; (2) conditionally certifying the Settlement Class for purposes of sending notice to the Class; (3) appointing Lowey Dannenberg as Class Counsel; (4) appointing A.B. Data, Ltd. as Settlement Administrator; (5) approving Plaintiffs' proposed Class notices and notice plan; (6) approving Plaintiffs' Proposed Plan of Allocation; and (7) sets a schedule leading to the Court's consideration of final approval of the Settlement Agreement.

Dated: April 6, 2016
White Plains, New York

**LOWEY DANNENBERG COHEN & HART, P.C.**

/s/ Vincent Briganti
Vincent Briganti
Geoffrey M. Horn
Peter D. St. Phillip
One North Broadway, 5th Floor
White Plains, New York 10601
914-997-0500
vbriganti@lowey.com
ghorn@lowey.com
pstphillip@lowey.com

*Counsel for Plaintiffs*

Joseph J. Tabacco, Jr.
Todd A. Seaver
**BERMAN DEVALERIO**
One California Street, Suite 900

10

San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6282
jtabacco@bermandevalerio.com
tseaver@bermandevalerio.com

Patrick T. Egan
Daryl DeValerio Andrews
**BERMAN DEVALERIO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
pegan@bermandevalerio.com
dandrews@bermandevalerio.com

**LOVELL STEWART HALEBIAN JACOBSON LLP**

By: */s/ Christopher Lovell*
Christopher Lovell
Gary S. Jacobson
61 Broadway, Suite 501
New York, NY 10006
Tel.: 212-608-1900
Fax: 212-719-4677

*Additional Counsel for Plaintiffs*

11