**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SONTERRA CAPITAL MASTER FUND, LTD., HAYMAN CAPITAL MASTER FUND, L.P., JAPAN MACRO OPPORTUNITIES MASTER FUND, L.P., and CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>UBS AG, UBS SECURITIES JAPAN CO. LTD., MIZUHO BANK, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHIN UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, RESONA BANK, LTD., J.P. MORGAN CHASE & CO., JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, MIZUHO TRUST AND BANKING CO., LTD., THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, THE BANK OF YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, THE ROYAL BANK OF SCOTLAND GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED, RBS SECURITIES INC., BARCLAYS BANK PLC, BARCLAYS PLC, BARCLAYS CAPITAL INC., CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, LLOYDS BANKING GROUP PLC, LLOYDS BANK PLC, ICAP PLC, ICAP EUROPE LIMITED, R.P. MARTIN HOLDINGS LIMITED, MARTIN BROKERS (UK) LTD., TULLETT PREBON PLC, BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., MERRILL LYNCH INTERNATIONAL, AND JOHN DOE NOS. 1-50,<br><br>Defendants. | Docket No. 15-cv-5844 (GBD) (HBP) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH
DEFENDANTS HSBC HOLDINGS PLC AND HSBC BANK PLC**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

ARGUMENT ..............................................................................................................................3

I.    The Court should preliminarily approve the HSBC Settlement. ..................................3

    A.    The preliminary approval standard. ..................................................................3

    B.    The HSBC Settlement provides a considerable benefit to the Settlement Class. .................4

    C.    The HSBC Settlement is procedurally fair because it was produced by well-informed, arm's length negotiations by experienced counsel with the assistance of a mediator. ..........6

    D.    There are not obvious or other deficiencies in the HSBC Settlement. ...................................8

    E.    The HSBC Settlement does not favor Plaintiffs or any Class Members or create any preferences. ..................8

    F.    The HSBC Settlement consideration is well within the range of what possibly may be found, at final approval, to be fair and reasonable. ......................8

        1.    Applying the *Grinnell* "final approval" Factors to the HSBC Settlement is unnecessary at preliminary approval. ...............................................11

        2.    Unlike in *Grinnell*, recovery on many claims being settled here is not foreclosed because of the availability of joint and several liability recovery from the remaining defendants. ..................14

II.    The Court should certify the Settlement Class defined in the HSBC Settlement. ................14

    A.    The Settlement Class meets the Rule 23(a) requirements. .......................................15

        1.    Numerosity ................................................................................................15

        2.    Commonality ............................................................................................16

        3.    Typicality ..................................................................................................17

        4.    Adequacy ..................................................................................................18

            a.    The Representative Plaintiffs suffer no disabling conflicts with the members of the Settlement Class. ..................18

            b.    Plaintiffs' Counsel is adequate. ...................................................19

                i.    The Court should appoint Class Counsel under Rule 23(g)(1). .............................. 20

    B.    The proposed settlement class Satisfies Rule 23(b)(3). ...............................................20

        1.    Predominance ............................................................................................20

        2.    Superiority ................................................................................................23

III.    The Court should appoint Citibank, N.A. as Escrow Agent. ...................................24

IV.    The Court should approve the proposed forms and methods of notice and Proposed Plan of Distribution. ..................24

CONCLUSION ..................................................................................................................... 25

## TABLE OF AUTHORITIES

### Cases

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................................................21, 22, 23

*Animal Sci. Prods, Inc. v. Hebei Welcome Pharm. Co. (In re Vitamin C Antitrust Litig.),*
    279 F.R.D. 90 (E.D.N.Y. 2012) .......................................................................................21

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.,*
    222 F.3d 52 (2d Cir. 2000) ...............................................................................................18

*Bano v. Union Carbide Corp,*
    273 F.3d 120 (2d Cir. 2001) ...............................................................................................3

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ............................................................................................................5

*Bolanos v. Norwegian Cruise Lines Ltd.,*
    212 F.R.D. 144 (S.D.N.Y. 2002) .....................................................................................17

*Brown v. Kelly,*
    609 F.3d 467 (2d Cir. 2010) .............................................................................................20

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) .................................................................................... 11, 14

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
    502 F.3d 91 (2d Cir. 2007) ...............................................................................................22

*deMunecas v. Bold Food, LLC,*
    No. 09 Civ. 00440, 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y. Aug. 23, 2010)............................7

*Gottesman v. General Motors Corp.,*
    436 F.2d 1205 (2d Cir. 1971) .............................................................................................9

*Guerrero v. Wells Fargo Bank, N.A.,*
    No. C 12-04026, 2014 U.S. Dist. LEXIS 50015 (N.D. Cal. Apr. 7, 2014) ................5

*In re "Agent Orange" Prod. Liab. Litig.,*
    597 F. Supp. 740 (E.D.N.Y. 1984) ....................................................................................8

*In re Air Cargo Shipping Servs. Antitrust Litig.,*
    MDL No. 1775, 2014 U.S. Dist. LEXIS 180914 (E.D.N.Y. Oct. 15, 2014) ............................21

iii

*In re Am. Int'l Grp. Secs. Litig.,*
  689 F.3d 229 (2d Cir. 2012) ................................................................ 21, 23

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.,* MDL No. 1500, 02-civ-5575 (SWK), 2006 U.S.
  Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) ............................................. 13

*In re Austrian and German Bank Holocaust Litig.,*
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) .......................................................... 6

*In re Corrugated Container Antitrust Litig.,*
  643 F.2d 195 (5th Cir. 1981) ................................................................... 18

*In re Currency Conversion Fee Antitrust Litig.,*
  224 F.R.D. 555 (S.D.N.Y. 2004) ............................................................... 23

*In re Currency Conversion Fee Antitrust Litig.,*
  263 F.R.D. 110 (S.D.N.Y. 2009) ............................................................... 10

*In re Diet Drugs,*
  MDL Dkt No. 1203, 2000 U.S. Dist. LEXIS 12275 (E.D. Pa. Aug. 28, 2000) ...... 22

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
  574 F.3d 29 (2d Cir. 2009) ...................................................................... 17

*In re Flonase Antitrust Litig.,*
  951 F. Supp. 2d 739 (E.D. Pa. 2013) ........................................................... 9

*In re Global Crossing Sec. and ERISA Litig.,*
  225 F.R.D. 439 (S.D.N.Y. 2004) .......................................................... 13, 18

*In re Indep. Energy Holdings PLC Sec. Litig.,*
  No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 26 ) ................... 6

*In re Initial Pub. Offering Sec. Litig.,*
  260 F.R.D. 81 (S.D.N.Y. 2009) ........................................................... 16, 22

*In re Ins. Brokerage Antitrust Litig.,*
  282 F.R.D. 92 (D.N.J. 2012) ..................................................................... 21

*In re NASDAQ Market-Makers Antitrust Litig.,*
  169 F.R.D. 493 (S.D.N.Y. 1996) .......................................................... 18, 22

*In re NASDAQ Market-Makers Antitrust Litig.,*
  187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................... 9, 10

iv

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................ 4, 8, 11

*In re PaineWebber Ltd. Partnerships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. Mar. 20, 1997) ...................................................................6

