# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SONTERRA CAPITAL MASTER FUND, LTD., HAYMAN CAPITAL MASTER FUND, L.P., JAPAN MACRO OPPORTUNITIES MASTER FUND, L.P., and CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　　　　- against -<br><br>UBS AG, UBS SECURITIES JAPAN CO. LTD., MIZUHO BANK, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, RESONA BANK, LTD., J.P. MORGAN CHASE & CO., JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, MIZUHO TRUST AND BANKING CO., LTD., THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, THE BANK OF YOKOHAMA, LTD., SOCIÉTÉ GÉNÉRALE SA, THE ROYAL BANK OF SCOTLAND GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED, RBS SECURITIES INC., BARCLAYS BANK PLC, BARCLAYS PLC, BARCLAYS CAPITAL INC., CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, LLOYDS BANKING GROUP PLC, LLOYDS BANK PLC, ICAP PLC, ICAP EUROPE LIMITED,  R.P. MARTIN HOLDINGS LIMITED, MARTIN BROKERS (UK) LTD., TULLETT PREBON PLC, BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., MERRILL LYNCH INTERNATIONAL, AND JOHN DOE NOS. 1-50,<br><br>　　　　　　　　　　Defendants. | Docket No. 15-cv-5844 (GBD) (HBP) |

**DECLARATION OF VINCENT BRIGANTI**

I, Vincent Briganti, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a shareholder with the law firm Lowey Dannenberg Cohen & Hart, P.C. ("Lowey"). I submit this Declaration in connection with the pending Motion for Preliminary Approval of the settlement reached with Defendants HSBC Holdings plc and HSBC Bank plc, and their subsidiaries and affiliates (collectively "HSBC").

2. A true and correct copy of the Stipulation and Agreement of Settlement dated June 16, 2016 (the "HSBC Settlement"), among Plaintiffs[1] and HSBC is attached as Exhibit 1.

3. **Experience**. Lowey's and my experience are detailed in my prior declaration submitted in connection with the preliminary approval of the settlements with the Citibank, N.A., Citigroup Inc., Citibank Japan Ltd., and Citigroup Global Markets Japan Inc. Defendants and the R.P. Martin Holdings Limited and Martin Brokers (UK) Ltd. Defendants, which is incorporated by reference herein. *See* ECF No. 567 ¶¶ 6-8, Ex. 5.[2]

4. **Well-Informed**. Before reaching the HSBC Settlement, Plaintiffs' counsel was well-informed regarding the strengths and weaknesses of Plaintiffs' claims. My firm and I extensively reviewed and analyzed the following documents and information: (i) settlement cooperation provided by the R.P. Martin and Citi Defendants; (ii) government settlements, including plea, non-prosecution, and deferred prosecution agreements; (iii) publicly-available information relating to the conduct alleged in Plaintiffs' complaints; (iv) expert and industry research regarding Yen-LIBOR, Euroyen TIBOR, and Euroyen-Based Derivatives futures and over-the-counter markets; (v) prior decisions of this Court and others deciding similar issues; and (vi) documents produced to date in *Laydon*. In addition, my firm and I: (a) conducted an extensive investigation into the facts and legal

---

[1] "Plaintiffs" are Jeffrey Laydon, Sonterra Capital Master Fund, Ltd., Hayman Capital Master Fund, L.P., Japan Macro Opportunities Fund, L.P., and California State Teachers' Retirement System ("CalSTRS").

[2] Unless otherwise noted, all docket citations are to *Laydon v. Mizuho Bank, Ltd., et al.*, 12-cv-3419 (GBD) (S.D.N.Y.).

issues in this action; (b) engaged in extensive negotiations with HSBC; and (c) took many other steps to research and analyze the strengths and weaknesses of the claims, including ongoing consultations with a leading commodity manipulation consulting expert.

5. **Procedural History**. The procedural history of these Actions detailed in my prior declaration is hereby incorporated by reference. *See Sonterra Capital Master Fund Ltd. et al. v. UBS AG et al.*, 15-cv-5844 (S.D.N.Y.) ("*Sonterra* Action"), ECF No. 189 ¶¶ 10-20. Since my prior declaration, the following events have occurred in the Actions:

6. On February 29, 2016, Plaintiff Jeffrey Laydon ("Laydon") filed his Third Amended Complaint ("TAC"). ECF No. 580. Defendants moved to strike the TAC on March 11, 2016. ECF No. 582. Laydon filed an opposition letter on March 11, 2016. ECF No. 583. On March 14, 2016, the Court denied Defendants' motion to strike the TAC. ECF No. 584.

7. On April 7, 2016, the Court issued an Order preliminarily approving the proposed settlements with the R.P. Martin and Citi Defendants, scheduling a hearing for final approval thereof, and approving the proposed form and program of notice to the class. ECF No. 592.

8. On April 29, 2016, Magistrate Judge Pitman overruled certain Defendants' motion for an order sustaining their discovery objections under the foreign data privacy and bank secrecy laws of the United Kingdom. ECF No. 596.

9. On May 16, 2016, Defendants filed their answers to the TAC. ECF Nos. 623-639. Additionally, three of the newly-added Defendants moved to dismiss the TAC under Rule 12(b)(2). ECF No. 610-20. That same day, the "Legacy Defendants"—Defendants that Laydon has sustained Commodity Exchange Act claims against—partially moved under FED. R. CIV. P. 12(b)(1) and 12(b)(6) to dismiss the expanded class period in the TAC. ECF Nos. 621-22.

