17-944-cv
Sonterra Capital Master Fund Ltd. v. UBS AG

# United States Court of Appeals
# for the Second Circuit

1:15-cv-05844-GBD-HBP

August Term, 2019

(Argued: February 5, 2020            Decided: April 1, 2020)

Docket No. 17-944-cv

_____

SONTERRA CAPITAL MASTER FUND LTD., CALIFORNIA STATE
TEACHERS' RETIREMENT SYSTEM, HAYMAN CAPITAL MASTER FUND,
L.P., JAPAN MACRO OPPORTUNITIES MASTER FUND, L.P.,

*Plaintiffs-Appellants*,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Apr 01 2020

v.

UBS AG, UBS SECURITIES JAPAN CO., LTD., MIZUHO BANK, LTD.,
SUMITOMO MITSUI TRUST BANK, LIMITED, FKA THE SUMITOMO TRUST
& BANKING CO., LTD., THE NORINCHUKIN BANK, SUMITOMO MITSUI
BANKING CORPORATION, RESONA BANK, LTD., MIZUHO CORPORATE
BANK, LTD., MIZUHO TRUST & BANKING CO., LTD., THE SHOKO CHUKIN
BANK, LTD., SHINKIN CENTRAL BANK, THE BANK OF YOKOHAMA, LTD.,
SOCIETE GENERALE S.A., THE ROYAL BANK OF SCOTLAND GROUP PLC,
THE ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED,
BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., BARCLAYS PLC,
COOPERATIEVE RABOBANK U.A., LLOYDS BANKING GROUP PLC,
LLOYDS BANK PLC, ICAP PLC, ICAP EUROPE LIMITED, TULLETT PREBON
PLC, BANK OF AMERICA CORPORATION, BANK OF AMERICA N.A.,
SOCIETE GENERALE, RBS SECURITIES INC.,

*Defendants-Appellees*,

CITIBANK, N.A., CITIGROUP INC., CITIBANK JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., HSBC HOLDINGS PLC, HSBC BANK PLC, R.P. MARTIN HOLDINGS LIMITED, MARTIN BROKERS (UK) LTD, MERRILL LYNCH INTERNATIONAL, JOHN DOES 1–50, NATIONAL ASSOCIATION, THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., MITSUBISHI UFJ TRUST AND BANKING CORPORATION, JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES PLC, DEUTSCHE BANK AG, DB GROUP SERVICES (UK) LIMITED, HBOS PLC,

*Defendants.*[*]

_____

Before:

POOLER, LYNCH, AND PARK, *Circuit Judges*.

Plaintiffs, a group of investment funds, appeal an order of the United States District Court for the Southern District of New York (Daniels, *J*.) dismissing their Sherman Act, RICO Act, and common-law claims against Defendants, a collection of financial institutions, for lack of Article III standing. Plaintiffs argue that the district court erred in dismissing their complaint because they adequately pled that Defendants' market manipulation caused them to trade derivatives at artificial prices, resulting in economic injury. On review, we agree that Plaintiffs alleged an injury in fact sufficient for Article III standing. **REVERSED** and **REMANDED**.

                                    ERIC F. CITRON, Goldstein & Russell, P.C., Baltimore, MD, (Vincent Briganti, Geoffrey M. Horn, Peter D. St. Phillip, Jr., Lee J. Lefkowitz, and Christian Levis, *on the brief*), Lowey Dannenberg, P.C., White Plains, NY, (Patrick T. Egan, *on the brief*), Berman Tobacco, Boston, MA, (Joseph J. Tobacco, Jr., *on the brief*), Berman Tobacco, San Francisco, CA, *for Plaintiffs-Appellants*.

---

[*] The Clerk of the Court is respectfully directed to amend the caption of this matter as above.

DAVID SAPIR LESSER (Jamie Dycus, *on the brief*), Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY, Ari Savitzky, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C., *for Defendants-Appellees The Royal Bank of Scotland plc, The Royal Bank of Scotland Group plc, RBS Securities Inc., and RBS Securities Japan Limited*.

Additional counsel listed in Appendix A.

Park, *Circuit Judge*:

This appeal concerns a scheme to fix the benchmark interest rates used to price financial derivatives in the Yen currency market. Plaintiffs, a group of investment funds,[1] allege that they entered into financial agreements on unfavorable terms because Defendants, a collection of financial institutions,[2] manipulated these benchmark rates in their own favor. The district court found that Plaintiffs failed to plead Article III standing and dismissed their complaint.

---

[1] The Plaintiffs-Appellants are Sonterra Capital Master Fund Ltd., California State Teachers' Retirement System, Hayman Capital Master Fund, L.P., and Japan Macro Opportunities Master Fund, L.P.

