# EXHIBIT A

20-1759-cv
*Alaska Dep't of Revenue, Treasury Div. v. Crédit Agricole Corp.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of July, two thousand twenty-one.

PRESENT:    DENNIS JACOBS,
            DENNY CHIN,
            WILLIAM J. NARDINI,
                    *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ALASKA DEPARTMENT OF REVENUE,
TREASURY DIVISION, ALASKA
PERMANENT FUND CORPORATION, IRON
WORKERS PENSION PLAN OF WESTERN
PENNSYLVANIA, ON BEHALF OF
THEMSELVES AND ALL OTHERS
SIMILARLY SITUATED,

                *Plaintiffs-Appellants*,

BOSTON RETIREMENT SYSTEM, ON
BEHALF OF ITSELF AND ALL OTHERS
SIMILARLY SITUATED, IRVING FIREMEN'S
RELIEF AND RETIREMENT FUND, CITY OF
ATLANTA FIREFIGHTERS PENSION FUND,
ON BEHALF OF ITSELF AND ALL OTHERS

SIMILARLY SITUATED, LOUISIANA SHERIFFS' PENSION RELIEF FUND, ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED, SHEET METAL WORKERS PENSION PLAN OF NORTHERN CALIFORNIA, INTER-LOCAL PENSION FUND GRAPHIC COMMUNICATIONS CONFERENCE OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED, CITY OF BRISTOL PENSION FUND, ON BEHALF OF ITSELF AND IN A REPRESENTATIVE CAPACITY, ON BEHALF OF ALL SIMILARLY SITUATED, ASBESTOS WORKERS PHILADELPHIA WELFARE AND PENSION FUND, ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED, PAINTERS AND ALLIED TRADES DISTRICT COUNCIL NO. 35 PENSION FUND, ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED, OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, ON BEHALF OF ITSELF, AND, IN A REPRESENTATIVE CAPACITY, ON BEHALF OF ALL THOSE SIMILARLY SITUATED, LOUISIANA MUNICIPAL POLICE EMPLOYEES RETIREMENT SYSTEM, KBC ASSET MANAGEMENT NV, CITY OF RIVIERA BEACH POLICE OFFICERS' PENSION FUND, ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED, THE POLICE RETIREMENT SYSTEM OF ST. LOUIS,
     *Plaintiffs*,

   -v-                 20-1759-cv

AMANDEEP SINGH MANKU, SHAILEN PAU, BHARDEEP SINGH HEER, CREDIT SUISSE SECURITIES (EUROPE) LTD., CREDIT

2

SUISSE INTERNATIONAL, CREDIT SUISSE AG, CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK, BNP PARIBAS SECURITIES CORP., BNP PARIBAS, BANK OF AMERICA, N.A., DEUTSCHE BANK AG, HIREN GUDKA, HSBC HOLDINGS PLC, HSBC BANK USA, N.A., HSBC SECURITIES (USA) INC., HSBC BANK PLC, BANK OF AMERICA, CREDIT SUISSE SECURITIES (USA) LLC, CITIGROUP INC., CITIBANK, N.A., CITIGROUP GLOBAL MARKETS INC., CITIGROUP GLOBAL MARKETS LIMITED, ROYAL BANK OF CANADA, RBC EUROPE LIMITED, RBC CAPITAL MARKETS LLC, NOMURA INTERNATIONAL PLC, NOMURA SECURITIES INTERNATIONAL, INC., GARY MCDONALD, BARCLAYS CAPITAL INC., BARCLAYS EXECUTION SERVICES LIMITED, BARCLAYS CAPITAL SECURITIES LIMITED, BARCLAYS BANK PLC, THE TORONTO-DOMINION BANK, TD SECURITIES (USA) LLC,

      *Defendants-Appellees*,

MERRILL LYNCH INTERNATIONAL, TD BANK, N.A., TD SECURITIES LIMITED, DEUTSCHE BANK SECURITIES INC., NOMURA HOLDINGS, INC., JOHN DOE DEFENDANTS NOS. 1-100, CRÉDIT AGRICOLE S.A., NOMURA HOLDINGS, INC., BANK OF AMERICA MERRILL LYNCH INTERNATIONAL LIMITED, BANK OF AMERICA CORPORATION, MERRILL LYNCH, PIERCE, FENNER & SMITH, CREDIT SUISSE GROUP AG,

      *Defendants*.[*]

---

[*]  The Clerk of the Court is respectfully directed to amend the official caption in this case to conform to the caption above.

