**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

JEFFREY LAYDON, on behalf of himself and all others similarly situated,

Plaintiff,

- against -

THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE SUMITOMO TRUST AND BANKING CO., LTD., THE NORINCHUKIN BANK, MITSUBISHI UFJ TRUST AND BANKING CORPORATION, SUMITOMO MITSUI BANKING CORPORATION, J.P. MORGAN CHASE & CO., J.P. MORGAN CHASE BANK, NATIONAL ASSOCIATION, J.P. MORGAN SECURITIES PLC, MIZUHO CORPORATE BANK, LTD., DEUTSCHE BANK AG, THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, UBS AG, UBS SECURITIES JAPAN CO. LTD., THE BANK OF YOKOHAMA, LTD., SOCIETE GENERALE SA, THE ROYAL BANK OF SCOTLAND GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED, BARCLAYS BANK PLC, CITIBANK, NA, CITIGROUP, INC., CITIBANK, JAPAN LTD., CITIGROUP GLOBAL MARKETS JAPAN, INC., COOPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, LLOYDS BANKING GROUP PLC, ICAP EUROPE LIMITED, R.P. MARTIN HOLDINGS LIMITED, MARTIN BROKERS (UK) LTD., TULLETT PREBON PLC, AND JOHN DOE NOS. 1-50,

Defendants.

---

Docket No. 12-cv-3419 (GBD)

| | |
|---|---|
| FUND LIQUIDATION HOLDINGS LLC as assignee and successor-in-interest to Sonterra Capital Master Fund, Ltd., HAYMAN CAPITAL MASTER FUND, L.P., JAPAN MACRO OPPORTUNITIES MASTER FUND, L.P., and CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> - against - <br><br> UBS AG, UBS SECURITIES JAPAN CO. LTD., SOCIÉTÉ GÉNÉRALE S.A., NATWEST GROUP PLC, NATWEST MARKETS PLC, NATWEST MARKETS SECURITIES JAPAN LTD, NATWEST MARKETS SECURITIES, INC., BARCLAYS BANK PLC, BARCLAYS PLC, COÖPERATIEVE RABOBANK U.A., LLOYDS BANKING GROUP PLC, LLOYDS BANK PLC, NEX INTERNATIONAL LIMITED, ICAP EUROPE LIMITED, TP ICAP PLC, BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., MERRILL LYNCH INTERNATIONAL, AND JOHN DOE NOS. 1-50, <br><br> Defendants. | Docket No. 15-cv-5844 (GBD) |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND REQUEST FOR SERVICE AWARD**

<u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ......................................................................................................... ii

ARGUMENT ............................................................................................................................. 1

    I.     CLASS COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE ............. 1

         A.    The Risks Faced by Class Counsel in this Complex and Massive
              Litigation Support the Requested Fee ........................................................ 2

         B.    The Time and Labor Expended by Class Counsel that Resulted in the
              Current Settlements Support the Requested Fee ......................................... 8

             1.    The Lodestar Value of This Time and Labor Confirms the
                    Reasonableness of the Fee Request ................................................... 12

         C.    The Fee Request Is Supported by the Remaining *Goldberger* Factors ...... 14

             1.    The Quality of the Representation Supports the Requested Fee ........ 14

             2.    Class Counsel's Request is Well Within the Range of Awards ......... 16

             3.    Public Policy Supports Approval ....................................................... 18

         D.    The Negotiated Sliding Fee Scale on which Class Counsel's Request Is
              Based Provides Further Evidence of the Proposed Award's
               Reasonableness ......................................................................................... 20

    II.    THE REQUESTED AWARDS FOR CLASS COUNSEL'S EXPENSES
          AND THE LITIGATION FUND ARE REASONABLE .................................... 21

    III.    THE COURT SHOULD GRANT JAPAN MACRO OPPORTUNITIES
          MASTER FUND, L.P. A SUPPLEMENTAL SERVICE AWARD ................... 22

CONCLUSION ........................................................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
No. 14-cv-7126 (JMF), 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018) .................................. 17

*Anwar v. Fairfield Greenwich Ltd.*,
No. 09-cv-118 (VM ), 2012 WL 1981505 (S.D.N.Y. June 1, 2012) ...................................... 23

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*,
522 F.3d 182, 184 (2d Cir. 2008) ...................................................................................... 20

*Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) .......................................................................................... 14

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................. 14, 22, 23

*Berlinsky v. Alcatel Alsthom Compagnie Générale D'Electricité*,
970 F. Supp. 348 (S.D.N.Y. 1997) ....................................................................................... 5

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ............................................................................................................ 1

*Brunson v. City of New York*,
No. 94 Civ. 4507, 2000 WL 1876910 (S.D.N.Y. Dec. 22, 2000) ........................................ 22

*Cange v. Stotler & Co., Inc.*,
826 F.2d 581 (7th Cir. 1987) .............................................................................................. 19

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*,
No. 17 CIV. 10014 (LGS), 2020 WL 7413926, at *1 (S.D.N.Y. Dec. 17, 2020) ............... 16-17

*City of Providence v. Aeropostale, Inc.*,
No. 11-cv-7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................... 13

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
No. 12-CV-0256 (LAK), 2021 WL 2453972, at *1(S.D.N.Y. June 15, 2021) ........................ 13

*Dial Corp. v. News Corp.*,
317 F.R.D. 426 (S.D.N.Y. 2016) ................................................................................... 23, 24

*Espinal v. Victor's Café 52nd St., Inc.*,
No. 16-CV-8057 (VEC), 2019 WL 5425475 (S.D.N.Y. Oct. 23, 2019) ................................ 19

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................... 7

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ........................................................... *passim*

*Grice v. Pepsi Beverages Co.*,
    363 F. Supp. 3d 401 (S.D.N.Y. 2019) ........................................................... 16

*Guevoura Fund Ltd. v. Sillerman*,
    No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ................. 13

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*,
    No. 02-cv-5575 (SWK), 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) .......... 6

*In re Bristol-Myers Squibb Sec. Litig.*,
    361 F. Supp. 2d 229 (S.D.N.Y. 2005) ........................................................... 3

*In re Citigroup Inc. Bond Litig.*,
    988 F. Supp. 2d 371 (S.D.N.Y. 2013) ........................................................... 3

*In re Colgate-Palmolive Co. ERISA Litig.*,
    36 F. Supp. 3d 344 (S.D.N.Y. 2014) ........................................................... 12

*In re Credit Default Swaps Antitrust Litig.*,
    No. 13MD2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ......... 1, 14, 19, 20

*In re DDAVP Direct Purchaser Antitrust Litig.*,
    No. 05 Civ. 2237 (CS), 2011 WL 12627961 (S.D.N.Y. Nov. 28, 2011) ............... 17