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    986 F. Supp. 2d 207 (E.D.N.Y. 2013).................................................................. 11, 22

*In re Platinum & Palladium Commodities Litig.*,
    No. 10CV3617, 2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014)....................................4

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) .......................................................................................21

*In re Prudential Sec. Inc. Ltd. Pshps. Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) .................................................................................16

*In re Prudential Secs. Ltd P'ships Litig.*,
    No. M-21-67 (MP), 1995 U.S. Dist. LEXIS 22103 (S.D.N.Y. Nov. 20, 1995) .................. 9, 10

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ...................................................................................6

*In re Take Two Interactive Secs. Litig.*,
    No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837 (S.D.N.Y. June 29, 2010)...................12

*In re Traffic Exec. Assn. E. R.R.s.*,
    627 F.2d 631 (2d Cir. 1980) .........................................................................................3

*In re Tronox Inc.*,
    No. 14-cv-5495 (KBF), 2014 U.S. Dist. LEXIS 158767 (S.D.N.Y. Nov. 10, 2014) ...............14

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) .............................................................................10

*Laydon v. Mizuho Bank, Ltd.*,
    No. 12 Civ. 3419, 2016 U.S. Dist. LEXIS 57753 (S.D.N.Y. Apr. 29, 2016) ...........................12

*Maley v. Del. Global Technologies Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)..........................................................................24

*Marisol A. by Forbes v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) .......................................................................................17

*Martens v. Smith Barney Inc.,*
    181 F.R.D. 243 (S.D.N.Y. 1998) ...................................................................................18

*Maywalt v. Parker & Parsley Petroleum Co.,*
    67 F.3d 1072 (2d Cir. 1995) .................................................................................... 9, 11

*MCI Comm'ns Corp. v. Am. Tel. & Tel. Co.,*
    708 F.2d 1081 (7th Cir. 1983).......................................................................................9

*McReynolds v. Richards–Cantave,*
    588 F.3d 790 (2d Cir. 2009) ..........................................................................................4

*Meredith Corp. v. SESAC, LLC,*
    87 F. Supp. 3d 650 (S.D.N.Y. 2015)...........................................................................23

*Messner v. Northshore Univ. HealthSystem,*
    669 F.3d 802 (7th Cir. 2012).......................................................................................21

*Morris v. Affinity Health Plan, Inc.,*
    859 F. Supp. 2d 611 (S.D.N.Y. 2012)...........................................................................6

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972) ..........................................................................................8

*Scholes v. Stone, McGuire & Benjamin,*
    143 F.R.D. 181 (N.D. Ill. 1992) ..................................................................................16

*Seijas v. Republic of Arg.,*
    606 F.3d 53 (2d Cir. 2010) ..........................................................................................23

*Shapiro v. JPMorgan Chase & Co.,*
    11 CIV. 8331 (CM) (MHD), 2014 U.S. Dist. LEXIS 37872 (S.D.N.Y. Mar. 24, 2014) ...........6

*Strobl v. New York Mercantile Exch.,*
    582 F. Supp. 770 (S.D.N.Y. 1984) ..............................................................................14

*Tyson Foods, Inc. v. Bouaphakeo,*
    136 S. Ct. 1036 (2016)..................................................................................................21

*U.S. Football League v. Nat'l Football League,*
    644 F. Supp. 1040 (S.D.N.Y. 1986) ..............................................................................9

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011)..................................................................................................16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005) ...................................................................................3

*Weigner v. The City of New York,*
    852 F.2d 646 (2d Cir. 1988) .................................................................................24

**Other Authorities**

7 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1768 (1972) .........18

Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41, at 89 (4th ed. 2002) ......3

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 ......................................................3

MANUAL FOR COMPLEX LITIGATION (THIRD) ¶ 30.42 (1995)................................................6

**Rules**

FED. R. CIV. P. 23(a) .............................................................................. 15, 16, 17, 18

FED. R. CIV. P. 23(b)(3).............................................................................. 20, 23

FED. R. CIV. P. 23(e) ........................................................................................3

FED. R. CIV. P. 23(g)(1)....................................................................................20

**INTRODUCTION**

On April 7, 2016, the Court granted preliminary approval of Plaintiffs'[1] settlements with the Citi[2] and R.P. Martin[3] Defendants. ECF No. 223. Following these "ice-breaker" settlements, Plaintiffs now move under Rule 23(e) of the Federal Rules of Civil Procedure ("Federal Rules") for preliminary approval of their settlement with Defendants HSBC Holdings plc and HSBC Bank plc (collectively, "HSBC") (the "HSBC Settlement").

Like its predecessor, the HSBC Settlement provides the Settlement Class with substantial consideration and cooperation from HSBC. HSBC Settlement Agreement ¶¶ 3, 4. Most importantly, the HSBC Settlement meets the two essential requirements for preliminary approval—it is procedurally and substantively fair. The HSBC Settlement was reached after months-long negotiations between experienced counsel, with the assistance of a skilled mediator, Gary McGowan. *See* Part I.C., *infra.* The HSBC Settlement is substantively fair, reasonable, and adequate, providing for HSBC to pay $35,000,000 into a settlement fund, which will then be distributed to qualifying members of the Settlement Class.[4] *See* Part I.F., *infra.*

The Court has already approved the proposed plan of allocation, forms of notice, settlement administrator, appointed Class Counsel, and preliminarily certified a settlement class for the Citi and R.P. Martin Settlements. ECF No. 223. Plaintiffs submit this memorandum of law and the accompanying Declaration of Vincent Briganti, Esq., dated June 17, 2016 ("Briganti Decl."), and

---

[1] Plaintiffs are Jeffrey Laydon, Sonterra Capital Master Fund, Ltd., Hayman Capital Master Fund, L.P., Japan Macro Opportunities Fund, L.P., and California State Teachers' Retirement System ("CalSTRS"). Unless otherwise noted, ECF citations are to the docket in *Sonterra Capital Master Fund Ltd. et al. v. UBS AG et al.*, No. 15-cv-5844 (GBD) (S.D.N.Y.).

[2] "Citi" means Citigroup Inc., Citibank, N.A., Citibank Japan Ltd., and Citigroup Global Markets Japan Inc., and their subsidiaries and affiliates.

[3] "R.P. Martin" means R.P. Martin Holdings Limited and Martin Brokers (UK) Ltd., and their subsidiaries and affiliates.

[4] Capitalized terms here have the same meaning as in the HSBC Settlement Agreement.