10. On March 18, 2016, Plaintiffs filed their opposition to Defendants' motion to dismiss the *Sonterra* Action. *Sonterra* Action, ECF Nos. 208-211.

3

11. Also on March 18, Plaintiffs Hayman Capital Management L.P., previously known as Hayman Advisors, L.P. ("Hayman L.P."), and Sonterra Capital Master Fund, Ltd., filed a motion under FED. R. CIV. P. 17(a)(3) to substitute Hayman Capital Master Fund, L.P. and Japan Macro Opportunities Master Fund, L.P. as the named party plaintiffs in place of Hayman L.P. *Sonterra* Action, ECF Nos. 212-213. Defendants did not oppose Plaintiffs Hayman L.P. and Sonterra Capital Master Fund, Ltd.'s motion to substitute. *Sonterra* Action, ECF No. 216. The Court granted Plaintiffs Hayman L.P. and Sonterra Capital Master Fund, Ltd.'s motion on March 29, 2016. *Sonterra* Action, ECF No. 217.

12. On April 22, 2016, Defendants filed their reply briefs in support of their motion to dismiss the *Sonterra* Action. *Sonterra* Action, ECF Nos. 227-237. On May 5, 2016, the Court held oral argument on Defendants' motion to dismiss.

13. **Arm's-Length**. Negotiations leading to the HSBC Settlement were entirely non-collusive and strictly arm's-length. During the course of negotiations, Plaintiffs had the benefit of developing information from various sources, including the R.P. Martin and Citi Defendants settlement cooperation, other Defendants' document productions to date in *Laydon*, government settlements and orders, other public accounts of manipulation involving Yen-LIBOR and Euroyen TIBOR, counsel's investigation into Plaintiffs' claims, industry and expert analysis, and information shared by HSBC during the eight months of settlement negotiations. I was involved in all aspects of the settlement negotiations on behalf of Plaintiffs.

14. **HSBC Settlement Negotiations**. The negotiations with HSBC took place over eight months starting approximately in October 2015 and continuing until the HSBC Settlement was executed in June 2016.

15. Following initial phone calls with HSBC's counsel in October 2015, Lowey and HSBC met in person on October 21, 2015. At the October 21 meeting, Lowey presented to HSBC's

4

counsel and a representative for HSBC what Lowey perceived to be the strengths and weaknesses of the litigation as well as HSBC's litigation exposure. The October 21 meeting did not result in a settlement.

16.     Over the next several months, Lowey and counsel for HSBC had numerous phone calls and continued to present to each other the perceived strengths and weaknesses of the litigation, but the parties reached an impasse in their settlement negotiations.

17.     On May 2, 2016, Lowey and a representative of HSBC, together with HSBC's counsel, participated in an all-day mediation session before Gary McGowan at the New York offices of HSBC's counsel, Locke Lord LLP. At the May 2 mediation, Plaintiffs and HSBC reached an agreement in principle to settle.

18.     On May 4, 2016, counsel for HSBC and Lowey signed a Memorandum of Understanding ("MOU"). The MOU set forth the terms on which the parties agreed, subject to the preparation of a full Settlement Agreement, to settle Plaintiffs' claims against HSBC. At the time the MOU was executed, Lowey was well-informed about the legal risks, factual uncertainties, potential damages, and other aspects of the strengths and weaknesses asserted herein.

19.     On that same day, the Parties reported to the Court and Defendants that a settlement had been reached. Following months of arm's-length negotiations, consisting of in-person meetings and presentations to HSBC, teleconferences, exchanges of draft settlement terms, Lowey, on behalf of Plaintiffs, and HSBC entered into the HSBC Settlement on June 16, 2016. The HSBC Settlement was the culmination of arms-length settlement negotiations that had extended over many months.

20.     The HSBC Settlement was not the product of collusion. Before any financial numbers were discussed in the settlement negotiations and before any demand or counter-offer was ever made, I was well informed about the legal risks, factual uncertainties, potential damages, and

other aspects of the strengths and weaknesses of the claims against HSBC.

21. The HSBC Settlement involves a structure and terms that are common in class action settlements in this District.

22. The consideration that HSBC has agreed to pay is within the range of that which may be found to be fair, reasonable, and adequate at final approval.

23. Lowey has strong reason to believe that there are at least hundreds of geographically dispersed persons and entities that fall within the Settlement Class definition. This belief is based on data from the Bank of International Settlements which shows that trillions of dollars of Euroyen-based interest rate swaps and forward rate agreements were traded within the United States from 2006 through 2011, as well as settlement cooperation produced to date by Citi and R.P. Martin.

24. Lowey has diligently represented the interests of the Class in this litigation. The firm investigated and brought the *Laydon* and *Sonterra* actions. Lowey preserved the statute of limitations. Lowey negotiated with HSBC. The firm performed all of the necessary work to prosecute this litigation for the past 50 months. Lowey will continue to zealously represent the Class to prosecute the Class's claims against the non-settling Defendants.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 17, 2016
White Plains, New York

_____
Vincent Briganti