[2] The Defendants-Appellees are UBS AG, UBS Securities Japan Co., Ltd., Mizuho Bank, Ltd., Sumitomo Mitsui Trust Bank, Ltd., The Norinchukin Bank, Sumitomo Mitsui Banking Corp., Resona Bank, Ltd., Mizuho Corporate Bank, Ltd., Mizuho Trust & Banking Co., Ltd., The Shoko Chukin Bank, Ltd., Shinkin Central Bank, The Bank of Yokohama, Ltd., Société Générale S.A., The Royal Bank of Scotland Group plc, The Royal Bank of Scotland plc, RBS Securities Japan Ltd., Barclays Bank plc, Barclays Capital Inc., Barclays plc, Coöperatieve Rabobank U.A., Lloyds Banking Group plc, Lloyds Bank plc, ICAP plc, ICAP Europe Ltd., Tullett Prebon plc, Bank of America Corp., Bank of America N.A., Société Générale, and RBS Securities Inc.

3

We hold that Plaintiffs plausibly alleged that Defendants' conduct caused them to suffer economic injury, and these allegations are sufficient for Article III standing at the motion to dismiss stage. For these reasons, we **REVERSE** and **REMAND** for further proceedings.

## I. BACKGROUND

A. <u>Facts</u>

According to the complaint, Defendants conspired to manipulate the "Yen LIBOR" and "Euroyen TIBOR" interest rates, which we refer to together as "Yen LIBOR."[3] These are "daily reference rates intended to reflect the interest rates at which banks offer to lend unsecured funds denominated in Japanese Yen to other banks." Plaintiffs allegedly traded in three types of Yen-based financial derivatives that were "priced [or] benchmarked" based on these interest rates: Yen foreign exchange ("FX") forwards, interest rate swaps, and interest rate swaptions.

Plaintiffs claim that Defendants rigged Yen LIBOR to "favor [their own] trading positions" when transacting in these derivatives and to produce a

---

[3] Plaintiffs allege that Yen LIBOR and Euroyen TIBOR are effectively interchangeable, as "Yen-denominated [financial instruments] that settle during European trading hours are generally priced . . . using [Yen LIBOR], while Yen-denominated [financial instruments] that settle during Asia-Pacific trading hours are generally priced . . . using [Euroyen TIBOR]. However, either rate may be used."

4

"correspondingly negative impact on their counterparties," such as Plaintiffs. The complaint explains that "Defendants understood that to the extent they increased their profits or decreased their losses in certain transactions from their manipulation of [Yen LIBOR], other market participants would suffer corresponding losses." The complaint also lists specific transactions in which Plaintiffs traded derivatives at unfavorable rates on days when Defendants had manipulated Yen LIBOR to their own advantage. Plaintiffs made detailed factual allegations about each type of derivative that they traded:

*Yen FX forwards*: A Yen FX forward "is a derivative in which one party agrees to buy or sell a certain amount of [Yen] from another party on some future date, at a price agreed upon today." Plaintiffs claim that Yen LIBOR affects the value of Yen FX forwards because it "is used to take the 'spot price,' *i.e.*, the cost of Yen for immediate delivery, and adjust it to account for the 'cost of carry,' *i.e.*, the amount of interest paid or received on Yen deposits, over the duration of the agreement." Plaintiffs identify specific instances when they suffered harm from Yen FX forward transactions, including on December 2, 2010, when "Defendants manipulated [ ] Yen LIBOR artificially lower," and "[t]his downward

5

manipulation . . . artificially increased the cost for [one Plaintiff] to purchase Yen [FX] forwards."

*Interest rate swaps*: An interest rate swap allows a party to exchange "a fixed stream of interest rate payments . . . for one based on a 'floating' reference rate, *e.g.*, Yen LIBOR." Plaintiffs explain that "Yen LIBOR affects the value of Yen LIBOR-based interest rate swaps by determining the value of the floating rate payments due under that swap contract." In one instance, Plaintiffs allege that on July 15, 2009, one Plaintiff "agreed to enter into a Yen LIBOR-based interest rate swap . . . at an artificial price" because Defendants manipulated Yen LIBOR on that day.

*Interest rate swaptions*: A swaption "gives the buyer the right, but not the obligation" to enter into an interest rate swap in the future. Plaintiffs allege that Yen LIBOR affects the value of a swaption because it "determines the value of the interest rate swap underlying that swaption." For example, Plaintiffs claim that Defendants "manipulate[d] [ ] Yen LIBOR lower on March 3, 2010," and as a result, one Plaintiff traded swaptions "at artificial prices directly and proximately caused by Defendants' manipulation of Yen LIBOR."