3

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| FOR PLAINTIFFS-APPELLANTS: | DANIEL L. BROCKETT (William B. Adams, Thomas J. Lepri, Christopher M. Seck, Jeremy D. Andersen, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, New York, and Los Angeles, California, *and* Susan K. Alexander, Andrew S. Love, Joseph D. Daley, David W. Mitchell, Brian O'Mara, Steven M. Jodlowski, Carmen A. Medici, Ashley M. Kelly, Samuel H. Rudman, Robbins Geller Rudman & Dowd LLP, San Francisco, California, San Diego, California, and Melville, New York. |
| FOR DEFENDANTS-APPELLEES CITIGROUP INC., CITIBANK, N.A., CITIGROUP GLOBAL MARKETS INC., AND CITIGROUP GLOBAL MARKETS LIMITED: | KAREN HOFFMAN LENT (Jay B. Kasner, *on the brief*), Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York. |
| FOR DEFENDANTS-APPELLEES CREDIT SUISSE AG, CREDIT SUISSE SECURITIES (USA) LLC, CREDIT SUISSE SECURITIES (EUROPE) LIMITED, AND CREDIT SUISSE INTERNATIONAL: | DAVID G. JANUSZEWSKI (Herbert S. Washer, Sheila C. Ramesh, Adam S. Mintz, *on the brief*), Cahill Gordon & Reindel LLP, New York New York. |
| FOR DEFENDANT-APPELLEE AMANDEEP SINGH MANKU: | David H. McGill, Nathan M. Richardson, Kobre & Kim LLP, Washington, D.C. |
| FOR DEFENDANT-APPELLEE SHAILEN PAU: | Richard F. Albert, Christopher B. Harwood, Nicole L. Buseman, Morvillo Abramowitz Grand Iason & Anello P.C., New York, New York. |
| FOR DEFENDANT-APPELLEE | Derek A. Cohen, William J. Harrington, Eric |

4

| | |
|---|---|
| BHARDEEP SINGH HEER: | Lawson, Benjamin Hayes, Goodwin Procter LLP, New York, New York, and Washington, D.C. |
| FOR DEFENDANT-APPELLEE CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK: | Lisa J. Fried, Benjamin A. Fleming, Benjamin F. Holt, Hogan Lovells US LLP, New York, New York and Washington, D.C. |
| FOR DEFENDANTS-APPELLEES BNP PARIBAS, AND BNP PARIBAS SECURITIES CORP.: | Carmine D. Boccuzzi Jr., Timothy Thomas Leech, Cleary Gottlieb Steen & Hamilton LLP, New York, New York. |
| FOR DEFENDANTS-APPELLEES ROYAL BANK OF CANADA, RBC EUROPE LIMITED, AND RBC CAPITAL MARKETS LLC: | Alexander J. Willscher, Matthew J. Porpora, Sullivan & Cromwell LLP, New York, New York. |
| FOR DEFENDANT-APPELLEE NOMURA INTERNATIONAL PLC: | John D. Buretta, Cravath, Swaine & Moore LLP, New York, New York. |
| FOR DEFENDANT-APPELLEE NOMURA SECURITIES INTERNATIONAL, INC.: | Aidan Synnott, Rachel J. Corrigan, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York. |
| FOR DEFENDANT-APPELLEE GARY MCDONALD: | James R. Sigel, Bradley S. Lui, Michael F. Qian, Adam Hunt, Morrison & Foerster LLP, San Francisco, California, Washington, D.C., and New York, New York. |
| FOR DEFENDANTS-APPELLEES BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., BARCLAYS EXECUTION SERVICES LIMITED, AND BARCLAYS CAPITAL SECURITIES LIMITED: | Barry G. Sher, Anthony Antonelli, Paul Hastings LLP, New York, New York. |
| FOR DEFENDANTS-APPELLEES THE TORONTO-DOMINION | Paul S. Mishkin, Robert G. King, Benjamin D. Wasserman, Davis Polk & Wardwell LLP, |

BANK, AND TD SECURITIES (USA) LLC:	New York, New York.