*In re Deutsche Bank AG Sec. Litig.*,
    No. 1:09-CV-01714 (GHW), 2020 WL 3162980 (S.D.N.Y. June 11, 2020) .......... 17

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018) ........................................................... 6

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*,
    No. 13 Civ. 7789 (LGS), 2018 WL 5839691 (S.D.N.Y. Nov. 8, 2018) ............... 13

*In re Graña y Montero S.A.A. Sec. Litig.*,
    17-cv-01105 (LD)(HST), 2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021) ............... 5

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........................................................... 6

*In re GSE Bonds Antitrust Litig.,*
No. 19-CV-1704 (JSR), 2020 WL 3250593 (S.D.N.Y. June 16, 2020) .................. 3, 13, 17, 18

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
327 F.R.D. 483 (S.D.N.Y. 2018) ............................................................................... 7

*In re Merrill Lynch Tyco Research Sec. Litig.,*
249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................................ 15

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................... 7

*In re Nortel Networks Corp. Sec. Litig.,*
539 F.3d 129 (2d Cir. 2008) ................................................................................... 20

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,*
991 F. Supp. 2d 437 (E.D.N.Y. 2014) ................................................................. 2, 16

*In re Platinum and Palladium Commodities Litig.,*
No. 10cv3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ............................... 3, 6

*In re Sumitomo Copper Litig.,*
189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................................... 7

*In re Virtus Inv. Partners, Inc. Sec. Litig.,*
No. 15CV1249, 2018 WL 6333657 (S.D.N.Y. Dec. 4, 2018) ............................... 17

*In re Visa Check/Mastermoney Antitrust Litig.,*
192 F.R.D. 68 (E.D.N.Y. 2000) ................................................................................ 6

*In re Warner Commc'ns Sec. Litig.,*
618 F. Supp. 735 (S.D.N.Y. 1985) ..................................................................... 6, 17

*Leist v. Simplot,*
638 F.2d 283 (2d Cir. 1980) ................................................................................... 19

*Maley v. Del Glob. Techs. Corp.,*
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................... 14, 16

*McDaniel v. Cnty. of Schenectady,*
595 F.3d 411 (2d Cir. 2010) ..................................................................................... 1

*Meredith Corp. v. SESAC, LLC,*
87 F. Supp. 3d 650 (S.D.N.Y. 2015) ............................................................... 3, 4, 21

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
   456 U.S. 353 (1982) ........................................................................................... 19

*Pillsbury Co. v. Conboy*,
   459 U.S. 248 (1983) ........................................................................................... 18

*Roberts v. Texaco*,
   979 F. Supp. 185 (S.D.N.Y. 1997) ..................................................................... 23

*Sullivan v. Barclays PLC*,
   No. 13-CV-02811 (PKC), 2018 WL 6299918 (S.D.N.Y. May 18, 2018) ............... 17

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
   No. 01-cv-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ........................... 22

*Varljen v. H.J. Meyers & Co.*,
   2000 WL 1683656 n.2 (S.D.N.Y. Nov. 8, 2000) ................................................. 23

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................................ 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................... 7

**Other Authorities**

Theodore Eisenberg et. al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev.
   937 (2017) .......................................................................................................... 18

WILLIAM B. RUBENSTEIN, 5 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 15:78 (6th ed.
   2022) .................................................................................................................. 18

WILLIAM B. RUBENSTEIN, 5 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 17:1 (6th ed.
   2022) .................................................................................................................. 22

Pursuant to this Court's Preliminary Approval Orders[1] and in accordance with Rule 23(e), Lowey Dannenberg, P.C. ("Class Counsel") respectfully submits this memorandum of law in support of its motion for an award of attorneys' fees, reimbursement of litigation expenses, and a service award from the $22,500,000 common fund created by Representative Plaintiffs' settlements with Barclays, ICAP and Tullett Prebon (the "Settlements").[2]

## ARGUMENT

### I. CLASS COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *16 (S.D.N.Y. Apr. 26, 2016) (same). Courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method" although "the trend in this Circuit is toward the percentage method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). Regardless of the method used, courts assess the reasonableness of the fee request based on six factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the

---

[1] "Preliminary Approval Orders" means the Order Preliminarily Approving Proposed Settlement with Barclays Bank Plc, Barclays Capital Inc., and Barclays Plc (collectively, "Barclays"), and Scheduling Hearing for Final Approval Thereof, and Approving the Proposed Form and Program of Notice to the Class dated October 5, 2022 (ECF No. 1061), the Order Preliminarily Approving Proposed Settlement with Nex International Limited (f/k/a ICAP Plc) and ICAP Europe Limited (collectively, "ICAP"), and Scheduling Hearing for Final Approval Thereof, and Approving the Proposed Form and Program of Notice to the Class dated October 5, 2022 (ECF No. 1060), and the Order Preliminarily Approving Proposed Settlement with TP ICAP Plc (f/k/a Tullett Prebon Plc and n/k/a TP ICAP Finance Plc) ("Tullet Prebon"), and Scheduling Hearing for Final Approval Thereof, and Approving the Proposed Form and Program of Notice to the Class dated October 5, 2022 (ECF No. 1062).

[2] Defendants Barclays, ICAP and Tullet Prebon are herein referred to collectively as, the "Settling Defendants." Unless otherwise noted, ECF citations are to the docket in the *Laydon v. The Bank of Tokyo-Mitsubishi UFJ, Ltd., et al. (Laydon v. Mizuho Bank, Ltd.)*, No. 12-cv-3419 (GBD) (S.D.N.Y.) ("*Laydon*"), and internal citations and quotation marks are omitted. "*Sonterra*" refers to *Fund Liquidation Holdings LLC, et al. v. UBS AG, et al. (Sonterra Capital Master Fund, Ltd., et al. v. UBS AG, et al.)*, No 15-cv-5844 (GBD) (S.D.N.Y.). Unless otherwise defined, capitalized terms herein have the same meaning as in the Settling Defendants' Settlement Agreements. *See* ECF Nos. 1049-1, 1049-2, 1049-3.

risk of the litigation [ ]; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

Class Counsel requests an award of $4.5 million, which is 20% of the $22,500,000 common fund and represents a negative risk multiplier of 0.58 on the lodestar value of Plaintiffs' Counsel's work since the last fee application in 2019. The fee request is reasonable because: (1) the risks Class Counsel undertook to prosecute these Actions as sole lead counsel were substantial, and Class Counsel's success in obtaining these three Settlements (and the previous eight) in spite of those risks and the complexity and magnitude of the Actions warrants granting a significant fee; (2) Class Counsel have invested considerable time and labor to prosecuting these Actions, and the lodestar cross-check confirms that the requested fee represents a discount on their investment in the case; (3) the remaining *Goldberger* factors—the quality of the representation, the size of the fee request as compared to fee awards in other similar cases, and the public policy interest in encouraging attorneys to pursue such actions—all support granting the fee request; and (4) the proposed award is consistent with the fee schedule that Representative Plaintiff California State Teachers' Retirement System ("CalSTRS") negotiated at arm's length with Plaintiffs' Counsel prior to CalSTRS' involvement in the action as a plaintiff.