Declaration of Geoffrey M. Horn ("Horn Decl.") to demonstrate that this Court should likewise grant Plaintiffs' motion for an Order that:

    (a)    preliminarily approves Plaintiffs' proposed settlement with HSBC, subject to later, final approval;

    (b)    conditionally certifies a Settlement Class for the claims against HSBC, and conforms the Citi and R.P. Martin Settlement Class with the HSBC Settlement Class;

    (c)    appoints Lowey Dannenberg Cohen & Hart, P.C. ("Lowey Dannenberg") as Class Counsel;

    (d)    appoints Citibank, N.A. as the Escrow Agent for the HSBC Settlement;

    (e)    appoints A.B. Data, Ltd. ("A.B. Data") as the Settlement Administrator for the HSBC Settlement;

    (f)    approves Plaintiffs' proposed combined class notice (Horn Decl., Exs. 4, 5) and proposed combined notice plan for the HSBC Settlement Agreement, Citi Settlement Agreement, and R.P. Martin Agreement (collectively, the "Settlement Agreements") (Young Aff., attached as Ex. 2 to the Horn Decl.);

    (g)    approves Plaintiffs' Proposed Plan of Allocation (Horn Decl., Ex. 6); and

    (h)    sets a schedule leading to the Court's consideration of final approval of the Settlement Agreements, including:

        (i)    the date, time, and place for a hearing to consider the fairness, reasonableness and adequacy of the Settlement Agreements ("Fairness Hearing");

        (ii)    the deadline for members of the Settlement Class to exclude themselves (*i.e.*, opt out) from the Settlement Agreements;

        (iii)    the deadline for Class Counsel to submit a petition for attorneys' fees and reimbursement of expenses, and incentive awards for Settlement Class representatives; and

        (iv)    the deadline for members of the Settlement Class to object to the Settlement Agreements and any of the related petitions.

*See* Proposed Superseding Order annexed to Plaintiffs' notice of motion as Exhibit A.

## ARGUMENT

### I.   The Court should preliminarily approve the HSBC Settlement.

The procedural history of the *Laydon* and *Sonterra* actions (the "Actions") is set forth in both the Briganti Decl. at ¶¶ 5-12 for recent developments in the Actions, and the earlier Declaration of Vincent Briganti, dated February 1, 2016 (ECF No. 189 ¶¶ 10-21) ("Feb. 1 Briganti Decl.").

### A.   The preliminary approval standard.

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public policy"); *Bano v. Union Carbide Corp,* 273 F.3d 120, 129-30 (2d Cir. 2001) (there is an overriding public interest in settling and quieting litigation, particularly class actions).

Proposed settlements of a Rule 23(b)(3) class, like this one,[5] require notice to class members, an opportunity for those class members to object, and final approval by the Court after a hearing at which class members may appear and be heard. FED. R. CIV. P. 23(e) (settlements in class actions require ". . . the court's approval"); *see generally* Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41, at 89 (4th ed. 2002). Preliminary approval is akin to "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Assn. E. R.R.s.,* 627 F.2d 631, 634 (2d Cir. 1980). The Judicial Center's Manual for Complex Litigation recommends preliminary approval in complex cases. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 ("MANUAL").

Preliminary approval of a settlement is not expressly mentioned in either the Federal Rules or Rule 23. Frequently, the judicially-created requirements for preliminary approval have been

---

[5] Rule 23(b)(3) classes, unlike those based on non-monetary or injunctive relief under Rule 23(b)(2), require notice to the class.

expressed as follows:

> Where the proposed settlement [1] appears to be the product of serious, informed, non–collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class and [4] falls within the range of **possible** approval, preliminary approval is granted.

*In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*") (emphasis and numbers in brackets supplied); *In re Platinum & Palladium Commodities Litig.*, No. 10CV3617, 2014 U.S. Dist. LEXIS 96457, at *35-36 (S.D.N.Y. July 15, 2014) ("*Platinum*"). The HSBC Settlement amply satisfies each of these four requirements. *See* Pts. I.C-F, *infra*.

In conducting the preliminary approval inquiry, a court considers primarily the "negotiating process leading up to the settlement, [*i.e.,* procedural fairness], as well as the settlement's substantive terms, [*i.e.,* substantive fairness]." *Platinum,* 2014 U.S. Dist. LEXIS 96457, at *35-36; *McReynolds v. Richards–Cantave,* 588 F.3d 790, 803–04 (2d Cir. 2009) (same); *see also* Order Preliminarily Approving Proposed Settlements, Scheduling Hearing for Final Approval Thereof, and Approving the Proposed Form and Program of Notice to the Class (ECF No. 223); Order Preliminarily Approving Class Action Settlement and Conditionally Certifying a Settlement Class, *Sullivan v. Barclays plc*, No. 13-cv-2811 (PKC), (S.D.N.Y. Dec. 15, 2015), ECF No. 234 ("Euribor Order") (preliminarily approving $94 million settlement in a proposed class action alleging the manipulation of the Euro Interbank Offered Rate or Euribor). The question is whether the terms are "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *NASDAQ II*, 176 F.R.D. at 102.

## B.  The HSBC Settlement provides a considerable benefit to the Settlement Class.

The $35,000,000 HSBC Settlement, along with the $23,000,000 Citi Settlment, will provide the Settlement Class with a financial recovery of $58,000,000. This sum will also ensure funding to continue to pursue the litigation against the non-settling defendants. Unlike in many class action settlements, HSBC also agreed that if the HSBC Settlement is finally approved, the settlement

monies will **not** revert to HSBC for opt-outs or failures to submit proofs of claim. HSBC Settlement Agreement ¶ 10.[6] Given the reality that claim rates often fall below 100%, the non-reversion term of the HSBC Settlement likely will enhance the benefits and the recovery that qualifying claimants receive.[7]

The HSBC Settlement also obligates HSBC to provide significant cooperation to Plaintiffs and the Class to aid them in pursuing their case against the non-settling defendants immediately upon execution. This cooperation will include, among other things: (i) attorney proffers regarding the facts and information that HSBC uncovered during its Yen-LIBOR and Euroyen TIBOR investigations; (ii) underlying documents and communications that HSBC previously provided to regulators; (iii) information concerning HSBC's total volume in the interest rate and foreign derivatives market for Yen-denominated financial instruments between 2006 and 2011; (iv) certain submissions to the Federal Reserve Bank of New York; (v) transaction data for Euroyen-Based Derivatives and Yen-denominated interbank money market instruments between January 1, 2006 and June 30, 2011; and (vi) declarations, affidavits, witness statements, or other sworn or unsworn statements of HSBC employees. *Id.* ¶ 4. Equally of value, HSBC will provide Plaintiffs with access to witnesses within HSBC's control with knowledge about the Yen-LIBOR or Euroyen TIBOR conduct alleged in the Actions. *Id.*

In exchange for these benefits, the Settlement Class Members will release HSBC from any and all claims for the Euroyen-Based Derivatives that were allegedly distorted by HSBC's

---

[6] *Contrast Boeing Co. v. Van Gemert*, 444 U.S. 472, 479-82 (1980) (in the litigated trial and judgment context, the share of the settlement due to class members who failed to claim reverted to defendants); *see also Guerrero v. Wells Fargo Bank, N.A.*, No. C 12-04026, 2014 U.S. Dist. LEXIS 50015, at *6 (N.D. Cal. Apr. 7, 2014) (finding the lack of reversion to defendant of remaining portions of the net settlement an important benefit to the class). Under the HSBC Settlement, the proceeds that would have been paid to those persons who fail to claim will be redistributed among, and enhance the recovery of, those Settlement Class Members who do claim.

[7] While there is no reversion, HSBC does have the right, but not the obligation, in its sole discretion, to exercise certain rights, including terminating the HSBC Settlement Agreement, pursuant to the terms and conditions of a Supplemental Agreement filed contemporaneously herewith under seal. HSBC Settlement Agreement ¶ 23.

manipulation of Yen-LIBOR and Euroyen TIBOR. *Id.* ¶ 12. Plaintiffs' claims against HSBC will also be dismissed on the merits and with prejudice.