6

1   B.   Procedural History

2   Plaintiffs filed this suit in the U.S. District Court for the Southern District of
3   New York, asserting claims under the Sherman Act, the Racketeer Influenced and
4   Corrupt Organizations ("RICO") Act, and common law.  Defendants moved to
5   dismiss the complaint for lack of subject-matter jurisdiction under Federal Rule of
6   Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).[4]  In
7   support of their motion, Defendants attached a report on financial derivatives that
8   Plaintiffs cited in their complaint.

9   The district court granted Defendants' motion to dismiss for lack of subject-
10  matter jurisdiction, holding that "Plaintiffs fail[ed] to articulate a concrete injury
11  arising out of Defendants' alleged manipulation of [Yen LIBOR] sufficient to
12  satisfy the injury-in-fact requirement for Article III standing."  Plaintiffs now
13  appeal this decision.

14  **II. STANDARD OF REVIEW**

15  When a defendant moves to dismiss for lack of standing, our standard of
16  review depends on whether the defendant brings a "facial" challenge, "based
17  solely on the allegations of the complaint" or a "fact-based" challenge, "proffering

---

[4] The district court did not rule on Defendants' Rule 12(b)(6) arguments, so we do not address them on appeal.

7

evidence beyond the [p]leading." *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016). Here, Defendants bring a "facial" standing challenge because their arguments are "based solely on the allegations of the complaint . . . and exhibits attached to it."[5] *Id*. "[W]e review . . . a facial challenge *de novo*, 'accepting as true all material factual allegations of the complaint,' and 'drawing all reasonable inferences in favor of the plaintiff.'" *Id*. (cleaned up). In a facial standing challenge, "the plaintiff has no evidentiary burden." *Id*. at 56.

## III. DISCUSSION

"Article III, Section 2 of the Constitution limits the jurisdiction of the federal courts to the resolution of 'cases' and 'controversies.' To ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper parties to bring suit." *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 92 (2d Cir. 2018) (citations omitted). To satisfy Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

---

[5] The one substantive attachment to Defendants' motion to dismiss, a derivatives pricing primer, was incorporated as part of the complaint because it was cited in a footnote. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any . . . materials incorporated in it by reference and documents that, although not incorporated by reference, are 'integral' to the complaint." (citations omitted)).

redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "Each element of standing 'must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation,' and at the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice.'" *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

To plead injury in fact, a plaintiff must allege "that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks omitted); *see John*, 858 F.3d at 736 (noting that, at the pleading stage, "[w]e have repeatedly described [this] requirement as a 'low threshold'" (citation omitted)). "Any monetary loss suffered by the plaintiff satisfies" this requirement. *Carter*, 822 F.3d at 55. For example, in *John v. Whole Foods*, we held that a supermarket customer adequately alleged injury in fact when he (1) pled that he "regularly purchased" pre-packaged goods from defendant, and (2) cited a study finding "widespread overcharging" in these products. 858 F.3d at 737; *see also id.* ("Taking these allegations as true and drawing all reasonable inferences in his favor, it is plausible that John overpaid for at least one product.").

9

Here, Plaintiffs have alleged enough details about their derivative transactions to "affirmatively and plausibly suggest that [they have] standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). The complaint identified numerous instances when Plaintiffs entered into derivatives transactions at prices that were "artificial" due to Defendants' price fixing. The complaint also stated repeatedly that Defendants "manipulate[d] [Yen LIBOR] rates to artificial levels that financially benefited their [ ] derivatives positions." More specifically, for Yen FX forwards, Plaintiffs Sonterra Capital Master Fund Ltd. and California State Teachers' Retirement System identified trades in which they had to pay "higher price[s]" as a result of Defendants' market manipulation.

The swap and swaption allegations are not quite as direct, but they too are sufficient at this stage of the litigation. In particular, Plaintiffs Hayman Capital Master Fund, L.P. and Japan Macro Opportunities Master Fund, L.P. alleged that the rigged interest rates caused them to enter into transactions with Defendants at "artificial prices," and that Defendants manipulated these rates to "favor [their own] trading positions." "[D]rawing all reasonable inferences in [Plaintiffs'] favor," we can plausibly conclude that the artificial swap and swaption prices harmed Plaintiffs and favored Defendants who took the other side of these

transactions. *John*, 858 F.3d at 737; *see Lujan*, 504 U.S. at 561 (explaining that "on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim'" (citation omitted)).