Appeal from the United States District Court for the Southern District of New York (Ramos, *J.*).

**UPON DUE CONSIDERATION, IT IS ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-appellants Alaska Department of Revenue, Treasury Division; the Alaska Permanent Fund Corporation; and the Iron Workers Pension Plan of Western Pennsylvania ("plaintiffs") are U.S. investors who traded in U.S. dollar-denominated ("USD") supranational, sovereign, and agency bonds ("SSA bonds") with defendants-appellees ("defendants"), who are entities that deal in USD SSA bonds and purportedly dominate the secondary market and certain individuals previously employed by some of the dealer entities.

Plaintiffs, who brought suit under Section 1 of the Sherman Act, 15 U.S.C. § 1, appeal from a partial final judgment dismissing their federal antitrust claims against one set of defendants (the "Domestic Dealer Defendants")[1] for failure to state a claim and against two other sets of defendants -- the "Foreign Dealer Defendants"[2] and

---

[1] The nine Domestic Dealer Defendants are: Barclays Capital Inc.; BNP Paribas Securities Corp.; Citigroup Inc.; Citibank, N.A.; Citigroup Global Markets Inc.; Credit Suisse Securities (USA) LLC; Nomura Securities International, Inc.; RBC Capital Markets LLC; and TD Securities (USA) LLC.
[2] The thirteen Foreign Dealer Defendants are: Barclays Bank PLC; Barclays Capital Securities Limited; Barclays Execution Services Limited (formerly known as Barclays Services

6

the "Individual Defendants"[3] (together, the "Foreign Defendants") -- for lack of personal jurisdiction and improper venue.  On appeal, plaintiffs argue that: (1) they have plausibly alleged an antitrust claim based on defendants' continuous and ongoing conspiracy to collude with each other in the secondary market for USD SSA bonds to plaintiffs' detriment; (2) personal jurisdiction and venue are proper as to all defendants under either the Clayton Act or New York's Long-Arm Statute; and (3) the district court abused its discretion in denying jurisdictional discovery.  We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

I.     *Background*[4]

    A.     *The USD SSA Bond Market*

SSA bonds are debt securities issued by governmental and quasi-governmental entities to fund a range of economic and public-policy mandates.  Entities issuing SSA bonds include: (1) supranational organizations, which are multilateral institutions with shareholders from multiple countries, (2) sovereign and sub-sovereign

---

Limited**)**; BNP Paribas; Citigroup Global Markets Limited; Crédit Agricole Corporate & Investment Bank; Credit Suisse AG; Credit Suisse International; Credit Suisse Securities (Europe) Limited; Nomura International plc; RBC Europe Limited; Royal Bank of Canada; and The Toronto-Dominion Bank.

[3]     The four Individual Defendants are Amandeep Singh Manku, Bhardeep Singh Heer, Gary McDonald, and Shailen Pau.

[4]     The following facts are drawn from plaintiffs' Second Amended Complaint ("SAC"), and are assumed to be true.  *See Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 26 (2d Cir. 2015).

7

borrowers, which are national, state or provincial governments that issue debt in foreign currencies, and (3) agency borrowers, which are typically entities operated by or working on behalf of governments. There are approximately $1 trillion of SSA bonds outstanding globally. Investors generally regard SSA bonds as secure investments "because they often enjoy special legal status, and their credit-worthiness is often pegged to sovereign, regional, or international entities." J. App'x at 35. SSA bonds can also be dollar-denominated to target the U.S. bond market.

After they are issued, SSA bonds can be resold and traded by dealers and investors in the secondary market. Investors trade SSA bonds in an over-the-counter market, transacting individually and privately with dealers as opposed to using an open exchange that matches buyers and sellers anonymously. An investor typically contacts one or more dealers by telephone, electronic chat messages, or an electronic trading platform to request a quote. The dealer relays the quote to the investor, who can then place an order.