**A.   The Risks Faced by Class Counsel in this Complex and Massive Litigation Support the Requested Fee**

The risks involved in pursuing a class action are at the heart of calculating a fair and reasonable fee award. *Goldberger,* 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement."); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,

991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("*Payment Card*") ("The most important *Goldberger* factor is often the case's risk"); *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) (the risk of the litigation is the "first, and most important, *Goldberger* factor").

When a large and complex action is coupled with significant litigation risks, a greater fee award is warranted. *See In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 379 (S.D.N.Y. 2013) ("The upshot is that the magnitude and complexity of the litigation also weigh in favor of a significant award."). Large, complex cases require a greater level of investment by counsel, in terms of effort, expertise, and resources, to competently litigate the claims and issues at stake on behalf of the class. Class actions involving antitrust and commodities claims stand out as some of the most "'complex, protracted, and bitterly fought.'" *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015); *In re Platinum and Palladium Commodities Litig.*, No. 10cv3617, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014) (commodities cases are "complex and expensive" to litigate).

These Actions are among the largest and most complex class actions cases before any court. Representative Plaintiffs allege a multi-year conspiracy among multiple banks and interdealer brokers to fix Euroyen-Based Derivatives prices through multiple, interrelated means. *See, e.g.*, Second Amended Complaint, *Sonterra*, ECF No. 498 ¶¶ 25-26, 124, 207, 332, 500, 744, 802. For more than ten years, Class Counsel have pursued antitrust and Commodity Exchange Act ("CEA") claims against over 40 different financial institutions, generating over 1,600 docket entries in this Court alone. *See* Declaration of Vincent Briganti in Support of (A) Representative Plaintiffs' Motion for Final Approval of Class Action Settlements; and (B) Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses dated January 24, 2023 ("Briganti Decl.") ¶ 7. *See In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704

(JSR), 2020 WL 3250593, at *4 (S.D.N.Y. June 16, 2020) (finding "complexity [is] present [where] plaintiffs claimed that the defendants colluded in the GSE Bond market over more than seven years, involving thousands of bond issuances, and implicating sixteen defendants").

More than 150,000 hours of work have been invested to advance the case this far, with Class Counsel providing more than 118,000 hours. Every single hour has been necessary and essential to the results achieved in the prosecution of the Actions. Class Counsel undertook its own investigation into the nature and scope of the alleged manipulation, during which they quickly developed expertise in the Euroyen-Based Derivatives market and insights about how Defendants' alleged cartel was able to manipulate the market to benefit their positions. Briganti Decl. ¶¶ 42-43. Once the litigation commenced, the opposition to the numerous motions to dismiss and pleading motions; organization of the massive document review efforts; negotiations over discovery protocols, document production, discovery disputes and expert discovery; and the achievement of eleven settlements with 28 Defendants were organized, led, and executed by more than seventy attorneys and staff working for Class Counsel at various points in the case, supported by attorneys and staff from additional Plaintiffs' Counsel. Class Counsel ensured that it invested sufficient resources to ably manage the scope and challenges of the Actions. *See generally,* Briganti Decl. Section III.

Class Counsel was well prepared to address the enormous risks that have been present since the inception of the Actions, any one of which could (and may still) prevent the Class from achieving a total recovery. Class Counsel brought these Actions on a contingency fee basis and serve as sole lead counsel. Litigating against more than 40 of the world's largest financial institutions, which have significant resources and could continue this case for years at the trial and appellate levels, meant that Class Counsel would need to devote substantial resources to the

case, at the risk of recovering nothing on their investment. *See Meredith Corp.*, 87 F. Supp. 3d at 670 (noting "substantial risk" where counsel bore the "risk of defeat"). Nonetheless, Class Counsel have been and remain willing to shoulder this risk to advance the Class's interests.

Immediately upon commencing the Actions, Class Counsel had to defend against the risk of the Actions being dismissed on the pleadings or based on personal jurisdiction. Defendants' alleged manipulation of Yen-LIBOR and Euroyen TIBOR in varying directions at varying times to benefit different banks' derivatives positions, raised complex questions concerning the existence of Article III standing, the scope of antitrust and CEA laws, and the U.S. federal court's jurisdiction over foreign Defendants. The law on these questions was unsettled at the outset of the litigation, and in some instances remains so.

Discovery presented its own risks. In addition to the ordinary yet substantial difficulties of litigating discovery against highly skilled counsel with well-resourced clients, Defendants are almost all located abroad, a factor that courts often consider in evaluating litigation risk for purposes of awarding fees. *See, e.g.*, *In re Graña y Montero S.A.A. Sec. Litig.*, No. 17-cv-01105 (LD)(HST), 2021 WL 4173684, at *17 (E.D.N.Y. Aug. 13, 2021), *report and recommendation adopted*, No. 17-cv-1105 (LDH)(ST), 2021 WL 4173170 (E.D.N.Y. Sept. 14, 2021) (finding risk of litigation, especially the difficulties of obtaining discovery from foreign defendants and third-parties, as a factor in favor of awarding the uncontested amount of fees in the settlement); *Berlinsky v. Alcatel Alsthom Compagnie Générale D'Electricité*, 970 F. Supp. 348, 352 (S.D.N.Y. 1997) (finding increased risk contingency due to defendant's foreign status as a factor in deciding attorney's fees). Here, the risk actually materialized in *Laydon*, as Class Counsel had to directly confront and overcome the objections by certain foreign Defendants to obtain information overseas. Briganti Decl. ¶¶ 83-85.

Certifying a litigation class and establishing a class-wide damages model presents a further risk. *See In re Platinum and Palladium Commodities Litigation*, 2014 WL 3500655, at *12 ("[I]n any market manipulation or antitrust case, [p]laintiffs face significant challenges in establishing liability and damages."). In a case of this complexity, developing a class-wide damages model would require substantial expert work, and it is almost certain that Defendants would engage their own experts to discredit Representative Plaintiffs' damages model. A battle of experts heightens the class certification risk as "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018), *aff'd*, 822 F. App'x 40 (2d Cir. 2020) (experts "tend[] to increase both the cost and duration of litigation").