### C. The HSBC Settlement is procedurally fair because it was produced by well-informed, arm's length negotiations by experienced counsel with the assistance of a mediator.

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

Under these conditions, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. Mar. 20, 1997):

> As likewise stated by the MANUAL FOR COMPLEX LITIGATION, a "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."

*In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280-81 (S.D.N.Y. 1999) (citing MANUAL FOR COMPLEX LITIGATION (THIRD) ¶ 30.42 (1995)); *see also Shapiro v. JPMorgan Chase & Co.*, 11 CIV. 8331 (CM) (MHD), 2014 U.S. Dist. LEXIS 37872, at *6 (S.D.N.Y. Mar. 24, 2014) ("Co–Lead Counsel, who have extensive experience in prosecuting complex class actions, strongly believe the Settlement is in the best interests of the Class, an opinion which is entitled to 'great weight.'").

Here, the process leading up to the HSBC Settlement fully supports preliminary approval. The HSBC Settlement is the result of more than eight months of arm's length, non-collusive negotiations by experienced counsel with the assistance of a private mediator, Gary McGowan. *See In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090, at *13 (S.D.N.Y. Sept. 26 ) ("the fact that the Settlement was reached after exhaustive arm's-length

negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable."); *see also deMunecas v. Bold Food, LLC,* No. 09 Civ. 00440, 2010 U.S. Dist. LEXIS 87644, at *12 (S.D.N.Y. Aug. 23, 2010) ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process."). Over the past 25 years, Mr. McGowan has arbitrated and mediated over 130 disputes in complex matters, serving as the panel chair or sole arbitrator in 95 of these matters. His assistance during a full-day mediation session led to a consensual resolution based on full information and honest negotiation. Briganti Decl., ¶ 17.

The Settlement Class also benefitted from informed advocates. Before beginning negotiations with HSBC in October of 2015, Class Counsel had the guidance of a number of this Court's decisions concerning the claims and allegations in these Actions, government orders and settlements with certain defendants, discovery produced to date in *Laydon,* and settlement cooperation obtained pursuant to the Citi and R.P. Martin Settlements. Briganti Decl., ¶ 4. Counsel had researched and considered a wide range of relevant legal issues and analyzed the facts known to date. The HSBC Settlement is the product of hard-fought extensive negotiations, which involved numerous in-person meetings and/or telephone conferences, and an extensive investigation using available, relevant information. *Id.*, ¶¶ 14-19.

In light of Plaintiffs' Counsel's considerable prior experience in complex class action litigation involving CEA and antitrust claims (among others), their knowledge of the strengths and weaknesses of Plaintiffs' claims, their assessment of the Settlement Class's likely recovery following trial and appeal, and the oversight of an experienced mediator, the HSBC Settlement is entitled to a presumption of procedural fairness.

### D.  There are not obvious or other deficiencies in the HSBC Settlement.

The HSBC Settlement plainly satisfies the next *NASDAQ II* preliminary approval factor, as it involves a structure and terms that are commonly used in class action settlements in this District. *NASDAQ II*, 176 F.R.D. at 102.

### E.  The HSBC Settlement does not favor Plaintiffs or any Class Members or create any preferences.

The HSBC Settlement does not favor or disfavor any Plaintiffs or Class Members; nor does it discriminate against, create any limitations, or exclude from payments, any persons or groups within the Settlement Class. *NASDAQ II*, 176 F.R.D. at 102; HSBC Settlement Agreement *passim*. Plaintiffs, with the assistance of their expert, Dr. Craig Pirrong, have developed a Proposed Plan of Allocation that this Court has already preliminarily approved. *See* ECF No. 223 ¶ 10. Dr. Pirrong will post his daily artificiality matrix on the Settlement Website on or before thirty days prior to the opt-out deadline, informing Class Members of how valid claims will be compensated. Horn Decl., Ex. 5. Because the HSBC Settlement wholly avoids any improper preferences or discriminations, the HSBC Settlement satisfies the third *NASDAQ II* preliminary approval factor.

### F.  The HSBC Settlement consideration is well within the range of what possibly may be found, at final approval, to be fair and reasonable.

The sizeable consideration that the HSBC Settlement provides falls well within the possible range of reasonable consideration at the final approval hearing. *NASDAQ II,* 176 F.R.D. at 102. The range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). In applying this factor, "[d]ollar amounts [in class action settlement agreements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd,* 818 F.2d 145 (2d Cir. 1987).

Private antitrust plaintiffs, unlike the government, have the burden to prove antitrust impact and damages. *Gottesman v. General Motors Corp.*, 436 F.2d 1205, 1210 (2d Cir. 1971). Even where the Department of Justice had secured a criminal guilty plea, civil juries have found no damages. *See, e.g.,* Special Verdict on Indirect Purchases, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI (N.D. Cal., Sept. 3, 2013), ECF No. 8562. "Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) ("*NASDAQ III*"); *see also In re Flonase Antitrust Litig.,* 951 F. Supp. 2d 739, 748 (E.D. Pa. 2013) ("Even if Plaintiffs had succeeded in proving liability at trial, there is no guarantee they would have recovered damages."); *U.S. Football League v. Nat'l Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"), *aff'd*, 842 F.2d 1335, 1377 (2d Cir. 1988); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1166–69 (7th Cir. 1983) (antitrust judgment was remanded for a new trial and damages).

Here, HSBC's monetary consideration alone, $35,000,000, is significantly greater than the amount of maximum potential damages HSBC would have argued it was liable for had the case proceeded to trial. *Compare Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) ("*Maywalt*") (maximum "likely" damages is the appropriate test) *with In re Prudential Secs. Ltd P'ships Litig.*, No. M-21-67 (MP), 1995 U.S. Dist. LEXIS 22103, at *41 (S.D.N.Y. Nov. 20, 1995) ("*Prudential*") (Pollack, J.) (where many non-settling defendants are present, class counsel must be circumspect in stating facts that may aid the non-settling defendants).

One of the biggest risks facing Plaintiffs while negotiating the HSBC Settlement was the uncertainty of the outcome of the Second Circuit's consideration of parallel antitrust theories in *Gelboim v. Bank of America Corp.,* No. 12-3565-cv (L) (2d Cir.). *Gelboim* could have substantially

9

impacted Plaintiffs' and Class Members' claims. While Plaintiffs' Counsel was negotiating the HSBC Settlement, *Gelboim* was fully-briefed before the Second Circuit, and oral argument was held on November 13, 2015. Plaintiffs additionally accounted for the risks associated with the pending *Sonterra* motions to dismiss the action. Even after *Gelboim's* favorable decision that collusive rate fixing is a *per se* violation of the Sherman Act, Plaintiffs' ability to recover on their antitrust claims faced potential obstacles.

Plaintiffs' impact and damages theories against HSBC would have been sharply disputed, including at trial. This inevitably would have involved a "battle of the experts." *NASDAQ III,* 187 F.R.D. at 476. "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors[.]" *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985).