The district court faulted Plaintiffs' complaint because the sources it cited did not "say that the Yen LIBOR rate is definitively used to price" Yen FX forwards. But at the motion to dismiss stage, Plaintiffs need not prove the allegations in their complaint "definitively." *See Todd v. Exxon Corp.*, 275 F.3d 191, 203 (2d Cir. 2001) (noting that a "fact-specific question cannot be resolved on the pleadings"). The complaint adequately alleges that Yen LIBOR is routinely used to price Yen FX forwards, and Plaintiffs provide detailed supporting allegations, including an explanation of the role Yen LIBOR plays in the generic pricing formula. No more is required at this stage.

Plaintiffs have plausibly pled that they suffered "monetary loss" in these transactions as a result of Defendants' alleged manipulation of interest rates, and this is sufficient injury in fact for Article III standing. *Carter*, 822 F.3d at 55; *see also Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 770 (2d Cir. 2016) (noting in a similar LIBOR-manipulation suit that Article III standing was "easily satisfied by

[plaintiffs'] pleading that they were harmed by receiving lower returns on LIBOR-denominated instruments as a result of defendants' manipulation of LIBOR").

## IV.  CONCLUSION

For the reasons set forth above, the district court's judgment is REVERSED and REMANDED for further proceedings.

17-944-cv
Sonterra Capital Master Fund Ltd. v. UBS AG

# APPENDIX A

Mark A. Kirsch, Eric J. Stock, Jefferson E. Bell, Gibson, Dunn & Crutcher LLP, New York, NY, *for Defendants-Appellees UBS AG and UBS Securities Japan Co., Ltd.*

Steven Wolowitz, Henninger S. Bullock, Andrew J. Calica, Mayer Brown LLP, New York, NY, *for Defendant-Appellee Société Générale.*

David R. Gelfand, Robert C. Hora, Mark D. Villaverde, Milbank, Tweed, Hadley & McCloy LLP, New York, NY, *for Defendant-Appellee Coöperatieve Rabobank U.A. (f/k/a Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.).*

Andrew W. Stern, Thomas Andrew Paskowitz, Alan M. Unger, Sidley Austin LLP, New York, NY, *for Defendant-Appellee The Norinchukin Bank.*

Jonathan D. Schiller, Leigh M. Nathanson, Boies Schiller Flexner LLP, New York, NY, Michael A. Brille, Melissa Felder Zappala, Boies Schiller Flexner LLP, Washington, D.C., David H. Braff, Yvonne S. Quinn, Jeffrey T. Scott, Matthew J. Porpora, Sullivan & Cromwell LLP, New York, NY, *for Defendants-Appellees Barclays Bank PLC, Barclays PLC, and Barclays Capital Inc.*

Marc J. Gottridge, Lisa J. Fried, Benjamin A. Fleming, Hogan Lovells US LLP, New York,

NY, *for Defendants-Appellees Lloyds Banking Group plc and Lloyds Bank plc.*

Jerome S. Fortinsky, Jeffrey J. Resetarits, Shearman & Sterling LLP, New York, NY, *for Defendants-Appellees Mizuho Corporate Bank, Ltd, Mizuho Bank, Ltd., and Mizuho Trust & Banking Co., Ltd.*

Harry S. Davis, Brian Kohn, Schulte Roth & Zabel LLP, New York, NY, *for Defendant-Appellee Tullett Prebon plc.*

Arthur J. Burke, Paul S. Mishkin, Adam G. Mehes, Davis Polk & Wardwell LLP, New York, NY, *for Defendants-Appellees Bank of America Corporation and Bank of America, N.A.*

Shari A. Brandt, H. Rowan Gaither, Richards Kibbe & Orbe LLP, New York, NY, *for Defendants-Appellees ICAP plc and ICAP Europe Limited.*

Gary W. Kubek, Erica S. Weisgerber, Debevoise & Plimpton LLP, New York, NY, *for Defendant-Appellee The Bank of Yokohama, Ltd.*

C. Fairley Spillman, Akin Gump Strauss Hauer & Feld LLP, Washington, D.C., *for Defendant-Appellee Resona Bank, Ltd.*

Andrew C. Smith, Pillsbury Winthrop Shaw Pittman LLP, New York, NY, *for Defendant-Appellee Shinkin Central Bank.*

Robert C. Mason, Arnold & Porter Kaye Scholer LLP, New York, NY, *for Defendant-Appellee The Shoko Chukin Bank, Ltd.*

Dale C. Christensen, Jr., Michael B. Weitman, Seward & Kissel LLP, New York, NY, *for Defendant-Appellee Sumitomo Mitsui Trust Bank, Limited*.

Jon R. Roellke, Morgan Lewis & Bockius LLP, Washington, D.C., Michael L. Spafford, Paul Hastings LLP, Washington, D.C., *for Defendant-Appellee Sumitomo Mitsui Banking Corporation*.