Due to the short expiration periods of quotes and the time-consuming nature of contacting dealers, investors generally do not shop around with more than a few dealers at a time. Regardless of medium -- telephone, electronic chat messages, or electronic trading platforms -- investors have "no access to real time market data to validate whether dealers' quotes were competitive." *Id*. at 88. Furthermore, there is "no post-trade price transparency" and "limited ability to purchase secondary market

trading information" for SSA bonds.  *Id*. at 89.  To learn the price of an SSA bond, investors must reach out to a dealer and request a quote, thus revealing their identity and the specific instrument and volume they seek to trade.

    B.    *The Alleged Antitrust Conspiracy*

Plaintiffs seek to represent a class comprised of all persons or entities who, from January 1, 2009 to December 31, 2015 (the "Class Period"), "directly entered into [USD] SSA bond transactions with Defendants, or their respective subsidiaries or affiliates, in the United States . . . or otherwise involving U.S. trade or commerce."  *Id*. at 232-33.

The crux of plaintiffs' claims is that all defendants collaborated and shared information such "that they effectively ceased" operating separately in the USD SSA bond market "and instead functioned as a single, unitary 'super-desk.'"  *Id*. at 41.  Plaintiffs allege that, for every single SSA bond transaction during the Class Period, defendants -- several banks operating as dealers in the USD SSA bond market (the "Dealer Defendants") and certain of their former employees responsible for the banks' USD SSA trading business (including the Individual Defendants)[5] -- conspired not to

---

[5]    The Individual Defendants are British citizens or residents who were employed by several of the Dealer Defendants as USD SSA bond traders and communicated with each other via chat messages about their transactions.  They allegedly shared confidential customer information and pricing and volume of USD SSA bond transactions, and at times they sold and bought bonds on each other's behalf.  The Individual Defendants were also alleged to be part of the same social circle.

9

compete against each other in the secondary market for USD SSA bonds, and instead cooperated to achieve prices and terms more favorable to them and worse for their customers.

Specifically, plaintiffs accuse defendants of colluding to artificially lower the price at which defendants purchased SSA bonds from consumers (the "bid") and artificially inflate the price at which defendants sold SSA bonds to consumers (the "ask"), thus artificially widening the bid-ask spread -- and their profits -- via anticompetitive methods. Citing electronic chatroom records between employees trading SSA bonds on behalf of the Dealer Defendants, plaintiffs allege that when an investor contacted one or more dealers to purchase a bond, defendants would communicate with each other via chat rooms and phone calls to achieve more favorable prices and terms for themselves, such as by artificially lowering dealer demand for investors' sales of USD SSA bonds to dealers and artificially inflating demand for dealers' sales of USD SSA bonds to investors. Plaintiffs also supplement their allegations with statistical analyses, claiming to identify artificially wide price margins for SSA bonds -- and thus artificially high profit margins for dealers of the bonds -- across the entire market for USD SSA bonds during the Class Period.

    C.    *Procedural History*

The initial complaint was filed on May 18, 2016. Following several years of litigation, plaintiffs filed the SAC on November 13, 2018. On September 30, 2019, the

district court granted the Foreign Dealer Defendants' and Individual Defendants' motions to dismiss for lack of personal jurisdiction, and also ruled that venue was improper with respect to a subset of five Foreign Defendants who had moved to dismiss on that basis.[6] On March 18, 2020, the district court granted the Domestic Dealer Defendants' motion to dismiss for failure to state a claim. On May 8, 2020, the district court entered a partial final judgment pursuant to Fed. R. Civ. P. 54(b). This appeal followed.

**II.**     *Discussion*

   A.     *Standard of Review*

"We review a district court's grant of a motion to dismiss under Rule 12(b)(6) *de novo*." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020). "We review *de novo* the district court's decision to dismiss under Rule 12(b)(2)" for lack of personal jurisdiction. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). "[W]e will apply the same [*de novo*] standard of review in Rule 12(b)(3) dismissals for improper venue as we do in Rule 12(b)(2) dismissals for lack of personal jurisdiction[.]" *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). "We review a district court's denial of jurisdictional discovery for abuse of discretion[.]" *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 446 (2d Cir. 2019) (internal quotation marks omitted).