Moreover, the certification risk would not abate if the Court granted Representative Plaintiffs' motion to certify a litigation class. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019) (the risk of maintaining a class through trial "weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated"); *In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. 02-cv-5575 (SWK), 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) ("[T]he process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement."). Even if a litigation class were to be certified, Defendants could challenge that certification on appeal, or at another stage in the litigation. *See, e.g., In re Visa Check/Mastermoney Antitrust Litig.*, 192 F.R.D. 68, 89 (E.D.N.Y. 2000), *aff'd*

*sub nom. Id.*, 280 F.3d 124 (2d Cir. 2001) ("If factual or legal underpinnings of the plaintiffs' successful class certification motion are undermined once they are tested . . . , a modification of the order, or perhaps decertification, might then be appropriate."); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("While plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory and weighs in favor of the Class Settlement."). Plaintiffs' Counsel would continue to bear the risk of maintaining the certified class through trial and appeal.

If the Actions proceed to trial, Class Counsel would again face substantial risks. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 494 (S.D.N.Y. 2018) ("[A]s to liability, establishing the existence and extent of a conspiracy will necessarily be a complex task, and many of the hurdles that plaintiffs have overcome at the pleading stage will raise substantially more difficult issues at the proof stage."); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (*"NASDAQ III"*) (describing the difficulties of proving antitrust liability, including the existence of a complex conspiracy involving a large number of defendants and a common motive). If Class Counsel established liability at trial, they would still face the challenge of proving class damages to a jury. There is a substantial risk that a jury might accept one or more of Defendants' damages arguments and award far less than the funds secured by the Settlements, or even nothing at all. "[T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005); *accord In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 283 (S.D.N.Y. 1999) ("These [ ] settlements are outstanding in light of the substantial risk that a jury might award only a modest judgment or find no damages at all.").

The complexity and magnitude of the Actions meant that there was no "silver bullet" that would guarantee a complete victory for the Class. Rather, overcoming any one risk guaranteed only that Class Counsel would need to overcome all of the remaining risks through trial and appeal to have a chance at prevailing for the Settlement Class. When viewed in their totality, the risks involved with starting and continuing this complex and massive litigation adequately support awarding Class Counsel a substantial fee award.

**B.      The Time and Labor Expended by Class Counsel that Resulted in the Current Settlements Support the Requested Fee**

The Barclays, ICAP, and Tullett Prebon Settlements are the result of Class Counsel's extraordinary efforts to prosecute these highly complex and contentious Actions. Class Counsel are some of the country's most experienced attorneys prosecuting financial antitrust and commodity manipulation cases, and over the last ten years, they have dedicated a substantial amount of time and resources to prosecute the claims in this Action on behalf of the Class. *See generally* Briganti Declaration.

Since the last fee application in 2019, Class Counsel argued and won their appeal of the *Sonterra* dismissal on Article III grounds. Briganti Decl. ¶ 14. Following the reversal of the *Sonterra* dismissal and the issuance of the Second Circuit mandate, Class Counsel developed and filed the *Sonterra* Second Amended Complaint, which included, among other things, additional significant facts that Class Counsel had uncovered during their continuing investigation and prosecution, including from cooperation materials received pursuant to previous settlements. Briganti Decl. ¶ 17. Shortly after the Second Amended Complaint was filed, the remaining Defendants in the *Sonterra* action filed another motion to dismiss, including three memoranda of law totaling 110 pages and 18 declarations. Briganti Decl. ¶ 18. Class Counsel responded in two comprehensive opposition memoranda totaling 94 pages. Shortly after Defendants filed three

reply memoranda, Class Counsel prepared for oral argument on Defendants' motion. Briganti Decl. ¶ 19. Oral argument was held on February 9, 2021, and in the weeks that followed, Class Counsel continued to research and review relevant legal developments, providing supplemental authorities to the Court as appropriate, and responding to the supplemental authorities identified by Defendants. Briganti Decl. ¶ 20. On September 30, 2021, the Court issued an order granting in part and denying in part Defendants' motion to dismiss the Second Amended Complaint. Briganti Decl. ¶ 21.

Following the Court's order, Class Counsel filed a motion for reconsideration and opposed reconsideration motions filed by UBS AG and Société Générale. Briganti Decl. ¶¶ 22-23. While the motions for reconsideration were pending, Class Counsel negotiated an ESI protocol and protective order with UBS and Société Générale and served initial document requests. Briganti Decl. ¶ 24. After the Court granted UBS's and Société Générale's motions and denied CalSTRS' motion, Class Counsel negotiated the case management plan and a fact deposition protocol with Société Générale and met-and-conferred with Société Générale on discovery. Briganti Decl. ¶ 26.

During the same period, in the *Laydon* action, Class Counsel opposed the motion for judgment on the pleadings filed by Barclays, Rabobank, RBS, Société Générale, and UBS, which included an exhaustive presentation during oral argument on December 19, 2019. Briganti Decl. ¶¶ 9-10. After the Court granted the motion and dismissed the *Laydon* action on August 27, 2020, Class Counsel timely appealed the decision and all other adverse orders in the case, and Barclays, Rabobank, and Société Générale cross-appealed. Briganti Decl. ¶ 11. Class Counsel prepared their arguments for the Second Circuit, assisted by additional Plaintiffs' Counsel and appellate counsel engaged specifically for purposes of the appeal. Briganti Decl. ¶ 12. On

February 19, 2021, Class Counsel filed a 73-page opening appellate brief and the special appendix. After the appellees and cross-appellants filed three appellate briefs totaling 119 pages, Class Counsel prepared and filed two more briefs totaling 81 pages. *Id*. After briefing was completed, Class Counsel worked with their appellate counsel to prepare for oral argument, which occurred on May 24, 2022. *Id*.

The Second Circuit issued an opinion on October 18, 2022 affirming the judgement and orders of this Court, following which Class Counsel filed a petition for rehearing *en banc*. Briganti Decl. ¶ 13. The U.S. Commodity Futures Trading Commission) ("CFTC") then filed an *amicus curae* brief supporting Class Counsel's request for reconsideration of certain issues addressed in the Second Circuit's opinion. *Id*. The Second Circuit *sua sponte* amended its October 18, 2022 opinion on December 8, 2022. *Id.* Class Counsel together with its appellate counsel, filed a new petition for rehearing and rehearing *en banc* of the amended opinion on January 12, 2023, and again the CFTC filed an *amicus curae* brief in support. *Id.*

As the proceedings continued in both Actions, Class Counsel negotiated the present settlements with Barclays, ICAP, and Tullett Prebon. Briganti Decl. ¶ 29. The settlement with Barclays was the culmination of negotiation efforts that first started back in January 2015, and most recently resumed in November 2021. Briganti Decl. ¶ 32. After months of extensive discussions, during which Class Counsel and Barclays exchanged their views of the case and risks of continued litigation, they reached an agreement in principle on March 4, 2022 and executed the Barclays Settlement Agreement on July 22, 2022. *Id.* Negotiations with ICAP began in January 2021, with counsel for ICAP and Class Counsel exchanging their views of the relevant factual and legal issues in the case, and the potential risks to both sides. The initial discussions did not result in an agreement, but the parties resumed talks in January 2022 that led

to an agreement in principle on May 17, 2022. The parties executed ICAP Settlement Agreement on July 20, 2022. Briganti Decl. ¶ 35. For Tullett Prebon, the settlement negotiations took place over three months starting in April 2022 and were no less hard-fought. Numerous discussions occurred regarding the facts, law and damages at risk in the Actions. Briganti Decl. ¶ 37. These discussions were productive and led to the execution of the Tullett Prebon Settlement Agreement on July 20, 2022. *Id*.

The work Class Counsel has performed in the last three years while achieving the Settlements before the Court represents just a fraction of their efforts made over the duration of the Actions. Since the outset, Class Counsel, assisted by additional Plaintiffs' Counsel, have in *Laydon*: filed multiple amended complaints and opposed several rounds of Defendants' motions to dismiss; served numerous discovery requests and engaged in dozens of meet-and-confers with Defendants about their responses and objections to the requests, production timelines and deficiencies; prevailed on two discovery motions brought to the Court involving Defendants' attempt to withhold documents under U.K. data privacy and bank secrecy laws and certain Defendants' refusal to produce documents held by employees who traded Euroyen-Based Derivatives; reviewed over 11,000,000 pages of documents and more than 100,000 audio files produced by Defendants during discovery; issued Rule 30(b)(6) deposition notices and took the deposition of RBS' corporate representatives prior to the entry of the discovery stay; negotiated the terms of a stipulation and proposed order that would govern the terms of expert discovery; produced expert reports supporting class certification in *Laydon* and defended those experts during their depositions; analyzed Defendants' expert reports and deposed Defendants' experts; prepared and served a rebuttal expert report; and filed Plaintiff's motion to certify a class in *Laydon*. Briganti Decl. ¶¶ 47-59, 68-96.

The Briganti Declaration further describes the efforts undertaken by Class Counsel to prosecute these Actions efficiently and effectively and amply demonstrates that Class Counsel's efforts throughout these Action, including their work that resulted in the Barclays, ICAP, and Tullett Prebon Settlements, satisfies this *Goldberger* factor.

1. **The Lodestar Value of This Time and Labor Confirms the Reasonableness of the Fee Request**

The amount of work Class Counsel and additional Plaintiffs' Counsel have undertaken is further evident in the lodestar of these Actions. Courts in this Circuit use the lodestar calculation "as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014).

Since the Court approved the last set of settlements in 2019, Class Counsel and additional Plaintiffs' Counsel have worked 9,462.35 hours prosecuting the Actions, reflecting a lodestar value of $7,776,109.00 based on 2022 rates. *See* Briganti Decl. ¶ 120.[3] The hourly attorney billing rates, ranging from $325 to $1,295, are the rates that Plaintiffs' Counsel charge in both contingent and non-contingent fee cases, and are comparable to rates approved by courts in this District in cases of comparable size and complexity. *See, e.g.*, *Sullivan v. Barclays plc et al.*, No. 13-cv-2811 (PKC), ECF No. 550 (S.D.N.Y. Nov. 15, 2022) (approving fee award after confirming lodestar cross-check supported the request), *see also* Nov. 15, 2022 Hearing Tr. at 19-22, *Sullivan v. Barclays PLC et al.*, No. 13-cv-2811 (PKC), ECF No. 553 (S.D.N.Y. Nov. 28, 2022); *Fund Liquidation Holdings LLC et al. v. Citibank, N.A. et al.*, No. 16-cv-5263 (AKH), ECF No. 568 (S.D.N.Y. Dec. 1, 2022) (approving fee award based on similar rates); *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-CV-0256 (LAK), 2021 WL 2453972,

---

[3] As they have done in connection with previous fee applications, Plaintiffs' Counsel audited the hours worked for reasonableness and (if necessary) reduced the hours and lodestar in the exercise of billing judgment. *See* Briganti Decl. ¶ 120; Declaration of Patrick T. Egan ("Egan Decl.") ¶ 5; Declaration of Benjamin M. Jaccarino ("Jaccarino Decl.") ¶ 5.

at *1 (S.D.N.Y. June 15, 2021) (finding counsel's hourly rates between $170 to $1,058 were reasonable); *In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593, at *1 (granting fee award using partner rates of $675 to $1,150 and associate rates of $365 to $820), *see also* Decls. in Support of Award for Attorney's Fees and Expenses, *Id.*, 19-cv-1704 (JSR) (S.D.N.Y. Apr. 13, 2020), ECF No. 393-96; *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789 (LGS), 2018 WL 5839691 (S.D.N.Y. Nov. 8, 2018) (granting fee award using partner rates up to $1,375 and associate rates of $350 to $700), Decl. in Support of Award for Attorney's Fees and Expenses, *Id.*, No. 13 Civ. 7789 (LGS), (S.D.N.Y. Jan. 12, 2018), ECF No. 939.

Based on the lodestar of $7,776,109.00 for the work performed since October 1, 2019, Class Counsel's fee request of $4.5 million reflects a negative risk multiplier of 0.58. Courts routinely hold that fee requests representing a negative risk multiplier on the lodestar are presumptively reasonable. *See Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) ("Courts have repeatedly recognized that the reasonableness of the fee request under the percentage method is reinforced where, as here, 'the percentage fee would represent a negative multiplier of the lodestar.'"). The risk multiplier is intended to compensate counsel for taking on the risk of pursuing contingent litigation, and a greater risk multiplier is warranted in cases where the risks are greater. *Id.* at 19-20. Here, despite the substantial risks of the litigation (discussed above), the requested fee does not even fully compensate Plaintiffs' Counsel for their lodestar, much less provide an enhancement that reflects the Actions' risks. *See City of Providence v. Aeropostale, Inc.,* No. 11-cv-7132(CM)(GWG), 2014 WL 1883494, at *13 (S.D.N.Y. May 9, 2014) ("a [negative] multiplier is well below the parameters used throughout district courts in the Second Circuit, which affords additional

evidence that the requested fee is reasonable."), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

Moreover, Class Counsel's fee application does not just reflect a negative multiplier on the work done since 2019. Since inception, Plaintiffs' Counsel have invested 157,345.28 hours at a total lodestar value of $86,818,785.25.[4] If Class Counsel's fee request is granted, Plaintiffs' Counsel will have received fees totaling $76.9 million, reflecting a negative risk multiplier of 0.89, significantly less than multipliers awarded in comparable cases. *See, e.g.*, *In re Credit Default Swaps Antitrust Litigation*, 2016 WL 2731524, at *17 (approving a lodestar multiplier of "just over 6" in a complex antitrust class action); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (approving a multiplier of 6.3 in class action, explaining that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (holding that a 4.65 lodestar multiplier is modest, fair, and reasonable); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (listing nationwide class action settlements where the lodestar multiplier ranged up to 8.5). Awarding Class Counsel's $4.5 million fee request will not result in a "windfall" and is reasonable in light of Plaintiffs' Counsel's lodestar. *Goldberger*, 209 F.3d at 49.

## C. The Fee Request Is Supported by the Remaining *Goldberger* Factors

### 1. The Quality of the Representation Supports the Requested Fee

"[T]he quality of representation is best measured by results," *Goldberger*, 209 F.3d at 55,

---

[4] Class Counsel and additional Plaintiffs' Counsel Class Counsel froze the lodestar for the work performed prior to October 1, 2019 at their 2019 rates rather than applying their current rates to those hours. *See* ECF No. 992 ¶ 118 ("[A]ll Plaintiffs' Counsel have, as of September 30, 2019, expended 147,882.93 hours, the equivalent of $79,042,676.25, in pursuing these actions").

which are evaluated in light of "the recovery obtained and the backgrounds of the lawyers involved." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008).

**Results Obtained**: Including the three Settlements pending final approval before this Court, Class Counsel has recovered $329,500,000 on behalf of the Class. These funds will provide Class Members with an immediate recovery and ensure that Class Counsel can continue to pursue claims against the remaining Defendant in *Sonterra* as well as in *Laydon*, should the judgment in that case be reversed.

Beyond monetary compensation, Class Counsel also secured significant cooperation from all settling defendants in the Action. For example, the R.P. Martin settlement produced one of the most valuable pieces of information obtained to date—the "BOSS" transaction database—which contained millions of records, including the "wash trades" R.P. Martin brokered on behalf of Defendants UBS, RBS, and JPMorgan. Briganti Decl. ¶ 100; *see, e.g.*, ECF No. 580 (TAC) ¶¶ 392-94. The transaction data and information contained in the various settling defendants' documents produced so far have helped Class Counsel specifically identify the names of Yen traders and submitters who were active participants in the alleged manipulation and aided the development of a class-wide damages model and Distribution Plan. Briganti Decl. ¶¶ 100, 104.

**Background of Counsel**: Class Counsel and additional Plaintiffs' Counsel have decades of experience prosecuting class action cases, including some of the largest class action recoveries under the commodities and antitrust laws. *See* ECF No. 1049-8; Egan Decl., Ex. A;  Jaccarino Decl., Ex. A (firm resumes). Including these Actions, Class Counsel serve as lead or co-lead counsel in seven benchmark rate manipulation cases and have recovered over a billion dollars to date for plaintiffs and absent class members in these cases.[5] Developing the law in this field,

---

[5] *See Fund Liquidation Holdings LLC v. Citibank, N.A., et al.,* No. 16-cv-05263 (SIBOR and SOR); *Sullivan v. Barclays PLC*, No. 13-cv-2811 (PKC) (S.D.N.Y.) (Euribor); *Dennis et al. v. JPMorgan Chase & Co. et al.*, No. 16-

Class Counsel was the first firm to assert claims on behalf of investors in foreign exchange ("FX") forward agreements, materially expanding the scope of investors who may seek compensation for alleged rate manipulation. The expertise that Class Counsel gained litigating many large and complex antitrust and commodities cases throughout its fifty-year history made it possible for Class Counsel to develop this case.

Another consideration for assessing the quality of the representation is "[t]he quality of the opposing counsel" in the case. *Maley*, 186 F. Supp. 2d at 373. The fact that Class Counsel successfully prosecuted this action for over ten years against Defendants represented by well-respected and high-caliber law firms and obtained a substantial recovery for the Class reflects the quality of representation provided. Briganti Decl. ¶ 31.

### 2. Class Counsel's Request is Well Within the Range of Awards

Courts look to comparable cases as guideposts to evaluate whether "the requested fee [is reasonable] in relation to the settlement." *Goldberger*, 209 F.3d at 50; *see Payment Card*., 991 F. Supp. 2d at 443-44 (evaluating a fee request against other "large class cases with court-set fees"); *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 406 (S.D.N.Y. 2019) (same). Class Counsel's 20% fee request is comparable to awards granted by courts applying the percentage method.

Courts in this District routinely award 25% or more of the common fund as fees in cases involving settlements between $15 million and $30 million. *See, e.g.*, *City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, No. 17 CIV. 10014 (LGS), 2020 WL 7413926, at *1 (S.D.N.Y. Dec. 17, 2020) (awarding 26% of the $15.5 million settlement fund in a securities class action); *In re Deutsche Bank AG Sec. Litig.*, No. 1:09-CV-01714 (GHW), 2020 WL

cv-06496 (LAK) (S.D.N.Y.) (BBSW); *Sonterra Capital Master Fund Ltd., et al. v. Credit Suisse Group AG, et al.*, No.: 1:15-cv-00871 (SHS) (S.D.N.Y.) (Swiss Franc LIBOR); *Sonterra Capital Master Fund Ltd., et al. v. Barclays Bank PLC, et al.*, No. 15-cv-03538 (VSB) (S.D.N.Y.) (Sterling LIBOR).

3162980, at *1 (S.D.N.Y. June 11, 2020) (awarding one-third fee from $18.5 million settlement); *In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15CV1249, 2018 WL 6333657, at *1 (S.D.N.Y. Dec. 4, 2018) (awarding 25% of the $22 million settlement fund, representing a lodestar multiplier of 0.49); *In re DDAVP Direct Purchaser Antitrust Litig.*, No. 05 Civ. 2237 (CS), 2011 WL 12627961, at *5 (S.D.N.Y. Nov. 28, 2011) (awarding 33 1/3 % in fees on a $20 million gross settlement, plus interest); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (approving attorney fees that equaled slightly less than 25% of $18.4 million settlement). Here, the 20% request is below what courts have awarded in cases that are similarly or less complex than these Actions.

If the Court considers the attorneys' fees it has previously awarded in determining the appropriate size of this fee award, granting a fee award of $4.5 million results in a total fee of $76.9 million, or 23.3% of the $329,500,000 recovered in these Actions. This total fee is also in line with the prevailing awards in class actions with settlements between $300 million and $500 million. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-cv-7126 (JMF), 2018 WL 6250657, at *3 (S.D.N.Y. Nov. 29, 2018) (awarding 26% of the net settlement fund from a $504.5 million settlement); *Sullivan v. Barclays PLC*, No. 13-CV-02811 (PKC), 2018 WL 6299918, at *1 (S.D.N.Y. May 18, 2018) (awarding as attorneys' fees 22.24% of settlements totaling $309 million); *In re GSE Bonds Antitrust Litig*, 2020 WL 3250593, at *3 (awarding 20% of $386.5 million common fund as attorneys' fees).

Empirical studies further underscore the reasonableness of the requested fee. A 2021 survey of antitrust class settlements found that, between 2009 and 2021, the median attorneys' fees award was 25% for settlements ranging from $250 million to $499 million. *See* Center for Litigation and Courts and The Huntington National Bank, *2021 Antitrust Annual Report: Class*

*Actions in Federal Court* (April 2022) at 27-28.[6] A separate 2021 survey of securities class

action settlements by NERA Economic Consulting observed that from 2012 to 2021, the median

attorneys' fees percentage awarded for settlements between $100 million and $500 million was

25%. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action

Litigation*: 2021 Full-Year Review 27 (NERA Jan. 25, 2022);[7] *see also* Theodore Eisenberg et.

al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 952 (2017) (the median

and average percentages awarded for attorneys' fees in antitrust recoveries between 2009-2013

were 30% and 27%, respectively); WILLIAM B. RUBENSTEIN, 5 NEWBERG AND RUBENSTEIN ON

CLASS ACTIONS § 15:78 (6th ed. 2022) (mean percentage for attorneys' fees in Second Circuit

class action cases from 2009 to 2013 was 28%).

When all of the metrics above are considered, Class Counsel's fee request is

demonstrably within the range of reasonable fee awards regularly granted by courts in this

District.

### 3. Public Policy Supports Approval

The Supreme Court has recognized the benefits of private civil suits as a means of

enforcing federal antitrust and commodities laws. *Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63

(1983) ("This Court has emphasized the importance of the private action as a means of furthering

the policy goals of certain federal regulatory statutes, including the federal antitrust laws."); *see

also In re GSE Bonds Antitrust Litig*, 2020 WL 3250593, at *5 ("Congress has encouraged

enforcement of the antitrust laws through private civil suits to deter infringing conduct in the

future."); *In re Credit Default Swaps Antitrust Litigation*, 2016 WL 2731524, at *18 ("Our

---

[6] Available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4117930. The same survey reports that the median fee award for settlements between $10 million and $49 million was 30%.

[7] Available at https://www.nera.com/publications/archive/2022/recent-trends-in-securities-class-action-litigation--2021-full-y/publication-download-.html. This survey also found that the median fee award for settlements between $10 and $25 million was 27.5%.

antitrust laws address issues that go to the heart of our economy. Our economic health, and indeed our stability as a nation, depend upon adherence to the rule of law and our citizenry's trust in the fairness and transparency of our marketplace."); *Leist v. Simplot*, 638 F.2d 283, 311 (2d Cir. 1980) ("The 1974 Congress repeatedly expressed its view that the changes [to the CEA] were designed to strengthen commodity futures regulation, a goal that would be ill-served by abolishing the private right of action that everyone had thought to exist."), *aff'd sub nom. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982) (citing CEA legislative history); *Cange v. Stotler & Co., Inc.*, 826 F.2d 581, 584 (7th Cir. 1987) (explaining that Congress depends on the "critical" role of additional private suits to deter violations of the CEA). If Class Counsel had not taken on the risks of pursing these Actions, the Class would have been left without recompense. Despite government investigations and certain Defendants' admissions of wrongdoing, most investors who were harmed by the alleged conspiracy would not have received any money but for these lawsuits.

Awarding a fair and reasonable fee from the common fund ensures that Class Counsel retain the ability and incentive to pursue antitrust violations at their own expense even when recovery is uncertain. *Goldberger*, 209 F.3d at 51 ("There is . . . commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest."); *Espinal v. Victor's Café 52nd St., Inc*., No. 16-CV-8057 (VEC), 2019 WL 5425475, at *3 (S.D.N.Y. Oct. 23, 2019) ("The Second Circuit and courts in this District have taken into account the 'social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation' as a basis for increasing the percentage of the fund awarded to Class Counsel."). Here, awarding the $4.5 million fee request, which is based on a *decreasing* percentage of the fund, will serve the public policy of incentivizing attorneys to take

on the substantial risks of prosecuting similar actions in the future, and to continue pursuing such claims to maximize the potential total recovery for the class.

### D. The Negotiated Sliding Fee Scale on which Class Counsel's Request Is Based Provides Further Evidence of the Proposed Award's Reasonableness

Court-awarded attorneys' fees should reflect "what a reasonable, paying client would be willing to pay" for counsel's services. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections,* 522 F.3d 182, 184 (2d Cir. 2008). Courts give great weight to negotiated fee agreements because they typically reflect actual market rates. *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) ("In many cases, the agreed-upon fee will offer the best indication of a market rate."). If a "sophisticated benefits fund with fiduciary obligations to its members and [ ] a sizeable stake in the litigation" negotiates an *ex ante* fee agreement, courts recognize that there is a "rebuttable 'presumption of correctness'" that should apply to those terms. *In re Credit Default Swaps Antitrust Litigation*, 2016 WL 2731524, at *16.

The attorneys' fee request of 20% ($4.5 million) of the $22,500,000 common fund is based on a sliding fee scale included in the retainer agreement that CalSTRS negotiated with Class Counsel and Berman Tabacco to represent it here in these Actions. *See* Declaration of Brian Bartow dated January 24, 2023 ("Bartow Decl.") ¶ 7. CalSTRS is the second largest pension fund in the United States, with more than 980,000 members and beneficiaries, and an investment portfolio currently valued at $302.1 billion. *See* Bartow Decl. ¶ 4. Since 2014, CalSTRS has been an active and engaged plaintiff. *Id.* ¶¶ 10-12. CalSTRS' General Counsel has scrutinized every aspect of Class Counsel's work and independently concluded that he supports both the motion for final approval and the requested award of attorneys' fees. *See* Bartow Decl. ¶¶ 13, 15-18. This Court has approved fee awards based on CalSTRS' retainer with Class

Counsel four times previously. *See* ECF Nos. 723, 837, 889, 1012. Notably, no Class Member has objected to any of the prior four fee requests that have been based on CalSTRS' retainer. Briganti Decl. ¶ 40.

## II.  THE REQUESTED AWARDS FOR CLASS COUNSEL'S EXPENSES AND THE LITIGATION FUND ARE REASONABLE

The attorneys whose work leads to the creation of "a common settlement fund for a class are entitled to reimbursement of [reasonable] expenses that they advance to a class." *Meredith Corp.*, 87 F. Supp. 3d at 671.

Plaintiffs' Counsel incurred $858,554.45 in expenses prosecuting this case from November 1, 2019 through December 31, 2022. *See* Briganti Decl. ¶ 126; Declaration of Vincent Briganti in Support of Class Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses ("Briganti Fee Decl.") ¶ 6; Egan Decl. ¶ 10. Professional, Consulting, and Expert Fees comprise the bulk of the expenses, totaling $609,960.35, and reflect the costs to engage experts to analyze relevant data and trends, obtain expert opinions on issues of foreign law, and retain specialized appellate counsel to assist with the multiple appeals in the Actions. Briganti Fee Decl. ¶ 6. Document hosting and other discovery costs amounted to $209,198.52 during the past three years. The remaining $32,661.01 in expenses incurred by Plaintiffs' Counsel include, *inter alia*, legal research expenses, travel costs, in-house copying charges, various filing fees, postage, shipping, and telephone charges. *Id*. Class Counsel used the $750,000 litigation expense fund replenished in connection with the settlements approved in December 2019 to pay for most of these expenses, with Class Counsel and Berman Tabacco paying for the remainder. *See* ECF No. 102 ¶ 3. Accordingly, Class Counsel requests reimbursement in the amount of $108,554.45 for the remaining unpaid out-of-pocket expenses reasonably and necessarily incurred by Class Counsel and Berman Tabacco in connection with

the prosecution of the Actions from November 1, 2019 through December 31, 2022. *See* Briganti Decl. ¶ 126. The incurred expenses were "incidental and necessary to the representation of the [C]lass," and should be reimbursed. *See Beckman*, 293 F.R.D. at 482.

As provided in the mailed notice, Class Counsel also seeks an award of $500,000 to replenish the litigation fund. *See* Declaration of Steven J. Straub on behalf of A.B. Data, Ltd. ("Straub Decl."), Ex. A, Mailed Notice at 9. An award to support future litigation expenses is reasonable. *See Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-cv-11814, 2004 WL 1087261, at *5-6 (S.D.N.Y. May 14, 2004) (awarding "$250,000 to defray the ongoing costs incurred in connection with the continuing prosecution of the Action"); *Brunson v. City of New York*, No. 94 Civ. 4507, 2000 WL 1876910, at *4 (S.D.N.Y. Dec. 22, 2000) (awarding future expenses). This Court has previously approved such awards. *See* ECF Nos. 724, 892, 1012. If funds remain in the litigation expense fund when this litigation is concluded, the funds will be returned to the Net Settlement Fund for distribution as directed by the Court.

## III. THE COURT SHOULD GRANT JAPAN MACRO OPPORTUNITIES MASTER FUND, L.P. A SUPPLEMENTAL SERVICE AWARD

Representative Plaintiff Japan Macro Opportunities Master Fund, L.P. ("JMOF") seeks a supplemental service award totaling $428,691.95. Awards to class representatives, whether termed as "service" or "incentive" awards, are granted at the discretion of the Court to "compensate class representatives for their services to the class and simultaneously serve to incentivize them to perform this function." WILLIAM B. RUBENSTEIN, 5 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 17:1 (6th ed. 2022). In deciding whether to grant such awards, a court considers, among other factors: "'the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (*e.g.*, factual

expertise), any other burdens sustained by that plaintiff . . . and, of course, the ultimate recovery.'" *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (quoting *Roberts v. Texaco*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997)); *see also Anwar v. Fairfield Greenwich Ltd.*, No. 09-cv-118 (VM), 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) ("Courts consistently approve awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they endure during litigation."); *Beckman*, 293 F.R.D. at 483 ("It is important to compensate plaintiffs for the time they spend and the risks they take."); *Varljen v. H.J. Meyers & Co.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000) (reimbursement of such expenses should be allowed because it "encourages participation of plaintiffs in the active supervision of their counsel").

As described in the accompanying declaration of Jeff Knowlton ("Knowlton Decl."), JMOF undertook a significant burden to remain as a class representative in the Actions. Since 2016, Hayman Capital Management, L.P. ("HCM"), the manager of JMOF, has maintained JMOF as a going concern to allow JMOF to serve as a class representative in the *Sonterra* action. Knowlton Decl. ¶ 2. To do so, JMOF continued to comply with all regulatory, tax and audit requirements to ensure the fund remained in good standing. Knowlton Decl. ¶ 3. For much of this time, JMOF's litigation claim was the only asset of the fund. Knowlton Decl. ¶ 4. HCM accordingly advanced funds to JMOF to cover its operating expenses—expenses that JMOF would not otherwise have incurred but for its desire to serve as a class representative in *Sonterra*. The Court previously granted Representative Plaintiffs an incentive award, of which JMOF received $80,000; those funds were applied towards JMOF's expenses and towards reimbursement of previous advances made by HCM to JMOF for its expenses. From 2016 to 2021, HCM has advanced a total of $ $428,691.95 to JMOF for its expenses, for which HCM has

not yet been reimbursed. Accordingly, JMOF seeks a service award in that amount to cover the additional costs incurred since 2016.

As a percentage, the total requested service award represents 1.9% of the total value of these Settlements, and 0.13% of the total recovery in these Actions. This percentage is also comparable or less than the incentive or service awards granted in other similarly complex class actions. *See, e.g*, *In re GSE Bonds Antitrust Litig.,* 19-cv-1704 (JSR) (S.D.N.Y.) (awarding $400,000 in incentive awards, representing 0.103% of the total settlements recovered); *see, Laydon*, *supra*, n. 2 (awarding $580,000 in incentive awards to plaintiffs, representing 1% of the $58 million settlement fund then achieved); *Dial Corp.*, 317 F.R.D. at 438-39 (awarding 0.12% of the $244 million settlement fund ($300,000) to six class representatives).

## <u>CONCLUSION</u>

For the foregoing reasons, Class Counsel respectfully request that the Court approve their motion for attorneys' fees and payment of litigation costs, and JMOF's request for a Service Award, in the amounts set forth above.

Dated: January 24, 2023
White Plains, New York

**LOWEY DANNENBERG, P.C.**

By: */s/ Vincent Briganti*
Vincent Briganti
Geoffrey M. Horn
44 South Broadway, Suite 1100
White Plains, New York 10601
Tel.: 914-997-0500
Fax: 914-997-0035
E-mail: vbriganti@lowey.com
E-mail: ghorn@lowey.com

*Class Counsel*

Joseph J. Tabacco, Jr.
Todd A. Seaver
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Tel.: 415-433-3200
Fax: 415-433-6282

Patrick T. Egan
**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
Tel.: 617-542-8300
Fax: 617-542-1194

Christopher Lovell
Benjamin M. Jaccarino
**LOVELL STEWART HALEBIAN
    JACOBSON LLP**
500 5th Avenue, Suite 2440
New York, NY 10110
Tel.: 212-608-1900
Fax: 212-719-4677

*Additional Plaintiffs' Counsel*