Before confronting the risks of proving impact and damages, Plaintiffs faced the complexities, challenges, and risk of a far greater task: establishing the other elements of liability. The facts and claims here are intricate. As recognized in similar contexts, "the complexity of Plaintiffs' claims *ipso facto* creates uncertainty." *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009). Establishing liability involves obtaining and proving the meaning and significance of instant messages, trading patterns, and other facts or evidence. The evidence of manipulation and collusion will likely raise ambiguities and inferences. This creates many risks in establishing liability in this case. Plaintiffs' Counsel must be wary in describing in detail their proof risks due to the presence of non-settling defendants. *See Prudential*, 1995 U.S. Dist. LEXIS 22103, at *41. But the answers to the key common questions of fact and law for all Class Members' claims will be hotly disputed and Plaintiffs' Counsel will zealously seek to overcome all of the foregoing risks.

In view of the many risks of continued prosecution, the HSBC Settlement beneficially diversifies the Settlement Class's position. The HSBC Settlement gives class members a bird in the hand and the opportunity to obtain the same bird in the bush through settlements or verdicts against the remaining defendants. In assessing the reasonableness and adequacy of benefits obtained in the settlements, Plaintiffs' Counsel was mindful of the "benefits afforded the Class including the *immediacy* and *certainty* of the recovery, against the continuing risks of litigation." *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212 (E.D.N.Y. 2013). In light of the ostensible risks of litigation, Plaintiffs' Counsel's considered judgment is that the total consideration provided by the HSBC Settlement, including the substantial cooperation that HSBC will to provide to Plaintiffs, is fair, reasonable, and adequate in light of all the circumstances.

The consideration offered to the Settlement Class Members in the HSBC Settlement is well within the range of that which may possibly later be found to be fair, reasonable, and adequate at final approval. *NASDAQ II*, 176 F.R.D. at 102; Briganti Decl., ¶ 22.

### 1. Applying the *Grinnell* "final approval" Factors to the HSBC Settlement is unnecessary at preliminary approval.

At final approval, the Court considers several factors in deciding whether a settlement is fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"); *see Maywalt*, 67 F.3d at 1079-80 (fundamental to a determination of whether a settlement is fair, reasonable and adequate "'is the need to compare the terms of the compromise with the *likely* rewards of litigation.'"). In the

11

discussion above, Plaintiffs have already addressed *Grinnell* factors 4-6 and 8-9. These *Grinnell* factors are the only appropriate considerations for preliminary approval. *See In re Take Two Interactive Secs. Litig.*, No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837, at *32 n.8 (S.D.N.Y. June 29, 2010) ("A court reviewing a settlement for final approval must address the nine factors laid out in" *Grinnell*). Plaintiffs nonetheless address the remaining *Grinnell* Factors below.

*Grinnell* **Factor 1.** This case involves complex financial instruments and legal questions. As is always true in cases involving large document productions by defendants, a key component of the duration of the case will be the time that the non-settling defendants require to produce their documents, and that the parties will spend reviewing these voluminous materials. At the time Plaintiffs and HSBC signed their memorandum of understanding, Plaintiffs had received and were reviewing over two million documents. Briganti Decl., ¶ 4. Some defendants had withheld vast portions of their responsive materials while Magistrate Judge Pitman considered and ultimately rejected defendants' foreign data privacy law objections. *See Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419, 2016 U.S. Dist. LEXIS 57753 (S.D.N.Y. Apr. 29, 2016). The litigation has been, and will continue to be, expensive to prosecute.

*Grinnell* **Factor 2.** *Grinnell* Factor 2 (the reaction of the class to a settlement) is premature. Nonetheless, all of the named Plaintiffs favor the HSBC Settlement. Plaintiffs, including CalSTRS, the largest U.S. teachers' retirement fund, with approximately $187.4 billion in assets (as of April 30, 2016) and close to one million members, and Hayman, a multi-billion dollar hedge fund, among others, are sophisticated investors with significant financial expertise and are fully capable of assessing the benefits of the HSBC Settlement. Well-versed in the rigorous analysis of financial matters, Plaintiffs' approval is highly probative of the likely reaction by other Settlement Class Members upon similarly reviewing the HSBC Settlement. Any class member who does not favor the

deal can opt out. After the Settlement Class has been provided notice of the HSBC Settlement,

Plaintiffs will address the Settlement Class's reaction in their motion for final approval.

> _**Grinnell** **Factor 3**._  The Court may approve a settlement at any stage of litigation. _See In re AOL Time Warner, Inc. Sec. & ERISA Litig._, MDL No. 1500, 02-civ-5575 (SWK), 2006 U.S. Dist. LEXIS 17588, at *36 (S.D.N.Y. Apr. 6, 2006). The Court's primary concern in examining the stage of litigation and the extent of discovery undertaken is to assess whether the settling parties "have engaged in sufficient investigation of the facts" to understand the strengths and weaknesses of their cases, and whether the settlement is adequate given those risks. _Id._ at *37.

> Plaintiffs conducted extensive factual and legal research and consulted experts to assess the merits of their claims. Plaintiffs reviewed publicly-available information, including government pleas, non-prosecution and deferred prosecution agreements, trial transcripts, and attended criminal court proceedings concerning the manipulation of Yen-LIBOR and Euroyen TIBOR as well as various other global benchmarks. _See_ Amended Class Action Complaint, ECF No. 121, _passim_. Further, Plaintiffs had the benefit of this Court's evaluation of the strengths of Plaintiffs' claims and Defendants' defenses through orders granting and denying in part defendants' motions to dismiss in the _Laydon_ action. Plaintiffs also had the benefit of settlement cooperation produced under the terms of the Citi and R.P. Martin Settlements and discovery produced to date. The information gathered during this process greatly informed Plaintiffs of the advantages and disadvantages of entering into the HSBC Settlement.

> _**Grinnell** **Factor 7**._ HSBC certainly has the ability to withstand a greater judgment than $35,000,000.00, but this Factor alone does not bear on the appropriateness of the HSBC Settlement. _See In re Global Crossing Sec. and ERISA Litig._, 225 F.R.D. 439, 460 (S.D.N.Y. 2004) ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate"); _In re Tronox Inc._, No. 14-cv-5495 (KBF), 2014 U.S. Dist.

13

LEXIS 158767, at *21 (S.D.N.Y. Nov. 10, 2014) ("The law does not require a defendant to completely empty its pockets before a settlement may be approved–indeed, if it did, it is hard to imagine why a defendant would ever settle a case").

2. **Unlike in** *Grinnell*, **recovery on many claims being settled here is not foreclosed because of the availability of joint and several liability recovery from the remaining defendants.**

A more detailed *Grinnell* analysis is also inappropriate because *Grinnell* did not involve a settlement of the claims against one of more than a dozen different defendants. Instead, it involved the payment by all four defendants of $10 million. *Grinnell,* 495 F.2d at 452. Here, three defendants—HSBC, Citi, and R.P. Martin—have settled, but 36 defendants remain in the litigation. Most of the claims here are premised on joint or otherwise conspiratorial conduct that creates joint and several liability. *See Strobl v. New York Mercantile Exch.*, 582 F. Supp. 770, 778 (S.D.N.Y. 1984) (defendants jointly and severally liable on a jury verdict for price fixing, manipulation in violation of the antitrust laws and commodities laws, as well as common law fraud), *aff'd* 768 F.2d 22 (2d Cir. 1985). The situation here is different from the "entire settlement for all purposes" circumstance under review in *Grinnell.*

## II.   The Court should certify the Settlement Class defined in the HSBC Settlement.

In its April 7, 2016 Order (ECF No. 223 ¶ 3), the Court preliminarily certified a settlement class against the Citi and R.P. Martin Defendants pursuant to Rule 23 of the Federal Rules. The HSBC Settlement contains a slightly modified class definition, defining the Settlement Class as:

> All Persons that purchased, sold, held, traded, or otherwise had any interest in any Euroyen-Based Derivatives[8] during the Class Period.  Excluded from the Class are: (i)

---

[8] "Euroyen-Based Derivatives" means (i) a Euroyen TIBOR futures contract on the Chicago Mercantile Exchange ("CME"); (ii) a Euroyen TIBOR futures contract on the Tokyo Financial Exchange, Inc. ("TFX"), Singapore Exchange ("SGX"), or London International Financial Futures and Options Exchange ("LIFFE") entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (iii) a Japanese Yen currency futures contract on the CME; (iv) a Yen-LIBOR and/or Euroyen TIBOR based interest rate swap entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (v) an option on a Yen-LIBOR and/or Euroyen TIBOR based interest rate swap ("swaption") entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (vi) a Japanese Yen currency forward agreement entered into by a U.S. Person, or by a Person from or through a location within the

>Defendants and any parent, subsidiary, affiliate, or agent of any Defendant; (ii) the
>Released Parties (as defined in the Agreements); and (iii) any Class Member who files
>a timely and valid request for exclusion.[9]

HSBC Settlement Agreement ¶ 1(E). This modification more specifically describes the Settlement

Class by changing the definition from all persons "that engaged in a transaction," to those that

"purchased, sold, held, traded, or otherwise had any interest in" Euroyen-Based Derivatives. It also

modifies the definition of Euroyen-Based Derivatives, removing the "purchase or sale" language

before each instrument to conform to the modification of "persons." Under ¶ 24 of the Citi

Settlement Agreement, Citi is entitled to the benefit of a more favorable Settlement Class definition

used in subsequent settlements with other defendants. Therefore, the Citi Defendants receive the

benefit of the modified Class definition used in the HSBC Settlement.

## A. The Settlement Class meets the Rule 23(a) requirements.

### 1. Numerosity

Rule 23(a) requires that the class be "so numerous that joinder of all class members is

impracticable." FED. R. CIV. P. 23(a). Joinder need not be impossible; only "merely be difficult or

---

U.S.; and/or (vii) a Yen-LIBOR and/or Euroyen TIBOR based forward rate agreement entered into by a U.S. Person,
or by a Person from or through a location within the U.S.

[9] The Court previously preliminarily certified the settlement class as:

>All Persons that engaged in a transaction in Euroyen-Based Derivatives during the period of January 1,
>2006 through June 30, 2011 ("Class Period"). Excluded from the Class are: (i) Defendants and any
>parent, subsidiary, affiliate, or agent of any Defendant; (ii) the Released Parties (as defined in the
>Agreements); and (iii) any Class Member who files a timely and valid request for exclusion.

"Euroyen-Based Derivatives" were previously defined as: (i) a purchase or sale of a Euroyen TIBOR futures contract on
the Chicago Mercantile Exchange ("CME"); (ii) a purchase or sale of a Euroyen TIBOR futures contract on the Tokyo
Financial Exchange, Inc. ("TFX"), Singapore Exchange ("SGX"), or London International Financial Futures and
Options Exchange ("LIFFE") by a U.S. Person, or by a Person from or through a location within the U.S.; (iii) a
purchase or sale of a Japanese Yen currency futures contract on the CME; (iv) a purchase or sale of a Yen-LIBOR
and/or Euroyen TIBOR based interest rate swap entered into by a U.S. Person, or by a Person from or through a
location within the U.S.; (v) a purchase or sale of an option on a Yen-LIBOR and/or Euroyen TIBOR based interest
rate swap ("swaption") entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (vi) a
purchase or sale of a Japanese Yen currency forward agreement entered into by a U.S. Person, or by a Person from or
through a location within the U.S.; and/or (vii) a purchase or sale of a Yen-LIBOR and/or Euroyen TIBOR based
forward rate agreement entered into by a U.S. Person, or by a Person from or through a location within the U.S. ECF
No. 223 ¶ 3.

inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *In re Initial Pub. Offering Sec. Litig.,* 260 F.R.D. 81, 90 (S.D.N.Y. 2009) ("*IPO*"). "Sufficient numerosity can be presumed at a level of forty members or more." *Id.*; *see also* Euribor Order ¶ 5. There are at least hundreds, if not thousands, of geographically dispersed persons and entities that fall within the Settlement Class definition. *See* Briganti Decl., ¶ 23. Thus, joinder of all these individuals and entities would be impracticable.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). This is a "'low hurdle' easily surmounted." *In re Prudential Sec. Inc. Ltd. Pshps. Litig.,* 163 F.R.D. 200, 206 n.8 (S.D.N.Y. 1995) (quoting *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992)). Commonality requires the presence of only a single question common to the class. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).

This case presents scores of common questions of fact and law. Personal jurisdiction, subject matter jurisdiction, the standards for an unlawful agreement, and multiple questions raised by defendants' motions to dismiss, create a core of common questions of fact and law relating to Plaintiffs' claims and defendants' affirmative defenses. All class members have the equal need to demonstrate facts relative to these questions and argue the same legal points to establish their claims.

Greatly adding to the common questions of law and fact are the same liability and impact questions that every Plaintiff and Class Member has to answer through the same body of common class-wide proof. For example:

1. What constitutes a false or manipulative submission by a Yen-LIBOR or Euroyen TIBOR Contributor Panel Bank? This threshold question involves issues of fact that will be of overriding importance in this litigation. As their traders talked and colluded about the optimal level of Yen-LIBOR and Euroyen TIBOR to profit their proprietary positions held in Euroyen-Based derivatives, defendants allegedly (and in some cases, admittedly) adjusted their Yen-LIBOR and/or Euroyen TIBOR submissions in the direction of their financial self-interest. Nonetheless, we expect defendants will contend that the

communications are ambiguous, that the evidence is otherwise mixed, and/or they had non-manipulative reasons for their Yen-LIBOR and/or Euroyen TIBOR submissions.

2.  Which of the defendants were engaged in conspiratorial conduct in Yen-LIBOR and Euroyen TIBOR, and for what period(s) were they involved in same?

3.  What would the non-manipulated Yen-LIBOR and Euroyen TIBOR be in the "but-for" world for each day of the Class Period?

These common questions involve dozens of common sub-questions of fact and law that are also common to all Class Members. Rule 23(a)(2) is overwhelmingly satisfied.

### 3.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). This permissive standard is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation omitted); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) ("Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding.").

Here, Plaintiffs' and Class Members' claims arise from the same course of conduct involving defendants' alleged false reporting and manipulation of Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-Based Derivatives. Thus, Plaintiffs' claims are typical of these Class Members' claims. *See, e.g., Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376-77 (2d Cir. 1997) (finding named plaintiffs' claims typical of the class's under Rule 23(a)(3) where "each named plaintiff challenges a different aspect of the child welfare system"; "[t]he claimed deficiencies implicate different statutory, constitutional and regulatory schemes"; and "no single plaintiff (named or otherwise) is affected by each and every legal violation alleged . . . and [] no single specific legal claim identified by the plaintiffs affects every member of the class"); *see also* Euribor Order ¶ 4 (conditionally certifying settlement class of persons who purchased sold, held, traded, or otherwise had any interest in

derivatives products priced, benchmarked and/or settled to Euribor). Typicality is satisfied for purposes of conditional certification.

### 4. Adequacy

Rule 23(a)(4) adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Generally, courts consider "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Id.* at 61; *see also* Euribor Order ¶ 5.

#### a. The Representative Plaintiffs suffer no disabling conflicts with the members of the Settlement Class.

"'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998) (quoting 7 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1768, at 639 (1972)); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 514-15 (S.D.N.Y. 1996) (*"NASDAQ I"*) (to warrant denial of class certification, "it must be shown that any asserted 'conflict' is so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation"). No such fundamental conflict exists here.

*First*, all Settlement Class Members share an overriding interest in obtaining the largest possible monetary recovery from HSBC (and, for that matter, the remaining defendants). *See Global Crossing*, 225 F.R.D. at 453 (certifying settlement class and finding that "[t]here is no conflict between the class representatives and the other class members. All share the common goal of maximizing recovery."); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes").

18

*Second*, all Settlement Class Members share a common interest in obtaining HSBC's early and substantial cooperation to prosecute the claims against the non-settling defendants.

*Third*, all Settlement Class Members share the same overriding interests to overcome the procedural dismissal motions, develop the enormous fact record during discovery, overcome the ambiguities and competing explanations, and establish the collusive, successful manipulation of Yen-LIBOR, Euroyen TIBOR, and the prices of Euroyen-Based Derivatives. Further, all Settlement Class Members share the interest to successfully show that such manipulation of Yen-LIBOR and Euroyen TIBOR was sufficient to cause injury, and to quantify the impact of such manipulation on Yen-LIBOR, Euroyen TIBOR, and Euroyen-Based Derivatives prices.

### b.  Plaintiffs' Counsel is adequate.

Plaintiffs and the Settlement Class are represented by experienced and skilled counsel. Class Counsel, Lowey Dannenberg, has prosecuted this litigation for over four years. Lowey Dannenberg investigated and brought the case prior to any government settlements in April 2012. This Court has already authorized and appointed Lowey Dannenberg as Interim Lead Counsel in the *Laydon* Action, having found counsel's experience sufficient and relevant (*Laydon* Action, ECF No. 99), and as Class Counsel for the Citi and R.P. Martin Settlements. ECF No. 223 ¶ 4.

Lowey Dannenberg has vigorously represented the Settlement Class in both of the Actions, having negotiated the HSBC Settlement. Lowey Dannenberg has obtained and will obtain valuable information provided by HSBC. HSBC Settlement Agreement ¶ 4. With over 50 years of experience litigating complex class actions, Lowey Dannenberg has achieved some of the most significant class action recoveries under the CEA and has secured almost a billion dollars in recoveries on behalf of Fortune 100 Companies and other sophisticated investors in antitrust and competition-related litigation. Feb. 1 Briganti Decl., Ex. 5 (Lowey Firm Resume); *see also* Euribor Order ¶ 6 (appointing Lowey Dannenberg as Settlement Class Counsel in $94 million settlement with Barclays).

The same bases justifying the Court's appointment of Lowey Dannenberg as Interim Lead Counsel and as Class Counsel for the Citi and R.P. Martin Settlements apply to Lowey Dannenberg's ability and adequacy to serve as class counsel for the Settlement Class for the HSBC Settlement. Therefore, upon certifying the Settlement Class, the Court should also appoint Lowey Dannenberg as Class Counsel. The Rule 23(a)(4) requirements that there be no fundamental conflict and adequate counsel are both satisfied.

### i.     The Court should appoint Class Counsel under Rule 23(g)(1).

Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel." FED. R. CIV. P. 23(g)(1). Where, as here, only one application is made seeking appointment as class counsel, "the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)." FED. R. CIV. P. 23(g)(2). For the reasons described above, Lowey Dannenberg is adequate and should be appointed as Class Counsel for the Settlement Class.

### B.  The proposed settlement class Satisfies Rule 23(b)(3).

Once Rule 23(a) has been satisfied, Plaintiffs must also conditionally establish (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### 1.  Predominance

Certification is proper under Rule 23(b)(3) where "'a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (quoting FED. R. CIV. P. 23(b)(3) Adv. Comm. Note. to 1966 amend.). To satisfy the predominance requirement, a plaintiff must show "that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . .

predominate over those issues that are subject only to individualized proof." *Brown*, 609 F.3d at 483. "If the most substantial issues in controversy will be resolved by reliance primarily upon common proof, class certification will generally achieve the economies of litigation that Rule 23(b)(3) envisions." *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775, 2014 U.S. Dist. LEXIS 180914, at *194 (E.D.N.Y. Oct. 15, 2014); *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045-49 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately[.]'").

Predominance is a "test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust law," unlike mass tort cases in which the "individual stakes are high and disparities among class members are great." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 315 (3d Cir. 1998) ("the complexity of a case alleging physical injury . . . differs greatly from a case alleging economic injury"). Predominance is often readily established in antitrust cases because the elements of the claims lend themselves to common proof. Liability focuses on defendants' alleged unlawful actions, not the actions of individual plaintiffs, making most antitrust claims particularly well suited for class treatment. *Compare Amchem,* 521 U.S. at 624 *with Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012).[10]

The "predominance inquiry will sometimes be easier to satisfy in the settlement context." *In re Am. Int'l Grp. Secs. Litig.,* 689 F.3d 229, 240 (2d Cir. 2012). Unlike class certification for litigation

---

[10] *See also, e.g., In re Ins. Brokerage Antitrust Litig.,* 282 F.R.D. 92, 108 (D.N.J. 2012) ("Given that antitrust class action suits are particularly likely to contain common questions of fact and law, it is not surprising that these types of class actions are also generally found to meet the predominance requirement"); *Animal Sci. Prods, Inc. v. Hebei Welcome Pharm. Co. (In re Vitamin C Antitrust Litig.),* 279 F.R.D. 90, 109 (E.D.N.Y. 2012) (stating that in horizontal price fixing cases, "courts have frequently held that the predominance requirement is satisfied because the existence and effect of the conspiracy are the prime issues in the case and are common across the class").

purposes, a settlement class presents no management difficulties for the court as settlement, not

trial, is proposed. *See Amchem*, 521 U.S. at 620; *see also NASDAQ I*, 169 F.R.D. at 517 (stating that

predominance test standard is met "unless it is clear that individual issues will overwhelm the

common questions and render the class action valueless").[11]

     If the claims against HSBC had not been settled, dozens of common questions would have

predominated over individual questions in the prosecution of the claims against HSBC. The

"predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant

adjudication by representation." *IPO*, 260 F.R.D. at 92. Here, all Plaintiffs and Class Members face

and must answer the same common factual and legal questions to establish personal jurisdiction,

subject matter jurisdiction, conspiracy, unlawful Yen-LIBOR and Euroyen TIBOR manipulation,

the amount of such Yen-LIBOR and Euroyen TIBOR manipulation, and many additional matters

of proof. These common questions predominate over individual questions. *See Cordes & Co. Fin.*

*Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007) (in price-fixing case,

"allegations of the existence of a price-fixing conspiracy are susceptible to common proof").

"Common issues may predominate when liability can be determined on a class-wide basis, even

when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.*,

280 F.3d 124, 139 (2d Cir. 2001), *overruled on other grounds by, In re Initial Public Offering Sec. Litig.*, 471

F. 3d 24, 42 (2d Cir. 2006). The Settlement Class satisfies Rule 23(b)(3) as common issues

predominate over individual issues.

---

[11] The presence of the right of class members to opt out further favors conditional certification of this Settlement Class
here. Even if some individual differences did exist among Settlement Class Members, those class members who "believe
they may do better on their own are permitted to opt out." *Interchange*, 986 F. Supp. 2d at 239 n.20. As to potential
individual issues among class members who stay in the settlement class, "the fact of the settlement is 'relevant'" to the
certification question, "since [the settlement] creates a single method and procedure for recovering monetary claims that
might be otherwise complex and individualized." *Id.* (citing *Amchem*, 521 U.S. at 619); *see also In re Diet Drugs*, MDL Dkt
No. 1203, 2000 U.S. Dist. LEXIS 12275, at *130 (E.D. Pa. Aug. 28, 2000) (certifying a settlement class, stating any
"individual issues relating to causation, injury and damage . . . disappear because the settlement's objective criteria
provide for an objective scheme of compensation").

### 2. Superiority

Rule 23(b)(3)'s "superiority" requirement requires a plaintiff to show that a class action is superior to other methods available for "fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b). The Court balances the advantages of class action treatment against alternative available methods of adjudication. *See* FED. R. CIV. P. 23(b)(3)(A)-(D) (listing four non-exclusive factors relevant to this determination). The superiority requirement is applied leniently in the settlement context because the court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620; *Am. Int'l Group*, 689 F.3d at 239-40.

A class action is the superior method for the fair and efficient adjudication of the Actions. *First*, class members are significant in number and geographically disbursed, making a "class action the superior method for the fair and efficient adjudication of the controversy." *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004).

*Second*, the majority of class members have neither the incentive nor the means to litigate these claims. The damages most of the individual members of the Settlement Class suffered are likely to be small compared to the very considerable expense and burden of individual litigation. This makes it uneconomic for an individual to protect his/her rights through an individual suit. That is why no class member "has displayed any interest in bringing an individual lawsuit." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015). A class action allows claimants to "pool claims which would be uneconomical to litigate individually," as "no individual may have recoverable damages in an amount that would induce him to commence litigation on his own behalf." *Currency Conversion*, 224 F.R.D. at 566; *see also Seijas v. Republic of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010)). "Under such circumstances, a class action is efficient and serves the interest of justice." *Id.*

*Third*, the prosecution of separate actions by hundreds (or thousands) of individual members of the Settlement Class would impose heavy burdens upon the Court. It would create a risk of

23

inconsistent or varying adjudications of the questions of law and fact common to the Settlement

Class. Thus, both prongs of Rule 23(b)(3) are satisfied.

**III.    The Court should appoint Citibank, N.A. as Escrow Agent.**

Plaintiffs propose that the Court approve Citibank, N.A. as Escrow Agent. Plaintiffs'

Counsel has negotiated with Citibank, N.A. to provide its services as Escrow Agent at market rates.

**IV.    The Court should approve the proposed forms and methods of notice and Proposed Plan of Distribution.**

Plaintiffs hereby incorporate by reference their Supplemental Memorandum in Support of

Motion for Preliminary Approval of Class Action Settlements seeking preliminary approval of the

Citi and R.P. Martin Settlements. ECF No. 221. Plaintiffs intend to use the same notice program

detailed in our prior submission (*id.,* at 3-8) and approved by the Court (ECF No. 223), with the

benefit of adding HSBC's counterparty name and address information for sending direct mail to

traders in the over-the-counter Euroyen-Based Derivatives market. In addition to an extensive

mailed notice program, Plaintiffs' notice program consists of published and online notice—which

easily satisfies the Rule 23(c)(2)(B) factors and due process. *See Weigner v. The City of New York,* 852

F.2d 646, 649 (2d Cir. 1988) (due process does not require actual notice to every class member, as

long as class counsel "acted reasonably in selecting means likely to inform persons affected.").

Moreover, Plaintiffs' Proposed Plan of Distribution is fair and adequate. *See Maley v. Del.*

*Global Technologies Corp.,* 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) ("To warrant approval, the plan

of allocation must also meet the standards by which the settlement was scrutinized -- namely, it must

be fair and adequate."). As Plaintiffs previously described (ECF No. 221, at 8-10), Dr. Craig Pirrong

will create an "artificiality matrix" for Yen-LIBOR and Euroyen TIBOR, which will be posted on

the Settlement Website. *See* Horn Decl., Exs. 1, 5.

## CONCLUSION

For the stated reasons, Plaintiffs respectfully request that the Court enter the accompanying proposed Order: (1) granting preliminary approval of the proposed settlement with HSBC; (2) conditionally certifying the Settlement Class for the claims against HSBC for purposes of sending notice to the Class, and conforming the Citi and R.P. Martin Settlement Class with the HSBC Settlement Class; (3) appointing Lowey Dannenberg as Class Counsel; (4) appointing Citibank, N.A. as the Escrow Agent for the HSBC Settlement; (5) appointing A.B. Data, Ltd. as Settlement Administrator; (6) approving Plaintiffs' proposed combined Class notices and proposed combined notice plan; (7) approving Plaintiffs' Proposed Plan of Allocation; and (8) setting a schedule leading to the Court's consideration of final approval of the Settlement Agreement.

Dated: June 17, 2016
White Plains, New York

LOWEY DANNENBERG COHEN & HART, P.C.

By: _____
Vincent Briganti
Geoffrey M. Horn
Peter D. St. Phillip
One North Broadway, 5th Floor
White Plains, New York 10601
914-997-0500
vbriganti@lowey.com
ghorn@lowey.com
pstphillip@lowey.com

*Counsel for Plaintiffs*

Joseph J. Tabacco, Jr.
Todd A. Seaver
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6282
jtabacco@bermandevalerio.com
tseaver@bermandevalerio.com

Patrick T. Egan
Daryl DeValerio Andrews

25

**BERMAN DEVALERIO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
pegan@bermandevalerio.com
dandrews@bermandevalerio.com

**LOVELL STEWART HALEBIAN
JACOBSON LLP**

Christopher Lovell
Gary S. Jacobson
61 Broadway, Suite 501
New York, NY 10006
Tel.: 212-608-1900
Fax: 212-719-4677

*Additional Counsel for Plaintiffs*