---

[6]     The five Foreign Dealer Defendants that raised a venue defense are: Barclays Capital Securities Limited, Barclays Execution Services Limited, Credit Suisse International, Credit Suisse Securities (Europe) Ltd., and Nomura International plc.

11

B.     *Applicable Law*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  While plaintiffs must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," *id*. (citation omitted), plausibility "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality," *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks, alteration, and citation omitted), "even if it strikes a savvy judge that actual proof of those facts is improbable," *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 570).  As relevant here, "[n]o heightened pleading requirements apply in antitrust cases." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001).  But "a bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal." *Heart Disease Rsch. Found. v. Gen. Motors Corp.*, 463 F.2d 98, 100 (2d Cir. 1972).

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce."  15 U.S.C. § 1.  To plead a plausible conspiracy under Section 1 of the Sherman Act, a

12

plaintiff must allege "enough factual matter (taken as true) to suggest that an agreement was made" to restrain trade. *Twombly*, 550 U.S. at 556.

In so doing, a plaintiff may "assert direct evidence that the defendants entered into an agreement in violation of the antitrust laws," *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013) (discussing the rare antitrust "smoking gun" evidence), or, in the alternative, "present circumstantial facts supporting the *inference* that a conspiracy existed," *id*. Under the latter method, allegations that defendants engaged in parallel conduct can establish a plausible conspiracy when they are accompanied by certain "plus factors," which "may include: a common motive to conspire, evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators, and evidence of a high level of interfirm communications." *Id.* (internal quotation marks omitted). But a complaint may not state "in entirely general terms without any specification of any particular activities by any particular defendant." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (internal quotation marks omitted).

For courts reviewing antitrust cases, "the character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *United States v. Apple, Inc.*, 791 F.3d 290, 319 (2d Cir. 2015) (alteration omitted) (quoting *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962)).

13

C. *Application*

Here, we conclude that plaintiffs have cast a net so wide that the claimed antitrust conspiracy is implausible as alleged.

As plaintiffs themselves note, the secondary market for USD SSA bonds operates through bilateral over-the-counter transactions, with quickly expiring quotes acquired after extended communications with dealers. Because of its decentralized, opaque, and frenetic nature, the secondary market for USD SSA Bonds may indeed be vulnerable to manipulation by individual traders colluding on specific trades.

But the flip side of this same coin is that the conspiracy alleged by plaintiffs -- a "super-desk" involving more than twenty entities in different countries as well as individual traders, conspiring "[e]very day, nearly all day," J. App'x at 169, tainting every one of their trades for some seven years -- is simply not plausible. Significantly, in casting this extremely wide net, plaintiffs have explicitly refused to plead, in the alternative, a narrower antitrust conspiracy involving only the Individual Defendants. Accordingly, we evaluate plaintiffs' claims as they are alleged: an antitrust conspiracy involving *all* defendants and affecting *all* trades with the defendants.

In so doing, we conclude that the SAC does not allege sufficient factual detail to establish the plausibility of the claimed conspiracy. The SAC fails to explain how the conspirators were able to wield such control over the secondary market as to impact every trade with every defendant and yield a viable claim for every plaintiff.

14

The SAC also fails to link each of the defendants individually to specific acts of anticompetitive conduct in furtherance of the conspiracy. Thus, while we agree with the district court that the SAC adequately alleges anticompetitive conduct on the part of the Individual Defendants, *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 237-38 (S.D.N.Y. 2019), we conclude that the broad conspiracy alleged by plaintiffs is simply not plausible. We therefore affirm the district court's dismissal of the plaintiffs' claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Because we affirm the dismissal of plaintiffs' claims as to all defendants on plaintiffs' failure to plead a plausible conspiracy, we need not reach the issues of personal jurisdiction, venue, and jurisdictional discovery.

\* \* \*

For the foregoing reasons, we **AFFIRM** the partial final judgment of the district court**.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk